STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
KENNETH W. BRAKEBILL (CABN 196696)
Assistant United States Attorney
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7167
    Facsimile: (415) 436-7169
    Kenneth.Brakebill@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| J.R.G., et al., | CASE NO. 4:22-cv-05183-KAW |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION TO TRANSFER; MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| v. | |
| UNITED STATES OF AMERICA, | Date:   February 16, 2023 |
| Defendant. | Time:   1:30 p.m. |
| | Place:  Remote via Zoom |
| | The Hon. Kandis A. Westmore |

# TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................... 1

RELIEF REQUESTED .................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND LEGAL BACKGROUND ....................................................... 2

    A.      Statutory Framework for Noncitizens Entering the Country. ............................... 2

    B.      Statutory Framework for Immigration Custody For Unaccompanied Minors. ................... 3

    C.      Flores Agreement Requirements ........................................................................... 4

    D.      Executive Branch Directives Regarding Immigration Enforcement. ................... 4

    E.      Detention, Separation and Reunification of Plaintiffs. ......................................... 6

    F.      Subsequent Policy Changes. ................................................................................. 6

III.    LEGAL STANDARDS ........................................................................................ 7

    A.      Transfer Under 28 U.S.C. § 1404(a). .................................................................. 7

    B.      Dismissal for Lack of Subject Matter Jurisdiction. .............................................. 8

IV.     ARGUMENT ....................................................................................................... 8

    A.      The Court Should Transfer This Action to the Western District of Texas. ......... 8

        1.      Venue Is Proper in the Western District of Texas. ................................... 8

        2.      The Balance of Relevant Factors Strongly Favors Transfer. ................... 9

            a.      Almost All Operative Facts Alleged in Plaintiffs' Complaint Occurred in the Western District of Texas. .......................... 9

            b.      The Convenience and Interests of the Parties Favor Transfer. ................. 10

            c.      The Interests of Justice Favor Transfer. .................................................... 12

    B.      In the Alternative, Plaintiffs' Claims Should Be Dismissed For Lack of Subject Matter Jurisdiction. ................................................................................ 13

        1.      Plaintiffs' Claims Are Barred By the Discretionary Function Exception. ............................................................................................... 14

            a.      Legal Standard for Discretionary Function Exception Analysis. ............. 14

b.      The Decision to Detain Plaintiffs Separately Is Subject to
        Discretion Grounded in Policy Considerations...........................................16

c.      Plaintiffs' Assertion of Unconstitutional Conduct Does Not
        Preclude Application of DFE in this Case. ...............................................20

2.    Plaintiffs' Claims Relating to the Decision to Detain The Adult
      Separately From Her Child Are Barred by the FTCA's Exception for
      Actions Taken While Reasonably Executing Law. .......................................22

3.    Plaintiffs' Claims Are Barred Because There Is No Private-Person
      Analogue. .......................................................................................................23

4.    Plaintiffs' Claims Are Impermissible Direct Liability, Systemic Tort
      Claims. ............................................................................................................24

V.    CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.P.F. v. United States,*
   492 F. Supp. 3d 989 (D. Ariz. 2020) ................................................................ 21, 23, 24

*Accardi v. United States,*
   435 F.2d 1239 (3d Cir. 1970) ........................................................................................ 22

*Adams v. United States,*
   420 F.3d 1049 (9th Cir. 2005) ...................................................................................... 25

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western District of Texas,*
   571 U.S. 49 (2013) .......................................................................................................... 7

*AV Media, Pte, Ltd. v. OmniMount Sys., Inc.,*
   No. C 06-3805 JSW, 2006 WL 2850054 (N.D. Cal. Oct. 5, 2006) ............................... 13

*Baie v. Sec'y of Def.,*
   784 F.2d 1375 (9th Cir. 1986) ...................................................................................... 18

*Bailor v. Salvation Army,*
   51 F.3d 678 (7th Cir. 1995) .......................................................................................... 17

*Barroca v. United States,*
   No. 19-cv-00699-MMC, 2019 WL 5722383 (N.D. Cal. Nov. 5, 2019) .................... 8, 9, 10

*Barton v. Barr,*
   140 S. Ct. 1442 (2020) .................................................................................................... 2

*Berkovitz v. United States,*
   486 U.S. 531 (1988) ........................................................................................... 14, 15, 19

*Bhuiyan v. United States,*
   772 F. App'x 564 (9th Cir. 2019) .................................................................................. 24

*Borquez v. United States,*
   773 F.2d 1050 (9th Cir. 1985) ...................................................................................... 23

*Bunikyte v. Chertoff,*
   No. 07-164, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ......................................... 4, 18

*Butz v. Economou,*
   438 U.S. 478 (1978) ................................................................................................. 21, 22

*C.M. v. United States*,
No. CV-19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020)..........................24

*Canal A Media Holding, LLC v. United States Citizenship & Immigration Servs.*,
No. 17-cv-6491, 2018 WL 7297829 (C.D. Cal. Sept. 30, 2018) ...........................................12

*Chadd v. United States*,
794 F.3d 1104 (9th Cir. 2015) ............................................................................................14

*Chen v. United States*,
854 F.2d 622 (2d Cir. 1988)...............................................................................................24

*Clark v. Suarez Martinez*,
543 U.S. 371 (2005)............................................................................................................17

*Cohen v. United States*,
151 F.3d 1338 (11th Cir. 1998) ..........................................................................................17

*Comm. of Cent. Am. Refugees v. I.N.S.*,
795 F.2d 1434 (9th Cir. 1986) ............................................................................................17

*Commodity Futures Trading Comm'n v. Savage*,
611 F.2d 270 (9th Cir. 1979) ................................................................................................8

*Conrad v. United States*,
447 F.3d 760 (9th Cir. 2006) ..............................................................................................10

*Ctr. for Biological Diversity v. Kempthorne*,
No. 08-cv-1339-CW, 2008 WL 4543043 (N.D. Cal. Oct. 10, 2008) .....................................7

*D.A. v. United States*,
No. 1:20-cv-03082, ECF No. 85 (N.D. Ill. Aug. 11, 2022) ................................................13

*D.B. v. Poston*,
119 F. Supp. 3d 472 (E.D. Va. 2015) ..................................................................................18

*Dalehite v. United States*,
346 U.S. 15 (1953)..............................................................................................................22

*Denson v. United States*,
574 F.3d 1318 (11th Cir. 2009) ..........................................................................................21

*Dupree v. United States*,
247 F.2d 819 (3d Cir. 1957).................................................................................................22

*E.C.B. v. United States*,
No. 2:22-cv-00915, ECF No. 24 at 9 (D. Ariz. Nov. 8, 2022) ............................................25

*Elgamal v. Bernacke*,
714 F. App'x 741 (9th Cir. 2018) ............................................................................... 24

*Elgamal v. United States*,
No. 13-00967, 2015 WL 13648070 (D. Ariz. July 8, 2015) ...................................... 24

*Est. of Smith v. Shartle*,
18-00323-TUC-RCC, 2020 WL 1158552 (D. Ariz. Mar. 10, 2020) .......................... 24

*F.D.I.C. v. Meyer*,
510 U.S. 471 (1994) ................................................................................... 8, 14, 20

*Fazaga v. Fed. Bureau of Investigation*,
916 F.3d 1202 (9th Cir. 2019) ................................................................................... 22

*Fazaga v. Fed. Bureau of Investigation*,
965 F.3d 1015 (9th Cir. 2020) ................................................................................... 20

*FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*,
592 F.2d 364 (7th Cir. 1979) ..................................................................................... 23

*Fisher Bros. Sales, Inc. v. United States*,
46 F.3d 279 (3d Cir. 1995) ........................................................................................ 18

*Flores v. Lynch*,
828 F.3d 898 (9th Cir. 2016) ............................................................................... 4, 18

*Flores v. Rosen*,
984 F.3d 720 (9th Cir. 2020) ....................................................................................... 4

*Gandarillas-Zambrana v. BIA*,
44 F.3d 1251 (4th Cir. 1995) ..................................................................................... 17

*Garza v. United States*,
161 F. App'x 341 (5th Cir. 2005) .............................................................................. 20

*GATX/Airlog Co. v. United States*,
286 F.3d 1168 (9th Cir. 2002) ................................................................................... 15

*Gonzalez v. United States*,
814 F.3d 1022 (9th Cir. 2016) ...................................................................... 14, 16, 19

Hansen v. Combined Transp., Inc.,
No. 13-cv-1298, 2013 WL 5969863 (W.D. Wash. Nov. 7, 2013)............................. 12

*Harisiades v. Shaughnessy*,
342 U.S. 580 (1952)................................................................................................... 17

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ................................................................................................ 21

*In re Sealed Case*,
   829 F.2d 50 (D.C. Cir. 1987) ................................................................................. 16

*J.F.G. v. Hott*,
   921 F.3d 204 (4th Cir. 2019) ............................................................................ 21, 22

*Joe Boxer Corp. v. R. Siskind & Co., Inc.*, No. C,
   98–4899 SI, 1999 WL 429549 (N.D. Cal. June 8, 1999) ..................................... 12

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) .................................................................................. 7

*Kelly v. United States*,
   241 F.3d 755 (9th Cir. 2001) ................................................................................ 15

*Kennewick Irr. Dist. v. United States*,
   880 F.2d 1018 (9th Cir. 1989) .............................................................................. 15

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ................................................................................................ 8

*Koval v. United States*,
   No. 2:13-CV-1630-HRH, 2013 WL 6385595 (D. Ariz. Dec. 6, 2013) .................. 8

*Lam v. United States*,
   979 F.3d 665 (9th Cir. 2020) ..................................................................... 15, 16, 19

*Lee v. United States*,
   No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18, 2020) ........................ 25

*Lehman v. Nakshian*,
   453 U.S. 156 (1981) .............................................................................................. 14

*Lipsey v. United States*,
   879 F.3d 249 (7th Cir. 2018) ................................................................................ 17

*Medina v. United States*,
   259 F.3d 220 (4th Cir. 2001) ................................................................................ 18

*Mejia-Mejia v. ICE*,
   18-1445 (PLF), 2019 WL 4707150 (D.D.C. Sept. 26, 2019) ............................... 19

*Mirmehdi v. United States*,
   689 F.3d 975 (9th Cir. 2012) ................................................................................ 17

*Morris v. Safeco Ins. Co.*,
  No. C 07-2890 PJH, 2008 WL 5273719 (N.D. Cal. Dec. 19, 2008) ................................... 11

*Ms. L v. ICE*,
  302 F. Supp. 3d 1149 (C.D. Cal. 2018) .......................................................................... 21

*Murillo v. United States Dep't of Justice*,
  No. CV 21-00425-TUC-CKJ, 2022 WL 16745333 (D. Ariz. Nov. 7, 2022) ....................... 17

*Nordquist v. Blackham*,
  No. C06-5433 FDB, 2006 WL 2597931 (W.D. Wash. Sept. 11, 2006) ........................ 11, 12

*Nurse v. United States*,
  226 F.3d 996 (9th Cir. 2000) ............................................................................... passim

*Park v. Dole Fresh Vegetables, Inc.*,
  964 F. Supp. 2d 1088 (N.D. Cal. 2013) ......................................................................... 11

*Payne-Barahona v. Gonzalez*,
  474 F.3d 1 (1st Cir. 2007) ........................................................................................... 21

*Peña Arita v. United States*,
  *470* F. Supp. 3d 663 (S.D. Tex. 2020) .................................................................... 18, 19

*Powell v. United States*,
  233 F.2d 851 (10th Cir. 1956) ...................................................................................... 23

*Reed ex rel. Allen v. U.S. Dep't of Interior*,
  231 F.3d 501 (9th Cir. 2000) ........................................................................................ 15

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ..................................................................................................... 17

*Reynolds v. United States*,
  549 F.3d 1108 (7th Cir. 2008) ...................................................................................... 16

*Routh v. United States*,
  941 F.2d 853 (9th Cir. 1991) ........................................................................................ 16

*Sabow v. United States*,
  93 F.3d 1445 (9th Cir. 1996) ........................................................................................ 15

*Santana-Rosa v. United States*,
  335 F.3d 39 (1st Cir. 2003) .......................................................................................... 17

*Sasso v. Milhollan*,
  735 F. Supp. 1045 (S.D. Fla. 1990) .............................................................................. 17

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*,
   343 F.3d 1036 (9th Cir. 2003) ......................................................................................... 8

*Sickman v. United States*,
   184 F.2d 616 (7th Cir. 1950) ......................................................................................... 23

*Sierra Club v. Whitman*,
   268 F.3d 898 (9th Cir. 2001) ........................................................................................... 8

*Smith v. Corizon Health, Inc.*,
   No. 16-cv-00517-WHA, 2016 WL 1275514 (N.D. Cal. Apr. 1, 2016) ................................. 7

*Smith v. United States*,
   375 F.2d 243 (5th Cir. 1967) ......................................................................................... 16

*Sorensen v. Daimler Chrysler AG*,
   No. C 02-4752 MMC (EDL), 2003 WL 1888866 (N.D. Cal. Apr. 11, 2003) ...................... 12

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ........................................................................................................... 8

*Teplin v. United States*,
   No. 17-cv-02445-HSG, 2018 WL 1471907 (N.D. Cal. Mar. 26, 2018) ....................... 14, 15

*United States v. Armstrong*,
   517 U.S. 456 (1996) ....................................................................................................... 16

*United States v. Dominguez-Portillo*,
   No. 17-MJ-4409, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) .................................... 4, 18

*United States v. Gaubert*,
   499 U.S. 315 (1991) .................................................................................................. passim

*United States v. Lopez-Flores*,
   63 F.3d 1468 (9th Cir. 1995) ......................................................................................... 17

*United States v. Nixon*,
   418 U.S. 683 (1974) ....................................................................................................... 16

*United States v. Olson*,
   546 U.S. 43 (2005) ......................................................................................................... 24

*United States v. Testan*,
   424 U.S. 392 (1976) ....................................................................................................... 14

*United States v. Varig Airlines*,
   467 U.S. 797 (1984) .................................................................................................. 15, 19

*Valdez v. United States,*
   56 F.3d 1177 (9th Cir. 1995) ......................................................................... 25

*Van Dinh v. Reno,*
   197 F.3d 427 (10th Cir. 1999) ....................................................................... 17

*W.S.R. v. Sessions,*
   318 F. Supp. 3d 1116 (N.D. Ill. 2018) ........................................................... 21

*Westbay Steel, Inc. v. United States,*
   970 F.2d 648 (9th Cir. 1992) ......................................................................... 24

*Whisnant v. United States,*
   400 F.3d 1177 (9th Cir. 2005) ....................................................................... 15

*Wilbur P.G. v. United States,*
   No. 4:21-cv-04457-KAW, 2022 WL 3024319 (N.D. Cal. May 10, 2022) ........ 13

*Williams v. Bowman,*
   157 F. Supp. 2d 1103 (N.D. Cal. 2001) ......................................................... 11

**Statutes**

6 U.S.C. § 279 ...................................................................................................... 3, 18

8 U.S.C. § 1101(a)(3) .................................................................................................. 2

8 U.S.C. § 1225 ............................................................................................................ 3

8 U.S.C. § 1231 ......................................................................................................... 17

8 U.S.C. § 1232 ................................................................................................. 3, 4, 23

8 U.S.C. § 1325 ................................................................................................... 2, 5, 6

28 U.S.C. § 1346 ............................................................................................. 7, 14, 23

28 U.S.C. § 1402 ..................................................................................................... 7, 8

28 U.S.C. § 1404 .............................................................................................. passim

28 U.S.C. § 2674 ....................................................................................................... 24

28 U.S.C. § 2680 ............................................................................................. 14, 16, 22

**Rules**

Federal Rule of Civil Procedure 12 ......................................................................... 8

Federal Rule of Civil Procedure 45 ....................................................................... 12

**Other Authorities**

Attorney General Announces Zero-Tolerance Policy for Criminal Illegal
    Entry, (April 6, 2018), DOJ 18-417, 2018 WL 1666622 ....................................... 5

*Establishment of Interagency Task Force on the Reunification of Families*,
    Exec. Order 14,011 , § 1, 86 Fed. Reg. 8273 (Feb. 5, 2021) ................................ 1

Executive Order 13767 § 1, 82 Fed. Reg. 8793 (Jan. 30, 2017)................................. 5

H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10. ............................................. 16

Interim Progress Report, Interagency Task Force on the Reunification of Families 6 (Sep. 30, 2022) .... 7

U.S. DOJ Memorandum on Renewed Commitment to Criminal Immigration
    Enforcement (April 11, 2017)................................................................................ 5

U.S. DOJ News Release: Attorney General Announces Zero-Tolerance
    Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417,
    2018 WL 1666622 (the "Zero-Tolerance Memorandum") ................................. 5

1

**NOTICE OF MOTION**

2       PLEASE TAKE NOTICE that on February 16, 2023, at 1:30 p.m., or as soon thereafter as the

3  parties may be heard, in the above-entitled Court, before the Honorable Kandis A. Westmore, United

4  States Magistrate Judge, Defendant United States of America ("Defendant") will and hereby does move

5  this Court for an order transferring this matter to the Western District of Texas pursuant to 28 U.S.C. §

6  1404(a), or, in the alternative, dismissing Plaintiffs' Complaint. Defendant's motion is based on this

7  Notice; the following Memorandum of Points and Authorities; the supporting Declaration of Kenneth

8  Brakebill submitted herewith; matters of which the Court takes judicial notice; and such oral argument

9  and additional evidence as the Court may permit.

10                                  **RELIEF REQUESTED**

11       Defendant seeks an order transferring this case to the Western District of Texas pursuant to 28

12  U.S.C. § 1404(a), or, in the alternative, dismissing the Complaint.

13                       **MEMORANDUM OF POINTS AND AUTHORITIES**

14  **I.      INTRODUCTION**

15       This is an action under the Federal Tort Claims Act ("FTCA") alleging injuries to a parent and

16  child caused by Defendant's implementation of a policy to refer for prosecution all individuals suspected

17  of illegally entering the United States at the United States–Mexico border (referred to herein as the

18  "Zero-Tolerance Policy" or "ZTP Policy") in May 2018. Plaintiffs assert three causes of action for

19  intentional infliction of emotional distress, abuse of process and wrongful child abduction arising out of

20  Plaintiffs' separation after crossing into the United States. *See* ECF No. 1 ("Compl.") ¶¶ 86-103.

21       The United States has denounced the prior practice of separating children from their families at

22  the United States–Mexico border and "condemn[ed] the human tragedy" that occurred because of the

23  ZTP Policy. Establishment of Interagency Task Force on the Reunification of Families, Exec. Order

24  14,011, § 1, 86 Fed. Reg. 8273 (Feb. 5, 2021). And this Administration has committed the federal

25  government to "protect family unity and ensure that children entering the United States are not separated

26  from their families, except in the most extreme circumstances where a separation is clearly necessary for

27  the safety and well-being of the child or is required by law." *Id.* The Court should not, however, reach

28  the merits of Plaintiffs' FTCA claims for two reasons.

First, the Western District of Texas is the most appropriate forum for this litigation, and the Court should transfer this action to that District pursuant to 28 U.S.C. § 1404(a). Plaintiffs crossed the United States–Mexico border into the state of Texas; the Plaintiff parent was separated from her child in Texas; the entirety of the Plaintiff parent's detention occurred in Texas; and the Plaintiff child was placed in a shelter in Texas. All of the alleged tortious conduct occurred in the El Paso, Texas area. None of the actionable conduct challenged in Plaintiffs' Complaint occurred in this District. The United States therefore respectfully requests that the Court transfer this action to the Western District of Texas for all further proceedings, for the convenience of the parties and witnesses, and in the interest of justice.

If the Court determines not to transfer this case, Defendant respectfully requests that the Complaint be dismissed for lack of subject-matter jurisdiction. Any injuries caused by the ZTP Policy and related initiatives are not compensable as torts under the FTCA because Congress has not waived the federal government's sovereign immunity from claims for money damages in these circumstances. Although the United States recognizes that district courts adjudicating FTCA claims arising out of the ZTP Policy have to date reached differing conclusions on the threshold jurisdictional arguments presented in this motion to dismiss, the United States respectfully submits that on the better reading of the law, Congress has not waived sovereign immunity and Plaintiffs may not recover under the FTCA.

## II.   FACTUAL AND LEGAL BACKGROUND

### A.   Statutory Framework for Noncitizens[1] Entering the Country.

Under Section 1325 of Title 8 of the U.S. Code, when an individual enters the United States between official ports of entry, he or she may be subject to prosecution for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C. § 1325(a). A violation of § 1325(a) is a misdemeanor that is punishable by a fine and "imprison[ment] not more than 6 months" for a first infraction. *Id.*

All noncitizens who arrive in the United States, including those who arrive between ports of entry, are considered "applicant[s] for admission" and are "inspected by immigration officers" to

---

[1] This brief uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

1    determine their admissibility to the United States. *Id.* §§ 1225(a)(1), (a)(3), (b). Individuals arriving at

2    the border or found in the United States within 14 days and 100 miles of the border who, following

3    inspection, are deemed inadmissible also are subject to expedited removal from the United States and

4    detention pending such removal. *See id.* §§ 1225(b)(1)(A)(i), (b)(1)(B)(iii)(IV). In some cases, the

5    Department of Homeland Security ("DHS") may exercise its discretion to release a noncitizen from

6    custody. *See, e.g.*, 8 C.F.R. § 235.3(b)(2)(iii).

7         **B.      Statutory Framework for Immigration Custody For Unaccompanied Minors.**

8         Federal immigration law authorizes the United States to provide for the custody and care of

9    minor children entering the United States without authorization. Additionally, the Department of Health

10   and Human Services' Office of Refugee Resettlement ("ORR") is charged with "the care and placement

11   of unaccompanied alien children who are in federal custody by reason of their immigration status." 6

12   U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied alien

13   child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States";

14   (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal

15   guardian in the United States [or] no parent or legal guardian in the United States is available to provide

16   care and physical custody." 6 U.S.C. § 279(g)(2).

17        Under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), "[e]xcept in

18   the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such

19   child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien

20   child." 8 U.S.C. § 1232(b)(3). ORR seeks to place UACs "in the least restrictive setting that is in the

21   best interest of the child." *Id.* § 1232(c)(2)(A). However, ORR "shall not release such children upon

22   their own recognizance." 6 U.S.C. § 279(b)(2)(B). Rather, once in ORR custody, there are detailed

23   statutory and regulatory provisions that must be applied before the child is released to an approved

24   sponsor. *See* 8 U.S.C. § 1232(c)(3). Congress requires that "an unaccompanied alien child may not be

25   placed with a person . . . unless the Secretary of Health and Human Services makes a determination that

26   the proposed custodian is capable of providing for the child's physical and mental well-being" and that

27   "[s]uch determination shall, at a minimum, include verification of the custodian's identity and

28   relationship to the child, if any, as well as an independent finding that the individual has not engaged in

MOTION TO TRANSFER; MOTION TO DISMISS
CASE NO. 4:22-CV-05183 KAW                    3

1  any activity that would indicate a potential risk to the child." *Id.* § 1232(c)(3)(A). In some instances, a
2  home study is required. *Id.* § 1232(c)(3)(B).

3  **C.   Flores Agreement Requirements.**

4  In 1996, the federal government entered into a settlement agreement referred to as the "Flores
5  Agreement." *See, e.g.*, *Flores v. Sessions*, No. 85-cv-4544, ECF No. 101 (C.D. Cal. Feb. 2, 2015)
6  (*Flores I*). The Flores Agreement "sets out nationwide policy for the detention, release, and treatment of
7  minors in the custody of the [immigration authorities]." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir.
8  2016) (*Flores II*) (citing Flores Agreement ¶ 9). Under a binding interpretation of the Ninth Circuit, the
9  Flores Agreement "unambiguously" applies both to unaccompanied minors and to minors who are
10 encountered together with their parents or legal guardians. *Id.* at 901. Under the Flores Agreement, the
11 government must expeditiously transfer any minor who cannot be released from custody to a non-
12 secure, licensed facility. *Id.* at 902-03 (quoting Flores Agreement ¶ 12). The government must also
13 "make and record the prompt and continuous efforts on its part toward . . . release of the minor." *Flores*
14 *v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) (*Flores III*) (quoting Flores Agreement ¶ 14).

15 Notably, the Flores Agreement applies only to minors. *Flores II*, 828 F.3d at 901. It "does not
16 address . . . the housing of family units and the scope of parental rights for adults apprehended with their
17 children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because
18 that would not be a 'release.'" *Id.* at 906; *see also United States v. Dominguez-Portillo*, No. 17-MJ-
19 4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[Flores] does not provide that parents are
20 entitled to care for their children if they were simultaneously arrested by immigration authorities[.]").
21 Nor does the Flores Agreement provide any rights to adult detainees, including any rights of release.
22 *Flores II*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v.*
23 *Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007). Although the Flores
24 Agreement gives preference to the release of minors to a parent, this preference "does not mean that the
25 government must also make a parent available; it simply means that, if available, a parent is the first
26 choice." *Flores II*, 828 F.3d at 908.

27 **D.   Executive Branch Directives Regarding Immigration Enforcement.**

28 During the time period relevant to this action, the Executive Branch issued several directives

regarding enforcement of federal immigration laws. First, Executive Order No. 13767 was issued in January 2017 and stated that "[i]t is the policy of the executive branch to . . . detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]" Executive Order 13767 § 2(b), 82 Fed. Reg. 8793 (Jan. 30, 2017) ("EO 13767"). That Executive Order directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law," *id.* § 6, and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute . . . and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole," *id.* § 11(d).

Second, on April 11, 2017, DOJ issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement and directed that federal law enforcement prioritize the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325. *See* U.S. DOJ Memorandum on Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017), *available at* https://www.justice.gov/opa/press-release/file/956841/download.

Third, on April 6, 2018, DOJ issued a "Memorandum for Federal Prosecutors along the Southwest Border." U.S. DOJ News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (the "Zero-Tolerance Memorandum"). The memorandum directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS, to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." *Id.* In addition, on May 4, 2018, the DHS Secretary directed officers and agents to ensure that all adults, including parents or legal guardians traveling with minor children, deemed prosecutable for improper entry in violation of 8 U.S.C. § 1325(a) be referred to the DOJ for criminal prosecution. Consistent with EO 13767 and the April 2018 Zero-Tolerance Memorandum, DHS began to refer for prosecution increased numbers of adults – including those traveling with children – who unlawfully entered the United States on the Southwest border in violation of Section 1325. *See generally* Executive Order 13767. Minor children of those adults were designated as UACs and were transferred to ORR custody as required by the TVPRA. *See*

1  *generally* William Wilberforce Trafficking Victims Protection Reauthorization Act (2013).

2        **E.**    **Detention, Separation and Reunification of Plaintiffs.**

3        According to the Complaint, Plaintiffs are a mother and daughter (using the pseudonyms J.R.G.

4  and M.A.R., respectively) who are citizens of El Salvador that fled "to seek refuge in the United States."

5  Compl. ¶¶ 13-14. Plaintiffs entered the United States illegally on or about May 20, 2018 near El Paso

6  Texas. *Id*. ¶ 18. They were encountered and apprehended by Texas Border Patrol agents and then

7  transported to a nearby detention center. *Id.* Soon after J.R.G. and M.A.R. were taken into custody,

8  J.R.G. was transferred to the El Paso County Detention Facility pending her federal prosecution for

9  violation of 8 U.S.C. § 1325. *Id*. ¶¶ 25, 28. At the arraignment hearing, J.R.G. pled guilty and was

10  sentenced to one year of non-reporting and unsupervised probation. *Id*. ¶ 30. Following her federal

11  hearing and conviction, J.R.G. was transported to an immigration detention center in El Paso, Texas,

12  where she remained in DHS custody until her release in March 2019. *Id*. ¶¶ 34, 43, 47.

13        Upon J.R.G.'s transfer to federal criminal custody on or around May 21, 2018, the mother and

14  daughter were separated, and M.A.R. was designated an unaccompanied minor and taken to a shelter

15  operated by Upbring Transitional Foster Care in El Paso, Texas. Compl. ¶¶ 22, 65, 66. M.A.R. remained

16  in this El Paso program until she was released to her father on July 12, 2018 upon his submission of

17  proof of parentage. *Id*. ¶ 68-69. After her release, M.A.R. was able to speak to her mother during 10-

18  minute phone calls. *Id*. ¶ 57. M.A.R. was reunited with her mother on March 30, 2019 after a positive

19  credible-fear finding by DHS; prior to that time, there had been determinations in June 2018 by an

20  asylum officer and an immigration judge that J.R.G. did not meet the minimum legal threshold of

21  establishing a credible fear of returning to El Salvador. *Id*. ¶¶ 49, 73.

22        **F.**    **Subsequent Policy Changes.**

23        After assuming office, President Biden took action to undo the policies that led to Plaintiffs'

24  separation and to reunify the families that were affected by those policies. On February 2, 2021, the

25  President issued an Executive Order that condemned the "human tragedy" of the prior Administration's

26  ZTP Policy, and that committed the United States government to "protect family unity and ensure that

27  children entering the United States are not separated from their families, except in the most extreme

28  circumstances where a separation is clearly necessary for the safety and well-being of the child or is

required by law." Family Reunification Task Force EO § 1. That Order created a Task Force to identify and reunify families separated under the ZTP Policy, and to make recommendations for the potential provision of immigration benefits and mental-health services to those separated families. *Id.* § 4. In September 2022, the Task Force issued a report showing that 2,766 children had been reunified and that 191 additional children were in the process of being reunified by the Task Force. Interim Progress Report, Interagency Task Force on the Reunification of Families 6 (Sep. 30, 2022).

## III.    LEGAL STANDARDS

### A.    Transfer Under 28 U.S.C. § 1404(a).

The FTCA provides an avenue for individuals to sue the federal government for conduct that constitutes a tort under state law. The applicable substantive state law is "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Venue for an FTCA claim is governed by Title 28, Section 1402(b), which permits such a claim to be prosecuted "in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b).

However, Section 1404(a) of Title 28 provides for transfer to another district court:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

*See also Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western District of Texas*, 571 U.S. 49, 62-63 (2013). A district court's analysis under Section 1404(a) considers "both private factors, which go to the convenience of the parties and witnesses, and public factors which go to the interests of justice." *Smith v. Corizon Health, Inc.*, No. 16-cv-00517-WHA, 2016 WL 1275514, at *2 (N.D. Cal. Apr. 1, 2016). In undertaking this analysis, courts in the Ninth Circuit consider various case-specific factors:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Ctr. for Biological Diversity v. Kempthorne*, No. 08-cv-1339-CW, 2008 WL 4543043, at *2 (N.D. Cal. Oct.

10, 2008). The moving party bears the burden of establishing that the proposed transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

### B. Dismissal for Lack of Subject Matter Jurisdiction.

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003). Courts must consider the threshold issue of jurisdiction before addressing the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Plaintiffs bear the burden of establishing jurisdiction because, by filing a complaint in federal court, they seek to invoke it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A district court cannot hear a suit against the United States unless the government has waived sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional in nature," *id.*, meaning that a party's failure to establish a waiver of sovereign immunity is properly resolved on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), *see Sierra Club v. Whitman*, 268 F.3d 898, 905-06 (9th Cir. 2001).

## IV.   ARGUMENT

### A. The Court Should Transfer This Action to the Western District of Texas.

The United States moves to transfer this case to the Western District of Texas "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). Both steps of the Section 1404(a) analysis are satisfied because (1) the Western District of Texas is the appropriate forum for this dispute and (2) the balance of relevant factors favors litigating this action in that venue.

#### 1.   Venue Is Proper in the Western District of Texas.

Section 1404(a) permits transfer to any district where the case "might have been brought." 28 U.S.C. § 1404(a). Pursuant to 28 U.S.C. § 1402(b), venue is proper in the Western District of Texas, where all of the allegedly tortious acts or omissions occurred. *See, e.g.*, *Barroca v. United States*, No. 19-cv-00699-MMC, 2019 WL 5722383, at *3 (N.D. Cal. Nov. 5, 2019) (granting motion to transfer venue under § 1404(a) in FTCA case where majority of allegations in plaintiff's complaint occurred in the transferee state); *Koval v. United States*, No. 2:13-CV-1630-HRH, 2013 WL 6385595, at *4 (D. Ariz. Dec. 6, 2013) (granting motion to transfer from District of Arizona to Eastern District of California

1   where "[t]he only connection that this case has to Arizona is that plaintiff happened to move there

2   sometime after the events upon which his claims are based occurred"); *see also* Part IV.A.2, *infra*.

### 2.   The Balance of Relevant Factors Strongly Favors Transfer.

4   Section 1404(a) balances the convenience and interests of the parties and the judicial districts "in

5   addition to the convenience of the witnesses." *See Barroca*, 2019 WL 5722383, at *2. Here, the

6   convenience of the parties and witnesses substantially favors transfer to Texas. Other than the two

7   Plaintiffs, who currently reside in this District, almost all of the anticipated witnesses are located outside

8   this District – indeed, many of them in the Western District of Texas. While the Complaint does not

9   name any individual agents or officers, it repeatedly alleges improper conduct by many different

10  government officials in connection with Plaintiffs' arrests, separation, and detention, which all occurred

11  in Texas. It is indisputable that none of this conduct took place in this District.

### a.   Almost All Operative Facts Alleged in Plaintiffs' Complaint Occurred in the Western District of Texas.

13

14  Plaintiffs' Complaint underscores that this is a case in which all of the allegedly tortious acts

15  occurred in the El Paso area of Texas, which is located in the Western District of Texas. First, Texas is

16  the state where the Plaintiffs illegally entered the United States. Compl. ¶ 18. Texas is also the state

17  where the Plaintiff parent and Plaintiff child were apprehended and detained and/or sheltered after

18  unlawful entry. *Id.* ¶¶ 4, 18-19, 47, 66, 68. Second, the alleged tortious act that is the centerpiece of

19  Plaintiffs' Complaint—family separation—occurred in Texas. The Complaint highlights that Plaintiffs'

20  action is intended to address the alleged harms that flowed from the separation of the Plaintiff child from

21  the Plaintiff parent. *See, e.g.*, *id.* ¶¶ 1, 5. And, as Plaintiffs acknowledge in their Complaint, Texas is the

22  state where they were separated. *Id.* ¶ 18-20.

23  Third, Texas is the state where all of the detentions for J.R.G. and M.A.R. occurred, including

24  where they were initially detained, where J.R.G. was held before and after her federal prosecution and

25  where M.A.R. was sheltered while in the custody and care of ORR. *See* Part II.E, *supra*. None of the

26  relevant complained-of acts occurred in this District. Simply put, the Complaint is devoid of any

27  allegation of contact between the Plaintiffs and this District, except for the singular allegation that after

28  J.R.G. was released in March 2019, she was reunited in Oakland with her daughter. Compl. ¶ 4.

1

### b.  The Convenience and Interests of the Parties Favor Transfer.

2       Factor two of the Ninth Circuit's test (which state is "most familiar with the governing law")

3  favors transfer because Plaintiffs' causes of action primarily sound in the common law of Texas, where

4  the alleged torts occurred. *See, e.g.*, *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006).

5  Plaintiffs' claims will largely be decided under Texas state law and, thus, the Western District of Texas

6  is likely the district "most familiar with the governing law." *Barroca*, 2019 WL 5722383, at *2 ("the

7  majority of the causes of action alleged in the complaint will be decided under Kansas law, and,

8  consequently, the District of Kansas is likely the district 'most familiar with the governing law.'").

9       Factors four ("respective parties' contacts with the forum") and five ("contacts relating to the

10  plaintiff's cause of action in the chosen forum") favor transfer. As described *supra*, almost all of the

11  conduct alleged in the Complaint occurred in the Western District of Texas. Plaintiffs' Complaint

12  alleges no contacts relating to Plaintiffs' causes of action in the Northern District of California; their

13  three causes of action are grounded in complaints about tortious acts that occurred entirely in the

14  Western District of Texas. *See* Compl. ¶ 87 (cause of action no. 1: forcible separation of migrant parent

15  and child); *id.* ¶¶ 92-94 (cause of action no. 2: initiation of prosecution, unaccompanied-minor

16  designation, separation); *id.* ¶ 98-101 (cause of action no. 3: compelling minor child not to return to

17  parent without parental consent, concealing child's location from parent after federal prosecution). And

18  while the Complaint pleads 55 paragraphs of allegations detailing alleged tortious conduct directed at

19  J.R.G. and M.A.R. (*id.* ¶¶ 17-36, 41-63, 65-76), there is only one sentence that contains a connection to

20  this District, notably not occurring until after separation and detention: J.R.G. was reunited with M.A.R.

21  in March 2019 in Oakland after J.R.G. was released from the El Paso ICE Service Processing Center.

22       Factor eight ("ease of access to sources of proof") also clearly favors transfer to the Western

23  District of Texas. As discussed, that District is where the Plaintiffs entered the United States and is the

24  location of facilities where apprehension, initial detention, and separation occurred, as well as the

25  location of the shelter facility where M.A.R. resided in the care and legal custody of ORR. Accordingly,

26  the critical witnesses who have knowledge of the facts regarding the government's allegedly tortious

27  conduct are located in or close to the Western District of Texas. To the government's knowledge, no

28  potential government witnesses for the claims against it are in or near this District. While it is sometimes

presumed that employees of the government are available in any venue, this does not diminish the burden to produce the numerous government witnesses for depositions and for trial in California.

Plaintiffs' allegations that they experienced "lasting emotional distress and trauma," suggesting ongoing injuries in this District, *e.g.*, *id.* ¶¶ 84, 102, do not alter the analysis. While these allegations may be relevant to the issue of damages, that issue is less important than liability in a Section 1404(a) transfer analysis in general tort cases. *See Morris v. Safeco Ins. Co.*, No. C 07-2890 PJH, 2008 WL 5273719, at *5 (N.D. Cal. Dec. 19, 2008) (noting greater importance of "material testimony tending to establish a basis to impose civil liability" than testimony on "the severity of [plaintiff's] emotional distress (*i.e.*, plaintiff's damages)") in Section 1404(a) transfer analysis); *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1108-09 (N.D. Cal. 2001) (damages witnesses in this district "not as important to the litigation" as witnesses "relevant to the underlying question of liability" in the transferee district).

Factor six ("differences in cost of litigating in the two forums") also favors transfer. It will cost much more to litigate this case in the Northern District of California than it would in the Western District of Texas. The United States anticipates that, if this case proceeds past the motion-to-dismiss stage, a significant amount of discovery will concern initial detention or sheltering facilities located in the El Paso, Texas area. Further, the United States may have to call a significant number of witnesses relating to the detentions and separations that occurred at these facilities—including numerous CBP and ICE officials, officers and agents as well as employees of the shelter where M.A.R. was housed—all of which are in the Western District of Texas. Conducting site visits, meeting with witnesses, flying back and forth from California to Texas while accommodating witness, site and attorney time will entail substantial costs. *See, e.g.*, *Nordquist v. Blackham*, No. C06-5433 FDB, 2006 WL 2597931, at *4 (W.D. Wash. Sept. 11, 2006) ("Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or be deposed . . . . Here, all potential witnesses and parties, save one, reside in northern Texas. Accordingly, this factor favors transfer."); *see also Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013) (similar analysis).

Factor seven ("the availability of compulsory process") also favors transfer to the Western District of Texas. As noted in the Complaint, the shelter run by Upbring Transitional Foster Care which was utilized by ORR for the Plaintiff child was not a government facility, nor were the individuals

1    working there at the time government employees. Compl. ¶¶ 66-67. Accordingly, the government does

2    not control these non-party witnesses should they be unwilling to travel to California to testify;

3    compulsory process would not be available in the Northern District. *See* Fed. R. Civ. P. 45(c).

4           There is only one factor that possibly favors maintaining this action in this District: Plaintiffs'

5    choice of forum (factor three). However, deference to a plaintiff's chosen venue is substantially reduced

6    where that locale lacks any real connection to the activities alleged in the complaint. "[W]here the

7    transactions giving rise to the action lack a significant connection to the plaintiff's chosen forum, then the

8    plaintiff's choice of forum is given considerably less weight, even if the plaintiff is a resident of the

9    forum." *Joe Boxer Corp. v. R. Siskind & Co., Inc.*, No. C 98–4899 SI, 1999 WL 429549, at *9 (N.D. Cal.

10   June 8, 1999) (granting transfer); *see also Hansen v. Combined Transp., Inc.*, No. C13-1298RSL, 2013

11   WL 5969863 (W.D. Wash. Nov. 7, 2013); *Nordquist*, 2006 WL 2597931, at *4 ("A plaintiff's choice of

12   forum is given much less weight when the forum lacks any significant contact with the activities alleged

13   in the complaint. As previously noted, the business is located in Texas, the Defendants reside in Texas,

14   and the Plaintiff resided in Texas while operating the business and during significant negotiations of the

15   sale. This factor weighs heavily in favor of transfer."); *accord Sorensen v. Daimler Chrysler AG*, No. C

16   02-4752 MMC (EDL), 2003 WL 1888866, at *3 (N.D. Cal. Apr. 11, 2003). That is precisely the case

17   here. *See supra* at 6, 9 (noting lack of connection between the allegedly tortious conduct pled in

18   Plaintiffs' Complaint and this District). Plaintiffs' residency in this District cannot outweigh the

19   substantial contacts Plaintiffs and Defendant maintain with the Western District of Texas. By contrast,

20   the inconvenience to Defendant of litigating this case in the Northern District of California instead of

21   Texas would be significantly greater.

22                            **c.   The Interests of Justice Favor Transfer.**

23          Finally, the interests of justice also favor transfer. Plaintiffs' allegations focus significantly on

24   the behavior of government agents operating in the Western District of Texas and the conditions of

25   facilities therein. The Western District of Texas has the greater interest in keeping the people located in

26   that District safe from alleged government wrongdoing. *See, e.g.*, *Canal A Media Holding, LLC v.*

27   *USCIS*, No. 17-cv-6491, 2018 WL 7297829, at *4 (C.D. Cal. Sept. 30, 2018) (transferee district "has a

28   great interest in protecting its citizens from the unreasonable actions of a government agency").

Defendant recognizes that this Court denied a similar motion to transfer in another case. *Wilbur P.G. v. United States*, No. 4:21-cv-04457-KAW, 2022 WL 3024319, at *3-4 (N.D. Cal. May 10, 2022). But transfer analysis is inherently fact-dependent, and the facts of the operative pleading in this case differ from those presented in the *Wilbur P.G.* case. Unlike there, all of the allegations concerning apprehension, detention and separation of parent and child occurred in the District to which Defendant seeks transfer. Defendant respectfully suggests that this Court should follow the analysis of the Northern District of Illinois, which recently transferred a similar case to the Western District of Texas. *D.A. v. United States*, No. 1:20-cv-03082, ECF No. 85 (N.D. Ill. Aug. 11, 2022) (attached as Brakebill Decl. Ex. A). As Judge Pacold explained there, "the location of material events weighs in favor of the Western District of Texas," because "the majority of critical events occurred in the Western District of Texas, and that is where most of the challenged conduct took place." Brakebill Decl. Ex. B at 8:19-25. Judge Pacold emphasized that the plaintiffs were "originally arrested and detained," "held at a holding center," and "separated" in the Western District of Texas. *Id.* at 9:8-17. Thus, "even though some events occurred in the Northern District of Illinois, the bulk of events and the most important events occurred in the Western District of Texas. This weighs in favor of transfer." *Id.* at 10:6-9. Therefore, while "the Northern District of Illinois is plaintiffs' chosen forum," "[t]he heart of this controversy is ultimately based upon conduct and events in the Western District of Texas, and it would clearly be more convenient and in the interests of justice for this litigation to proceed there." *Id.* at 14:15-20.

So too here. Plaintiffs' choice of forum is "entitled to 'little deference,'" if any, given the lack of connection between this District and the activities alleged in the Complaint. *See AV Media, Pte, Ltd. v. OmniMount Sys., Inc.*, No. C 06-3805 JSW, 2006 WL 2850054, *3 (N.D. Cal. Oct. 5, 2006) (granting motion to transfer where, despite some connections to the Northern District, "the facts giving rise to the underlying causes of action have no material connection to this forum"). The heart of this controversy is based on conduct and events that allegedly occurred **only** in the Western District of Texas, an even more compelling reason for transfer in this case than in *D.A.*.

**B.   In the Alternative, Plaintiffs' Claims Should Be Dismissed For Lack of Subject Matter Jurisdiction.**

The government does not defend the merits of the policies at issue in this case, which have now

1   been repudiated. Indeed, President Biden has condemned the "human tragedy" that resulted from the

2   ZTP Policy. Family Reunification Task Force EO § 1. But Plaintiffs cannot prevail on their FTCA

3   claims because this Court lacks subject-matter jurisdiction under established legal principles.

### 1.   Plaintiffs' Claims Are Barred By the Discretionary Function Exception.

#### a.   Legal Standard for Discretionary Function Exception Analysis.

6   The United States, as a sovereign entity, is immune from suit except insofar as it has specifically

7   and expressly consented to be sued. *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981) (quoting *United*

8   *States v. Testan*, 424 U.S. 392, 399 (1976)). "[T]he terms of [the government's] consent to be sued in

9   any court define that court's jurisdiction to entertain the suit." *Lehman*, 453 U.S. at 160 (internal quotes

10  and citations omitted). Absent a specific, express waiver, sovereign immunity bars a suit against the

11  government for lack of subject matter jurisdiction. *See Meyer*, 510 U.S. at 475-76.

12  The FTCA is "a limited waiver of sovereign immunity." *Gonzalez v. United States*, 814 F.3d

13  1022, 1026 (9th Cir. 2016). The statute allows individuals to sue the United States when a federal

14  employee's conduct, within the scope of his or her employment, causes "injury or loss of property, or

15  personal injury or death." 28 U.S.C. § 1346(b)(1). However, the FTCA's waiver of sovereign immunity

16  is subject to exceptions. *See id.* § 2680. When an exception applies, the United States retains its

17  sovereign immunity, the court lacks jurisdiction, and the claim must be dismissed. *See Nurse v. United*

18  *States*, 226 F.3d 996, 1000 (9th Cir. 2000). One such exception—the "discretionary function exception"

19  ("DFE")—bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise

20  or perform a discretionary function or duty on the part of a federal agency or an employee of the

21  Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see also United*

22  *States v. Gaubert*, 499 U.S. 315, 325 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

23  The Supreme Court has set forth a two-part test to determine if the DFE applies. *Gaubert*, 499

24  U.S. at 328-32. Courts must first ask whether the challenged conduct "'involve[s] an element of

25  judgment or choice,' as determined by the 'nature of the conduct, rather than the status of the actor.'"

26  *Teplin v. United States*, No. 17-cv-02445-HSG, 2018 WL 1471907, at *4 (N.D. Cal. Mar. 26, 2018)

27  (quoting *Gaubert*, 499 U.S. at 322); *see also Berkovitz*, 486 U.S. at 536; *Chadd v. United States*, 794

28  F.3d 1104, 1109 (9th Cir. 2015). The first prong is met unless "'a federal statute, regulation, or policy

specifically prescribes a course of action for an employee to follow.'" *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996) (quoting *Berkovitz*, 486 U.S. at 536); *see also Kelly v. United States*, 241 F.3d 755, 761 (9th Cir. 2001) ("[A] general regulation or policy . . . does not remove discretion unless it specifically prescribes a course of conduct."); *Reed ex rel. Allen v. U.S. Dep't of Interior*, 231 F.3d 501, 504 (9th Cir. 2000) (since "[n]o federal statute, regulation, or policy require[d] a particular course of action," the agency's actions "could be no other way than by the exercise of discretion").

Thus, where no federal statute, regulation or policy prescribes a specific course of action to follow, the challenged conduct involves an element of judgment. *See Berkovitz*, 486 U.S. at 536. Even if a regulation contains a mandate to do something, if that mandate involves judgment or choice, the discretion element is satisfied. *See GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174-75 (9th Cir. 2002). Further, where the policies that inform the conduct at issue allow the exercise of discretion, the agency's acts or failures to act are presumed to be discretionary. *Lam v. United States*, 979 F.3d 665, 674 (9th Cir. 2020). Finally, the applicable policies and authorities must be considered in context—"the presence of a few, isolated provisions cast in mandatory language does not transform an otherwise suggestive set of guidelines into binding agency regulations." *Id.* at 677.

Second, if the conduct involves choice or discretion, courts must next determine whether "the judgment of the government employee [is] 'of the kind that the discretionary function exception was designed to shield.'" *Teplin*, 2018 WL 1471907, at *4 (quoting *Gaubert*, 499 U.S. at 322-23). The DFE is designed to "'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy' through a tort action"—therefore, courts construe it as "protect[ing] only governmental actions and decisions based on considerations of public policy." *Id.*; *see also United States v. Varig Airlines*, 467 U.S. 797, 814 (1984). Thus, the focus of this inquiry is "whether the 'nature of the actions taken,' pursuant to an exercise of discretion, 'are susceptible to policy analysis.'" *Teplin*, 2018 WL 1471907, at *4 (quoting *Gaubert*, 499 U.S. at 325); *see also Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005); *Nurse*, 226 F.3d at 1001.

The government need not "prove that it considered these factors and made a conscious decision on the basis of them." *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1028 (9th Cir. 1989). Indeed, under the second prong, the government actors' subjective motive is immaterial because "the

focus" of the inquiry "is 'not on the agent's subjective intent in exercising the discretion conferred by statute or regulation,' but rather 'on the nature of the actions taken and on whether they are susceptible to policy analysis.'" *Gonzalez*, 814 F.3d at 1027-28. Where the relevant policies provide for discretion, it must be presumed that the government's actions are grounded in policy when exercising that discretion. *Lam*, 979 F.3d at 681. And the statutory text confirms that the exception applies "whether or not the discretion involved [was] abused" by United States officials. 28 U.S.C. § 2680(a); *see also Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (the DFE applies even where there are allegations of "malicious and bad faith conduct" because "subjective intent is irrelevant to [the] analysis"); *Routh v. United States*, 941 F.2d 853, 855 (9th Cir. 1991) ("Negligence is irrelevant to the discretionary function inquiry."); H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10. If both prongs of the *Gaubert*/*Berkovitz* test are met, the DFE applies, the United States retains its sovereign immunity, the Court lacks jurisdiction, and the claim must be dismissed. *Nurse*, 226 F.3d at 1000.

### b. The Decision to Detain Plaintiffs Separately Is Subject to Discretion Grounded in Policy Considerations.

Although Plaintiffs allege harm stemming from the government's decisions to apprehend the parent Plaintiff, to prosecute her for unlawful entry, and to separate her from her child, the government decisions at issue in Plaintiffs' Complaint are subject to the DFE because they involved an element of judgment or choice and are susceptible to policy analysis.

First, the decisions described in Plaintiffs' Complaint are discretionary. As the Supreme Court has recognized, "[t]he Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Indeed, "[t]he Supreme Court has long recognized that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'" *In re Sealed Case*, 829 F.2d 50, 63 (D.C. Cir. 1987) (Williams, J., concurring in part) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)); *Smith v. United States*, 375 F.2d 243, 247 (5th Cir. 1967) ("decisions concerning enforcement" are matters of "discretion"). And that prosecutorial discretion was in fact exercised here, where the Plaintiff parent was criminally prosecuted. *See* Compl. ¶¶ 26, 29.

Indeed, concerns about "subjecting the prosecutor's motives and decision making to outside

inquiry" are magnified in the immigration context. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999). There, the federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1).[2] "Congress has placed the responsibility of determining where aliens are detained *within the discretion* of the [Secretary]." *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added); *see also Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention"); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (recognizing the "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate").

Decisions relating to noncitizens, including placement and detention, are so "vitally and intricately interwoven with contemporaneous policies [and] so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *United States v. Lopez-Flores*, 63 F.3d 1468, 1474 (9th Cir. 1995) (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952)); *see also Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012) ("Because the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy, . . . it falls within [the DFE]."); *accord Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("[A]ssignment to particular institutions or units . . . must be viewed as falling within the discretionary function exception to the FTCA"); *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions where to place prisoners are policy-based decisions protected by the DFE); *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) (decisions whether to detain or release are policy-based decisions protected by the DFE); *Murillo v. United States Dep't of Justice*, No. CV 21-00425-TUC-CKJ, 2022 WL 16745333, at *7 (D. Ariz. Nov. 7, 2022) ("[T]he Ninth Circuit has consistently concluded that actions taken in prisons fall under the discretionary function exception.").

---

[2] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" mean the Secretary of Homeland Security. *See Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

This discretion necessarily entails decisions regarding with whom noncitizens are detained, including decisions regarding whether adults and minors can be detained in the same facility and whether to detain family members together. *See Peña Arita v. United States*, 470 F. Supp. 3d 663, 691-92 (S.D. Tex. 2020) (decisions by DHS to separate family members are protected by the DFE). Moreover, the Flores Agreement does not require release of a parent or mandate that parents be housed with a child. *Flores II*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007); *see* Part II.C, *supra*. In this case, the only legal requirement Plaintiffs allege government officials violated (*see* Compl. ¶ 50) does not operate to mandate a specific course of action to have been followed in connection with J.R.G.'s prosecution and her subsequent separate detention from her child.[3] Instead, the challenged decisions resulted from the exercise of discretion, satisfying the first prong of the DFE.

For similar reasons, the decision to determine that the children were "unaccompanied" within the meaning of the TVPRA is a decision covered by the DFE. *See* 6 U.S.C. § 279(g)(2). Whether a parent is "available to provide care and physical custody" is a policy question vested in federal officials. *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016); *see also Baie v. Sec'y of Def.*, 784 F.2d 1375, 1377 (9th Cir. 1986) ("[I]nterpretation of the statute is a plainly discretionary administrative act the 'nature and quality' of which Congress intended to shield from liability under the FTCA."); *Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001). Here, the Plaintiff parent was detained and transferred into criminal custody for prosecution, prosecuted, and thereafter turned over to ICE for housing in secure immigration detention. In such circumstances, the DFE protects the officials' determination that the children should have been deemed unaccompanied and thus transferred to the custody of ORR. *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 287 (3d Cir. 1995) (DFE protects decision when it "necessarily reflects the decisionmaker's judgment that it is more desirable to make a decision based on the currently available information than to wait for more complete data or more confirmation of the existing data.").

---

[3] Plaintiffs allege the June 26, 2018 *Ms. L* injunction "required Defendant to reunify J.R.G. and M.A.R. within thirty days." Compl. ¶ 50. But M.A.R. was released within 30 days thereof. *Id.* ¶ 43.

Second, as other courts have recognized, *policies* related to the immigration custody of adults as well as prosecution policy set forth in the Zero-Tolerance Memorandum—which was subsequently revoked—"amount[] to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General" such that the analysis is not exclusively a question of whether front-line employees tasked with implementing the policy possessed some element of choice. *Mejia-Mejia v. ICE*, No 18-1445 (PLF), 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019); *see also Peña Arita*, 470 F. Supp. 3d at 686-87 ("[E]ven if the Attorney General's policy is mandatory, faithful implementation by agents in the field is protected by the discretionary function exception."). The Court should decline to engage in the sort of "second-guessing" and inquiry into government actors' intent in making decisions that the discretionary function exception was designed to prevent. *Berkovitz*, 486 U.S. at 536; *see also Lam*, 979 F.3d at 673 (citing *Varig*, 467 U.S. at 814). In determining the applicability of the DFE, the Court looks only at the nature of the conduct or decision at issue from a general and objective perspective— subjective intent is not part of the analysis. *Gonzalez*, 814 F.3d at 1032. Here, however, the government's decisions were not merely "susceptible to" policy analysis, but the government spelled out the policies it sought to further through its enforcement efforts in a series of Executive Branch directives. Notwithstanding the merit of those prior policy choices, they were policy choices nonetheless, as the Complaint specifically alleges. *See, e.g.*, Compl. ¶¶ 36-40.

In *Peña Arita*, 470 F. Supp. 3d 663, the court dismissed FTCA claims similarly arising from the ZTP Policy. As here, the plaintiffs alleged that the practices at issue were unlawful and challenged various associated conditions of confinement. *Id.* at 686-87. In dismissing the claims, the *Peña Arita* court agreed with the government that the "family separation policy itself and its implementation by officers in the field are discretionary." *Id.* at 687 ("[P]rosecutorial judgment is a matter of choice, and obviously grounded in considerations of public policy—such as the United States Attorney General's priorities and United States Attorneys' discretion—that is intended to be shielded by the discretionary function exception."). The court concluded that the challenged decision-making was "'grounded in social, economic, and policy'" considerations that the court was "without jurisdiction to second-guess." *Id.* (quoting *Gaubert*, 499 U.S. at 323). The *Peña Arita* court thus held that, "to the extent Plaintiffs attempt to bring a constitutional tort claim against the United States under the Federal Tort Claims Act,

or assert that the Constitution itself furnishes a nondiscretionary standard of medical care that is actionable under the FTCA in the event such care is not provided, such claim is entirely jurisdictionally barred." *Id.* at. 688. The same analysis applies here.

### c. Plaintiffs' Assertion of Unconstitutional Conduct Does Not Preclude Application of DFE in this Case.

A plaintiff cannot circumvent the DFE simply by alleging a violation of a constitutional right. Congress did not create the FTCA to address constitutional violations, but rather to address violations of state tort law committed by federal employees. *See Meyer*, 510 U.S. at 477 (recognizing that "§ 1346(b) does not provide a cause of action for" a "constitutional tort claim"). In *Gaubert*, the Supreme Court held that, where "a federal statute, policy, or regulation specifically prescribes a course of action for an employee to follow," there is no further discretion to exercise. 499 U.S. at 322. The Constitution is no different: in some cases, the Constitution may establish such a specific prescription that it removes an official's discretion, but the requirement of specificity applies with the same force whether the prescription is found in the Constitution or a statute. And in *Nurse*, the Ninth Circuit held that a constitutional violation "may" remove conduct from discretion but expressly left open the question of "the level of specificity with which a constitutional proscription must be articulated to remove the discretion of a federal actor." 226 F.3d at 1002 n.2; *see also Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1065 (9th Cir. 2020) ("[I]f the district court instead determines that Defendants did violate a nondiscretionary federal constitutional . . . directive, the FTCA claims may be able to proceed to that degree."), *rev'd on other grounds*, 142 S. Ct. 1051 (2022); *accord Garza v. United States*, 161 F. App'x 341, 343 (5th Cir. 2005) (holding that Eighth Amendment's prohibition against cruel and unusual punishment did not define a course of action "specific enough to render [DFE] inapplicable").

Here, Plaintiffs do not allege the violation of any constitutional provision with the degree of specificity required by *Gaubert*. Plaintiffs offer no specificity, instead simply making the bald assertion that "Plaintiffs suffered significant physical and emotional harm as a direct result of Defendant's unlawful conduct and violation of Plaintiffs' constitutional and statutory rights." Compl. ¶ 5. Further, while the Constitution may establish in some cases such a specific prescription that it eliminates a government official's discretion, Plaintiffs also do not allege the violation of a specific Constitutional

1  right that was clearly established at the times relevant to their Complaint. *See Reyna as next friend of*

2  *J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019) ("[W]e . . . have been unable to find a substantive

3  due process right to family unity in the context of immigration detention pending removal."); *W.S.R. v.*

4  *Sessions*, 318 F. Supp. 3d 1116, 1133 (N.D. Ill. 2018) (there is no authority for "the proposition that the

5  substantive due process [right] to family integrity dictates release of the parents (as distinct from

6  reunification)"); *Ms. L v. ICE*, 302 F. Supp. 3d 1149, 1159 n.3 (C.D. Cal. 2018) (plaintiffs did not

7  challenge the decision to detain adult noncitizens while in removal proceedings for the "sound reasons"

8  that the law calls for mandatory detention, with parole available in strictly limited circumstances);

9  *Payne-Barahona v. Gonzalez*, 474 F.3d 1, 2 & n.1 (1st Cir. 2007) ("The circuits . . . have uniformly held

10  that a parent's otherwise valid deportation does not violate a child's constitutional right.").

11        Thus, even if the conduct in question were later found unconstitutional, the DFE would still

12  apply here. As the Supreme Court has long recognized, conduct may be discretionary even if it is later

13  determined to have violated the Constitution. The common-law doctrine of official immunity thus

14  applies to the exercise of "discretionary functions" even when conduct violates the Constitution, so long

15  as the constitutional right was not defined sufficiently at the time of the act so that the official should

16  have known the act was unconstitutional. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)

17  (discretionary functions shielded from liability insofar as conduct "does not violate clearly established

18  statutory or constitutional rights of which a reasonable person would have known"). Whether, in

19  retrospect, the separations at issue here violated such a right has no bearing on the application of the

20  DFE in this case. *See Denson v. United States*, 574 F.3d 1318, 1137-38 (11th Cir. 2009).[4]

21        Indeed, even before it specifically addressed the qualified immunity standards applicable to

22  federal employees, the Supreme Court in *Butz v. Economou*, 438 U.S. 478 (1978), explicitly recognized

23  that DFE would apply even if alleged conduct might later be held unconstitutional. The Court held that

24  officials sued for violations of constitutional rights were entitled to qualified, but not absolute immunity.

25  The Court explained that were it otherwise, the recently recognized *Bivens* remedy would be illusory,

26

27  _____

[4] In other cases, district courts have held that the DFE is inapplicable because the plaintiffs allege that the Constitution was violated. *E.g.*, *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020).

28  But those cases failed to follow the rule, established in *Gaubert*, that an official loses discretion only if a source of law "specifically prescribes" the course of conduct.

1   and, as relevant here, "no compensation would be available from the Government, for the Tort Claims

2   Act prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been

3   abused." *Id.* at 505. *Butz* and subsequent decisions thus leave no doubt that conduct that violates the

4   Constitution may constitute the type of abuse of discretion that falls within the scope of the DFE.

5        The Ninth Circuit has declined to decide "the level of specificity with which a constitutional

6   proscription must be articulated in order to remove the discretion of a federal actor." *Nurse*, 226 F.3d at

7   1002 n.2; *Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202, 1251 (9th Cir. 2019) ("[I]f the district

8   court instead determines that Defendants did violate a nondiscretionary federal constitutional . . .

9   directive, the FTCA claims may be able to proceed to that degree."), *rev'd on other grounds*, 142 S. Ct.

10   1051 (2022).  A court should require the same level of specificity that would be required in determining

11   whether a statute left an employee with "no discretion to abuse."  In any event, whatever the precise

12   standard, it is not satisfied here. Regardless of whether some or all of the alleged acts reflected an abuse

13   of discretion, Plaintiffs have identified nothing in the decisions of the Supreme Court or the Ninth

14   Circuit that removed any official's discretion with respect to any of the categories of asserted actions by

15   "specifically prescribe[ing] a course of action for an employee to follow." *Gaubert*, 499 U.S. at 322.

16   Indeed, as the Fourth Circuit observed, "we . . . have been unable to find a substantive due process right

17   to family unity in the context of immigration detention pending removal." *Hott*, 921 F.3d at 210-11.

18       **2.**    **Plaintiffs' Claims Relating to the Decision to Detain The Adult Separately**
19            **From Her Child Are Barred by the FTCA's Exception for Actions Taken While Reasonably Executing Law.**

20        Plaintiffs' claims relating to the decision to detain the parent separately from the child are

21   independently precluded because the FTCA prevents the United States from being held liable for "[a]ny

22   claim based upon an act or omission of an employee of the Government, exercising due care, in the

23   execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C.

24   § 2680(a). Thus, "[w]here government employees act pursuant to and in furtherance of regulations,

25   resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir.

26   1957); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim based on

27   "enforcement of 'rules and regulations'" barred by § 2680(a)).

28        This exception "bars tests by tort action of the legality of statutes and regulations." *Dalehite v.*

*United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA does not waive sovereign immunity for claims based on employees' acts "performed under and in furtherance of the regulation . . . even though the regulation may be irregular or ineffective"). Thus, where a government employee's actions are authorized by statute or regulation—even if that statute or regulation is later found unconstitutional or invalidated—the claim must be dismissed for lack of subject matter jurisdiction. *See Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 366 (7th Cir. 1979); *Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950).

Here, the United States is required to "transfer the custody" of children to the care of ORR "not later than 72 hours after" determining that there is no parent available to provide care and physical custody, absent exceptional circumstances. 8 U.S.C. § 1232(b)(3). In this case, the government made the determination that because the Plaintiff parent was referred for criminal prosecution and transferred to the El Paso County Detention Facility for criminal detention, she was unable to provide care and physical custody for the Plaintiff child. The government made the discretionary decision to prosecute the adult Plaintiff and once that protected discretionary determination had been made, the TVPRA—which Plaintiffs do not challenge—required that the child be transferred to ORR custody. The enforcement of that statutory command cannot form the basis of an FTCA claim.[5]

### 3. Plaintiffs' Claims Are Barred Because There Is No Private-Person Analogue.

Plaintiffs' claims also fail because the government acts that Plaintiffs challenge have no private-person analogue. The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like

---

[5] In ruling otherwise, district courts have stated no statute or regulation "require[s] the separation of Plaintiffs upon their entry into the country." *A.P.F.*, 492 F. Supp. 3d at 996. But federal law does require that children be placed into ORR custody if their parents are unable to provide care and physical custody. And as described, the decision to detain those parents is quintessentially discretionary.

1  circumstances." 28 U.S.C. § 2674. The FTCA thus does not waive sovereign immunity for claims

2  against the United States based on governmental "action of the type that private persons could not

3  engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626

4  (2d Cir. 1988) (internal quotes omitted). The FTCA "requires a court to look to the state-law liability of

5  private entities, not to that of public entities, when assessing liability under the FTCA." *United States v.*

6  *Olson*, 546 U.S. 43, 45-46 (2005). Though the private analogue need not be exact, a plaintiff must offer

7  "a persuasive analogy" showing that the government actor sued would be subject to liability under state

8  law if it were a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

9      Because only the federal government has the authority to enforce federal criminal and

10  immigration laws and make related detention determinations, there is no private-person analogue that

11  would support a claim under the FTCA. The alleged harms here stem from the federal government's

12  decision to enforce federal immigration laws, criminally prosecute certain individuals, and hold the

13  Plaintiff parent in custody pending criminal prosecution or immigration proceedings, resulting in the

14  Plaintif child's placement in ORR's care and custody. The United States has not waived its sovereign

15  immunity for such decisions to enforce federal law, as they have no private-person counterpart. *See, e.g.*,

16  *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no

17  private analogue to governmental withdrawal of immigration benefits."); *Elgamal v. Bernacke*, 714 F.

18  App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently

19  analogous to the negligent denial of an immigration status adjustment application, that claim must be

20  dismissed as well."); *Elgamal v. United States*, No. 13-00967, 2015 WL 13648070, at *3 (D. Ariz. July

21  8, 2015) (recognizing that "immigration matters" are "an inherently governmental function").[6]

22          **4.      Plaintiffs' Claims Are Impermissible Direct Liability, Systemic Tort Claims.**

23      The FTCA's limited waiver of sovereign immunity allows a plaintiff to sue the United States for

24  damages arising from certain torts committed by federal employees acting within the scope of their

25

26  [6] Two courts found an analogue to nursing home employees, relying on *Est. of Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2020 WL 1158552, *2 (D. Ariz. Mar. 10, 2020). *C.M. v. United States*, No. CV-

27  19-05217-PHX-SRB, 2020 WL 1698191, *3 (D. Ariz. Mar. 30, 2020); *A.P.F.*, 492 F. Supp. 3d at 995.
     *Shartle* analogized to a nursing home's state-law duty to protect vulnerable adults. But a nursing home's

28  duty to safeguard against neglect is wholly different from the federal government's enforcement of
     federal criminal and immigration laws and is not a "persuasive analogy" required for FTCA jurisdiction.

1  employment. *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995). As the Ninth Circuit has held,

2  the terms "person" and "employee of the government," as used in the FTCA, mean individuals and

3  natural persons, not institutions or corporate entities. *Adams v. United* States, 420 F.3d 1049, 1052-55

4  (9th Cir. 2005). Hence, a plaintiff cannot assert systemic claims or seek to hold the United States

5  directly liable under the FTCA, but must instead allege tortious conduct by individual federal

6  employees, acting within the scope of their employment, for whom the United States has assumed

7  liability under the FTCA. *Lee v. United States*, No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258,

8  at *6 (D. Ariz. Sept. 18, 2020) (applying *Adams*; dismissing claims of "generalized negligence").

9       As in *Lee*, Plaintiffs seek to raise direct liability and institutional tort claims against the United

10  States, attributing the alleged tortious conduct to the government as a whole, referring to "the United

11  States," "the U.S. government," "the federal government," and "the government" rather than alleging

12  specific tortious conduct by specific federal employees for whom the United States must assume

13  liability. Compl. ¶¶ 1-2, 6, 77. The FTCA's limited waiver of sovereign immunity does not encompass

14  such systemic, institutional tort claims or "generalized theories" of tortious conduct "asserted against the

15  staff and employees of federal institutions as a whole." *Lee*, 2020 WL 6573258, at *6; Brakebill Decl.

16  Ex. C (Order, *E.C.B. v. United States*, No. 2:22-cv-00915, ECF No. 24 at 9 (D. Ariz. Nov. 8, 2022))

17  ("claims against the United States for the tortious misconduct of the government itself or government

18  agencies, i.e., claims based on executive orders, memoranda, or policies regarding the separation of

19  families entering the United States without authorization" are non-actionable under the FTCA).

20  **V.    CONCLUSION**

21       For the foregoing reasons, Defendant respectfully requests that the Court transfer this action to

22  the Western District of Texas or, in the alternative, dismiss Plaintiffs' Complaint.

23  Dated: December 5, 2022                    Respectfully submitted,

24                                             STEPHANIE M. HINDS
                                               United States Attorney
25
                                                */s/ Kenneth Brakebill*
26                                             Kenneth Brakebill
                                               Assistant United States Attorney
27                                             Counsel for Defendant

28