Julianna Rivera Maul (SBN 290955)
The Law Office of Julianna Rivera
420 3rd St., Ste 200
Oakland, CA 94067
Tel: 510-473-2141

Matt Adams*
Aaron Korthuis*
Northwest Immigrant Rights Project
615 2nd Ave, Ste 400
Seattle, WA 98104
Tel: 206-957-8611

*Admitted pro hac vice

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| J.R.G. and M.A.R., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 4:22-cv-5183 <br><br> **OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT** <br><br> Date: February 16, 2023 <br> Time: 1:30 pm <br> Place: Remote via Zoom <br><br> The Hon. Kandis A. Westmore |

# TABLE OF CONTENTS

**INTRODUCTION**................................................................................................................ **1**

**ARGUMENT** ..................................................................................................................... **3**

  I.   The § 1404 Factors Strongly Favor Denying Defendant's Motion and Allowing Plaintiffs
to Pursue This Case in Their Home District. ................................................................ 3

    A. Plaintiffs' Choice of Forum Should Be Given Great Weight and Deference. ................. 4

    B. Key Witnesses Are in This District and Defendant Has Not Identified Specific
Witnesses in Its Requested Transfer District. ............................................................. 5

    C. Plaintiffs Have Substantial Contacts Here and Experienced Harm in This District. ........ 6

    D. Costs to Litigate in Texas Would Effectively Bar Plaintiffs from Litigating Their
Claims. ....................................................................................................................... 7

    E. The Accessibility of Evidence and Requiring Witnesses to Testify Weighs in Favor of
Plaintiffs. .................................................................................................................... 9

    F. This Court Is Amply Qualified to Apply Texas Tort Law to Plaintiffs' Claims. .............. 9

    G. The Interests of Justice and Public Interests Favor This Forum. .................................. 10

  II.   The Court Should Deny the Motion to Dismiss**.** ........................................................... 11

    A. The Discretionary-Function Exception Is Inapplicable to This Case. ........................... 11

      1. Federal Officers Have No Discretion to Violate the U.S. Constitution. ...................... 11

      2. Defendant's Officers Followed a Clear Policy Directive and Did Not Exercise Any
Individual Discretion in Separating J.R.G. and M.A.R. ............................................... 22

    B. The Due-Care Exception Does Not Bar Plaintiffs' Claims. ......................................... 23

    C. A Private-Person Analogue for Plaintiffs' Claims under Texas Law. ............................ 25

    D. Plaintiffs' Claims Are Not Impermissible Systemic Torts. .......................................... 28

**CONCLUSION** ................................................................................................................. **29**

# TABLE OF AUTHORITIES

**Cases**

*A.E.S.E. v. United States,*
    No. 21-CV-0569 RB-GBW, 2022 WL 4289930 (D.N.M. Sept. 16, 2022) ............... 28, 29, 31

*A.F.P. v. United States,*
    No. 1:21-CV-00780-DAD-EPG, 2022 WL 2704570 (E.D. Cal. July 12, 2022) ............. passim

*A.I.I.L. v. Sessions,*
    No. CV-19-00481-TUC-JCH, 2022 WL 992543 (D. Ariz. Mar. 31, 2022) ......................... 18

*A.P.F. v. United States,*
    492 F. Supp. 3d 989 (D. Ariz. 2020) ....................................................... 18, 24, 27

*Adoma v. Univ. of Phoenix*, Inc.,
    711 F. Supp. 2d 1142 (E.D.Cal. 2010) ........................................................... 5

*Arce v. United States,*
    899 F.3d 796 (9th Cir. 2018) ...................................................................... 30

*B.A.D.J. v. United States,*
    No. CV-21-00215-PHX-SMB, 2022 WL 11631016 (D. Ariz. Sept. 30, 2022) .............. 18, 24

*Barroca v. United States,*
    No. 19-cv-00699-MMC, 2019 WL 5722383 (N.D. Cal. Nov. 5, 2019) .................................. 6

*Berkovitz by Berkovitz v. United States,*
    486 U.S. 531 (1988) .............................................................................. 13, 26

*Bhuiyan v. United States,*
    772 F. App'x 564 (9th Cir. 2019) ................................................................... 32

*Bunikyte v. Chertoff,*
    No. A-07-CA-164-SS, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ............................ 23, 25

*Butz v. Economou,*
    438 U.S. 478 (1978) ................................................................................. 20

*C.M. v. United States,*
    No. CV-19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020)............ 18, 22, 24

*California Serv. Emps. Health & Welfare Tr. Fund v. Command Sec. Corp.,*
    No. C-12-1079 EMC, 2012 WL 2838863 (N.D. Cal. July 10, 2012) ........................................ 4

*Carlson v. Green*,
    446 U.S. 14 (1980)................................................................................................... 19

*Carolina Cas. Co. v. Data Broad. Corp.*,
    158 F. Supp. 2d 1044 (N.D. Cal. 2001) ................................................................ 5

*D.A. v. United States*,
    No., 1:20-cv-03082, Dkt. 85 (N.D. Ill. Aug. 11, 2022) ....................................... 10

*Davis v. Scherer*,
    468 U.S. 183 (1984)................................................................................................. 21

*Decker Coal Co. v. Commonwealth Edison Co.*,
    805 F.2d 834 (9th Cir. 1986) ............................................................................ 4, 8

*Doe v. United States*,
    No. 3:16-CV-0856, 2017 WL 4864850 (M.D. Tenn. Oct. 26, 2017) .................... 11

*Duffie v. Wichita Cnty*,
    990 F. Supp. 2d 695 (N.D. Tex. 2013) ............................................................... 31

*Dugard v. United States*,
    835 F.3d 915 (9th Cir. 2016) ............................................................................... 30

*E.L.A. v. United States*,
    No. 2:20-cv-01524-RAJ, 2022 WL 2046135 (W.D. Wash. June 3, 2022)........................... 3, 9

*E.S.M. v. United States*,
    No. CV-21-00029-TUC-JAS, 2022 WL 11729644 (D. Ariz. Oct. 20, 2022) ........... 16, 18, 29

*Eberle v. Adams*,
    73 S.W.3d 322 (Tex. App. 2001) ......................................................................... 31

*Elder v. Holloway*,
    510 U.S. 510 (1994)................................................................................................ 21

*Elgamal v. Bernacke*,
    714 F. App'x 741 (9th Cir. 2018) ......................................................................... 32

*F.R. v. United States*,
    No. CV-21-00339-PHX-DLR, 2022 WL 2905040 (D. Ariz. July 22, 2022) ................. 17, 20

*Flores v. Sessions*,
    No. CV 85-4544-DMG, 2018 WL 4945000 (C.D. Cal. July 9, 2018) ........................... 24, 25

*Flores v. United States*,
    142 F. Supp. 3d 279 (E.D.N.Y. 2015) ................................................................. 10

*Fuentes-Ortega v. United States*,
   No. CV-22-00449-PHX-DGC, 2022 WL 16924223 (D. Ariz. Nov. 14, 2022).......... 16, 18, 30

*Galvin v. Hay*,
   374 F.3d 739 (9th Cir. 2004) ............................................................................... 13

*Gelber v. Leonard Wood Mem'l for Eradication of Leprosy*,
   No. C 07-01785 JSW, 2007 WL 1795746 (N.D. Cal. June 21, 2007)......................... 9, 10, 12

*Getz v. Boeing Co.*,
   547 F. Supp. 2d 1080 (N.D. Cal. 2008) ................................................................. 4

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ........................................................................................... 21

*Hatahley v. United States*,
   351 U.S. 173 (1956) ........................................................................................... 28

*Hendricks v. StarKist Co.*,
   No. 13-CV-729 YGR, 2014 WL 1245880 (N.D. Cal. Mar. 25, 2014) ...................... 8

*Hunt v. Baldwin*,
   68 S.W.3d 117 (Tex. App. 2001) ........................................................................ 31

*In re J.G.W.*,
   54 S.W.3d 826 (Tex. App. 2001) ........................................................................ 31

*Indian Towing Co. v. United States*,
   350 U.S. 61 (1955) ....................................................................................... 29, 30

*J.S.R. ex rel. J.S.G. v. Sessions*,
   330 F. Supp. 3d 731 (D. Conn. 2018) ................................................................. 16

*Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*,
   319 F. Supp. 3d 491 (D.D.C. 2018) ............................................................. 22, 23, 27

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) ............................................................................... 4

*K.O. v. United States*,
   No. 4:20-12015-TSH, 2023 WL 131411 (D. Mass. Jan. 9, 2023)................................... passim

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
   330 U.S. 518 (1947) ........................................................................................... 8

*Koval v. United States*,
   No. 13–CV–1630–HRH, 2013 WL 6385595 (D. Ariz. Dec.6, 2013) ...................... 5

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ........................................................................... 17

*Loumiet v. United States*,
  828 F.3d 935 (D.C. Cir. 2016) ......................................................................... 13

*M.D.C.G. v. United States*,
  No. 7:15-cv-00552, 2016 WL 6638845 (S.D. Tex. Sept. 13, 2016) ................. 30

*Ms. L. v. U.S. Immigr. & Customs Enf't*,
  310 F. Supp. 3d 1133 (S.D. Cal. 2018) ...................................................... 16, 17

*Ms. L. v. U.S. Immigr. & Customs Enf't*,
  No. 18-cv-0428-DMS, Dkt. 105 (S.D. Cal. July 13, 2018) ............................. 25

*Nieves Martinez v. United States*,
  997 F.3d 867 (9th Cir. 2021) ........................................................................... 20

*Nunez Euceda v. United States*,
  No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021) ................... 18

*Nurse v. United States*,
  226 F.3d 996 (9th Cir. 2000) ...................................................................... 13, 16

*Ocampo v. Heitech Servs., Inc.*,
  No. 4:19-CV-4176-KAW, 2019 WL 5395108 (N.D. Cal. Oct. 22, 2019) ...................... 5, 12

*Owen v. City of Independence*,
  445 U.S. 622 (1980) ......................................................................................... 20

*Park v. Dole Fresh Vegetables, Inc.*,
  964 F. Supp. 2d 1088 (N.D. Cal. 2013) .............................................................. 5

*Peña Arita v. United States*,
  470 F. Supp. 3d 663 (S.D. Tex. 2020) ............................................................... 18

*Pierson v. Ray*,
  386 U.S. 547 (1967) ......................................................................................... 21

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ...................................................................................... 4, 5

*Prescott v. United States*,
  973 F.2d 696 (9th Cir. 1992) ...................................................................... 13, 28

*Ramondetta v. Konami*,
  No. C 08-01002 JSW, 2008 WL 11396774 (N.D. Cal. May 19, 2008) ................... 4

*Rodriguez Alvarado v. United States*,
  No. CV 16-5028, 2017 WL 2303758 (D.N.J. May 25, 2017) ................................. 11

*Sabow v. United States*,
  93 F.3d 1445 (9th Cir. 1996) ................................................................. 26

*Saleh v. Titan Corp.*,
  361 F. Supp. 2d 1152 (S.D. Cal. 2005) .................................................... 6

*Santosky v. Kramer*,
  455 U.S. 745 (1982) ........................................................................... 17

*Silcott v. Oglesby*,
  721 S.W.2d 290 (Tex. 1986) ........................................................... 31, 32

*Tenney v. Brandhove*,
  341 U.S. 367 (1951) ........................................................................... 21

*Tower v. Glover*,
  467 U.S. 914 (1984) ........................................................................... 21

*Troxel v. Granville*,
  530 U.S. 57 (2000) ............................................................................. 17

*United States v. Gaubert*,
  499 U.S. 315 (1991) ..................................................................... 12, 26

*Vargas Ramirez v. United States*,
  93 F. Supp. 3d 1207 (W.D. Wash. 2015) ................................................ 30

*Welch v. United States*,
  409 F.3d 646 (4th Cir. 2005) ......................................................... 26, 27

*Wilbur P.G. v. United States*,
  No. 4:21-CV-04457-KAW, 2022 WL 3024319 (N.D. Cal. May 10, 2022) ............... passim

*Wilbur P.G. v. United States*,
  No. 4:21-CV-04457-KAW, Dkt. 47 (N.D. Cal. June 7, 2022) ............................. 9

*Wilton v. Hallco Indus., Inc.*,
  No. C08-1470RSM, 2009 WL 113735 (W.D. Wash. Jan. 15, 2009) ....................... 8

*Wyler Summit P'ship v. Turner Broad. Sys.*,
  135 F.3d 658 (9th Cir. 1998) ............................................................... 25

**Statutes**

28 U.S.C. § 1402(b) ................................................................................................ 3

28 U.S.C. § 2671 ..................................................................................................... 1

28 U.S.C. § 2674 ......................................................................................... 11, 18, 25

28 U.S.C. § 2679(c) ............................................................................................... 18

28 U.S.C. § 2680(a) ............................................................................................... 11

28 U.S.C. § 2680(h) ............................................................................................... 19

6 U.S.C. § 279(g)(2)(C)(ii) .................................................................................... 24

8 U.S.C. § 1232(b)(3) ............................................................................................ 24

8 U.S.C. § 1232(c)(2)(A) ....................................................................................... 24

**Legislative History**

H. Rep. No. 109-79 (2005) ..................................................................................... 20

S. Rep. No. 93-588 (1973) ................................................................................ 17, 19

**INTRODUCTION**

Plaintiffs J.R.G. and M.A.R. are a mother and child who were victims of one of the most shameful episodes of governmental misconduct in U.S. immigration history: the Trump administration's cruel and unlawful policy of forcibly separating families at the southern border. This policy was adopted for the purpose of traumatizing and harming separated children and parents. Indeed, Defendant and its employees sought to inflict extreme emotional distress and other harms for the purpose of deterring asylum seekers from seeking protection in the United States. Even so, J.R.G. ultimately demonstrated that she was in fact statutorily entitled to asylum. Dkt. 1 ¶ 13.

Plaintiffs filed this action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, *et seq.*, to hold Defendant United States accountable for the horrific treatment they experienced. In response, Defendant has moved to transfer this case to the Western District of Texas or, failing that, to dismiss the case altogether. Defendant's motion to transfer is a transparent effort to deny Plaintiffs meaningful access to the courts. Plaintiffs are of very modest means and transfer would not only disregard Plaintiffs' choice of forum, but would make it extremely difficult, if not impossible, for Plaintiffs to pursue their claims. Moreover, Plaintiffs have significant contacts with this forum, which is where they reside. In addition to Plaintiffs, other witnesses reside in this district and Defendant's employees are located throughout the country. Thus, the evidence is not concentrated in any one judicial district. Given these facts and the obvious difference in resources between the parties, it is not in the interest of justice to transfer this case.

Defendant's motion to dismiss recognizes that "the United States has denounced the prior practice of separating children from their families at the [U.S.]-Mexico border and 'condemn[ed] the human tragedy' that occurred because of the [Zero-Tolerance] Policy." Dkt. 20 at 1 (second alteration in original) (citation omitted). Yet at the same time, Defendant contends it may not be held responsible because the prior conduct of its employees amounted to nothing more than a

discretionary policy determination made by its officers. But federal officers have no discretion to violate the law or the Constitution. Indeed, Defendant's employees had no more discretion to emotionally and psychologically torture and permanently damage families by separating children from their parents than they did to physically torture them. Yet that is just what they did. As Plaintiffs have alleged, the "trauma that Plaintiffs and other parents and children suffered was not an incidental byproduct of the policy. It was the very point. The government *sought* to inflict extreme emotional distress and other harms on migrant families by forcibly separating them," with the goal of forcing them to abandon their claims for protection and deterring others fleeing persecution from attempting to seek refuge in the United States. Dkt. 1 ¶ 2.

Nor can Defendant claim its officers were reasonably executing the law. No law required that eight-year-old M.A.R. be cruelly torn from her mother's embrace, and no law required that she remain separated from her mother. Defendant also errs in conflating the discretionary function exception with a qualified immunity standard that is inapplicable to FTCA claims. Ultimately, neither the discretionary-function nor the due-care exception applies. Similarly, Defendant's claim that it may not be held liable simply because private persons do not engage in immigration-enforcement activities ignores the many decisions from district courts repeatedly rejecting the same arguments. Defendant further errs in arguing that Plaintiffs allege impermissible "systemic torts," ignoring the allegations of specific facts and omissions committed by individual government employees.

The government intentionally traumatized Plaintiffs by separating J.R.G. from her young child for over ten months, failing to provide them with information about each other's whereabouts, and failing to even facilitate communication between them. The FTCA provides individuals a right to compensation where the United States government commits tortious acts that cause harm, and here Plaintiffs have pleaded facts demonstrating that they have a right to compensation for the extraordinary harms they suffered.

## ARGUMENT

**I.    The § 1404 Factors Strongly Favor Denying Defendant's Motion and Allowing Plaintiffs to Pursue This Case in Their Home District.**

Venue is proper in the Northern District of California because J.R.G. and M.A.R. reside in this District. *See* 28 U.S.C. § 1402(b); *see also* J.R.G. Decl. ¶ 3. Both have resided in Oakland since they were released from immigration custody. In the case of M.A.R., this occurred in July 2018, and for J.R.G., this occurred in March 2019. Dkt. 1 ¶¶ 69, 73. Nevertheless, Defendant requests that venue should be transferred as a discretionary matter pursuant to 28 U.S.C. § 1404. However, such a transfer is not in the interests of justice as it would impede Plaintiffs from pursuing their claims. Notably, this Court and other courts have rejected Defendant's similar requests to transfer other claims based on federal immigration officers unlawfully separating families at the border. *See, e.g.*, *Wilbur P.G. v. United States*, No. 4:21-CV-04457-KAW, 2022 WL 3024319, *3–4 (N.D. Cal. May 10, 2022) (denying motion to transfer family separation case under § 1404); *K.O. v. United States*, No. 4:20-12015-TSH, 2023 WL 131411, at *3–4 (D. Mass. Jan. 9, 2023) (same); *A.F.P. v. United States*, No. 1:21-CV-00780-DAD-EPG, 2022 WL 2704570, at *4–9 (E.D. Cal. July 12, 2022) (same); *E.L.A. v. United States*, No. 2:20-cv-01524-RAJ, 2022 WL 2046135, at *4–5 (W.D. Wash. June 3, 2022) (same).

Section 1404 requires a district court to consider "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). In exercising their discretion under this section, courts look to the following factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). In addition to these "[p]rivate factors," courts may also look to certain public factors, including, as relevant here,

"the local interest in having localized controversies decided at home." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

The moving party—in this case, Defendant—"must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co.*, 805 F.2d at 843; *see also Ramondetta v. Konami*, No. C 08-01002 JSW, 2008 WL 11396774, at *4 (N.D. Cal. May 19, 2008). Here, as Plaintiffs detail below, the factors weigh heavily in favor of continuing this case near their home in California and Defendant has failed to meet its burden to establish otherwise.

A.   Plaintiffs' Choice of Forum Should Be Given Great Weight and Deference.

At the outset, "there is a strong presumption in favor of a plaintiff's choice of forum." *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1082–83 (N.D. Cal. 2008). Significantly, "a plaintiff's choice of forum is entitled to greater deference when [as here] the plaintiff has chosen the home forum." *California Serv. Emps. Health & Welfare Tr. Fund v. Command Sec. Corp.*, No. C-12-1079 EMC, 2012 WL 2838863, at *3 (N.D. Cal. July 10, 2012) (alteration in original) (quoting *Piper Aircraft Co.*, 454 U.S. at 255); *see also Ocampo v. Heitech Servs., Inc.*, No. 4:19-CV-4176-KAW, 2019 WL 5395108, at *3 (N.D. Cal. Oct. 22, 2019). This is particularly true in FTCA cases, as 28 U.S.C. § 1402(b)'s special venue provision "reflects a policy choice Congress made to not force individuals to travel outside their home district to bring FTCA suits." *K.O.*, 2023 WL 131411, at *3. Here, Plaintiffs reside in Oakland and should not be required to attempt to litigate their claims in a courthouse over a thousand miles from home. Thus, this factor weighs strongly against transfer. *Wilbur P.G.*, 2022 WL 3024319, at *2 ("Plaintiffs reside in the Northern District of California and chose to file their case here. In general, the Court affords a plaintiff's chosen forum great weight." (internal quotation marks omitted)).

B.  Key Witnesses Are in This District and Defendant Has Not Identified Specific
Witnesses in Its Requested Transfer District.

Defendant asserts that transfer is appropriate because some potential government witnesses are in Texas. Dkt. 20 at 9–11. But "[t]o demonstrate inconvenience of witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance." *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1049 (N.D. Cal. 2001).[1] Here, Defendant has not provided a declaration identifying the specific witnesses who continue to reside in the Western District of Texas, much less their testimony and its relevance. *See* Dkt. 20 at 10–11. Instead, Defendant merely presumes the witnesses are there, despite the passage of time and the likely scenario that government employees have since transferred elsewhere, thereby making Texas even more inconvenient if even the government witnesses are no longer residing there. *Id.* Defendant does not even assert, much less identify, any Texas witness who will not be able to travel to California if needed. *Id.*; *see also Barroca v. United States*, No. 19-cv-00699-MMC, 2019 WL 5722383, at *3 (N.D. Cal. Nov. 5, 2019) ("Although defendant . . . has identified three-non-party witnesses who reside in Kansas, defendant likewise has not stated any such non-party witnesses would be unwilling to travel to California to testify.").[2] As a result, Defendant fails to meet the evidentiary burden it carries to warrant weighing this factor in its favor. Moreover, Defendant also fails to acknowledge that key government witnesses who designed and directed the family separation policy are likely in Washington D.C. *See* Dkt. 1 at ¶¶ 3, 36, 38; *see also K.O.*, 2023 WL 131411, at *4 (holding that transfer was not warranted in family separation case where "[t]he witnesses will likely include federal personnel from Texas, Michigan, and possibly . . . the District of Columbia").

---

[1] Notably, even the cases Defendant cites to articulate this rule or look to specific witnesses the moving party identified to justify transfer. *See, e.g., Koval v. United States*, No. 13–CV–1630–HRH, 2013 WL 6385595, at *2 n. 16 (D. Ariz. Dec.6, 2013) ("A party moving for transfer for the convenience of the witnesses 'must demonstrate, through affidavits or declarations containing admissible evidence, who the key witnesses will be and what their testimony will generally include.'" (quoting *Adoma v. Univ. of Phoenix*, Inc., 711 F. Supp. 2d 1142, 1151 (E.D.Cal. 2010))); *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013) (ordering transfer in part because the moving party had identified three, specific "seminal witnesses").

[2] Defendant's reliance on *Barroca* is also misguided as there, the non-moving party did not reside in this District nor did any of the harm occur in this District. *See Barroca*, 2019 WL 5722383, at *3.

By contrast, Plaintiffs, the primary witnesses in this case, reside in this district. Notably, in determining the convenience of the parties, a court "must consider not simply how many witnesses each side has and the location of each, but, rather, the court must consider the importance of the witnesses." *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1161 (S.D. Cal. 2005). Here, of course, Plaintiffs are by far the most important witnesses in this case. Moreover, in contrast to Defendant, Plaintiffs have attached a declaration by J.R.G. detailing other essential witnesses who reside in this District, including her husband and M.A.R.'s father (M.A.G.), M.A.R.'s sister (Y.A.), who helped care for M.A.R. during J.R.G.'s prolonged detention, a mental health care witness, and a volunteer from a parent school group in Oakland. J.R.G. Decl. ¶¶ 5, 8.

Accordingly, Defendant has failed to make a strong showing that the location of witnesses favors transferring venue to Texas.

C.  Plaintiffs Have Substantial Contacts Here and Experienced Harm in This District.

As detailed in the Complaint and in J.R.G.'s attached declaration, the harm M.A.R. experienced did not cease once she was released from ORR custody. *See* J.R.G. Decl. ¶ 8. Even after M.A.R. was released to reside in Oakland, she continued to face ongoing harm due to the continued separation from her mother, who remained detained. *See* Dkt. 1 ¶ 71. M.A.R. required ongoing therapeutic sessions to address this ongoing harm. Dkt. 1 ¶ 72; *see also* J.R.G. Decl. ¶ 8. Defendant further exacerbated the harm M.A.R. and J.R.G. experienced during this time by not facilitating J.R.G.'s prompt release *and* by limiting communications between mother and daughter while J.R.G. remained in detention. *See* Dkt. 1 ¶¶ 56–57. As a result, there are essential witnesses in this District who will testify to this harm and Defendant will also likely seek discovery related to this harm that is only available in this District. As this Court has observed before, these factors favor denying Defendant's motion. *Wilbur P.G.*, 2022 WL 3024319, at *4 ("The Court disagrees with Defendant's contention that Plaintiffs' contacts to the Northern District are minimal because they had no contacts until their release. To the contrary, the

complaint contains detailed allegations of the emotional trauma experienced by Plaintiffs after their arrival, which may result in the production of records and non-party witnesses who reside here.").

Finally, Plaintiffs also have other significant contacts with this forum. They live here, work here, and go to school here. J.R.G. Decl. ¶ 3, 5–6. In addition, J.R.G. has established immigration counsel in Oakland helping the family *pro bono* with ongoing matters that require them to remain here. *Id.* ¶ 7.  Meanwhile, Plaintiffs have no family support or home in Texas, *id.* ¶ 4, and given that Defendant has equal contacts with all forums as the U.S. government, "the respective parties' contacts with the forum" weighs against transfer.

### D. Costs to Litigate in Texas Would Effectively Bar Plaintiffs from Litigating Their Claims.

Generally, "[t]ransfer is not appropriate when it merely shifts the burden of litigating in a distant or otherwise disfavored forum from the defendant to the plaintiff." *A.F.P.*, 2022 WL 2704570, at *5; *see also Decker Coal Co.*, 805 F.2d at 843 (affirming district court decision denying motion to transfer where "[t]he transfer would merely shift rather than eliminate the inconvenience"). As such, "a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." *Hendricks v. StarKist Co.*, No. 13-CV-729 YGR, 2014 WL 1245880, at *5 (N.D. Cal. Mar. 25, 2014) (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

Here, granting Defendant's motion would simply "shift rather than eliminate the inconvenience." *Wilton v. Hallco Indus., Inc.*, No. C08-1470RSM, 2009 WL 113735, at *4 (W.D. Wash. Jan. 15, 2009). J.R.G. is a housecleaner not yet working regularly after the birth of her second child K.A.R. and M.A.R. is a minor in school, and they depend on M.A.G. as the primary earner.  *See* J.R.G. Decl. ¶¶ 5–6. Their family is working hard to meet their basic needs, but do not have the savings or income to allow for the travel required to litigate their claims in Texas, let alone to pay for the travel expenses for other witnesses from this District. *See id.* ¶¶ 4–

5, 8.  On the other hand, Defendant has the resources to litigate in this District, and is in fact currently litigating a related family separation case before this Court. *See Wilbur P.G.,* 2022 WL 3024319. Defendant is therefore "clearly in a better position to absorb the costs of litigation." *Gelber v. Leonard Wood Mem'l for Eradication of Leprosy*, No. C 07-01785 JSW, 2007 WL 1795746, at *4 (N.D. Cal. June 21, 2007).

Defendant contests this conclusion, arguing that "[i]t will cost much more to litigate" the case in this district. Dkt. 20 at 11. But again, Defendant failed to meet its evidentiary burden to clearly state which witnesses continue to reside in the Western District of Texas, ignores that witnesses will be also called from Washington D.C. or other states, and disregards that the primary witnesses reside in this District. Further, Defendant can find ways to reduce costs by coordinating litigation. For instance, Defendant can coordinate government witnesses to save time and resources between the cases it is litigating in this District and share discovery to alleviate any burden it may face by litigating in California. Indeed, as this Court is aware, Defendant has been sharing discovery it produced in other family separation FTCA cases. *See Wilbur P.G. v. United States*, No. 4:21-CV-04457-KAW, Dkt. 47 at 5 (N.D. Cal. June 7, 2022). And if necessary, Defendant can "utilize the technology at their disposal, including depositions by video conference, to fulfill their obligations." *Wilbur P.G.*, 2022 WL 3024319, at *4; *A.F.P.*, 2022 WL 2704570, at *9 (similar).

Finally, acknowledging that it would simply shift the burden, courts (including this one) have overwhelmingly declined to transfer cases facing similar situations as this one: where noncitizens have sued over their mistreatment near the southern border. *See e.g., Wilbur P.G.*, 2022 WL 3024319, at *4; *A.F.P.*, 2022 WL 2704570, at *9; *E.L.A.*, 2022 WL 2046135, at *5; *Flores v. United States*, 142 F. Supp. 3d 279, 287–91 (E.D.N.Y. 2015). Nevertheless, Defendant asserts that the facts in *Wilbur P.G.* are not similar enough to result in the same outcome here despite the overwhelming similarities. Dkt. 20 at 13. Yet in doing so, Defendants ignores all the other decisions agreeing with *Wilbur P.G.*, citing instead to *D.A. v. United States*, No., 1:20-cv-

03082, Dkt. 85 (N.D. Ill. Aug. 11, 2022). *See id*. But among other reasons why that decision is inapposite, the plaintiffs in *D.A.* did not reside in the district where the action was filed. *See* Dkt. 21-2 at 6:15–22 ("Courts should defer to the plaintiff's choice of forum unless the balance of these factors weighs strongly in favor of transfer. However, a plaintiff's choice carries less weight where the plaintiff does not reside in her chosen forum, which is the case here." (internal citation omitted)).

Accordingly, because J.R.G. and M.A.R. reside in Oakland and "would experience significant hardship if they were to litigate this case in Texas, the convenience of parties and the relative means of the parties weigh strongly against transfer." *A.F.P.*, 2022 WL 2704570, at *6.

E.  The Accessibility of Evidence and Requiring Witnesses to Testify Weighs in Favor of Plaintiffs.

All relevant evidence is easily accessible and shareable by Defendant through electronic means and therefore this consideration does not warrant transfer of venue. *See id.* at *7 ("[T]he location of books and records is also not decisive to resolution of the pending motion because documentary evidence related to this case can be reproduced and transmitted electronically to this court."). Even where weighing this factor in Defendant's favor, "the [c]ourt does not weigh it heavily." *Gelber*, 2007 WL 1795746, at *4.

F.   This Court Is Amply Qualified to Apply Texas Tort Law to Plaintiffs' Claims.

This Court is amply qualified to address Plaintiffs' claims. As a preliminary matter, "state law tort claims, which sound in common law negligence, are not complex." *A.F.P.*, 2022 WL 2704570, at *8. Moreover, this Court has explained how it "is familiar with the FTCA and judges here routinely apply the laws of other states." *Wilbur P.G.*, 2022 WL 3024319, at *4. Furthermore, Defendant has failed to establish that this case presents any particularly complex issues that require the expertise of a Texas court. *See A.F.P.*, 2022 WL 2704570, at *8. Therefore, this factor is neutral.

G.   The Interests of Justice and Public Interests Favor This Forum.

Finally, the interests of justice and public interest support keeping the claims in this jurisdiction. Defendant briefly asserts that the Western District of Texas has a greater interest in the case because government agents in Texas implemented the family separation policy. Dkt. 20 at 12. But "[i]mmigration, and the treatment of those who have entered the United States without inspection[,] is a matter of national concern," not a local one. *Rodriguez Alvarado v. United States*, No. CV 16-5028, 2017 WL 2303758, at *8 (D.N.J. May 25, 2017); *Doe v. United States*, No. 3:16-CV-0856, 2017 WL 4864850, at *3 (M.D. Tenn. Oct. 26, 2017) (similar). Moreover, communities all across the country were affected by the family separations, as demonstrated by Plaintiffs' story.

CBP officers and other officials are employees of the U.S. government, and many of the actions alleged in the complaint were taken to further a national policy designed at the highest levels of government to traumatize Plaintiffs and others like them. Indeed, "insofar as a substantial portion of the conduct occurred in [Texas], conduct also occurred in other states, as this was a national policy." *Wilbur P.G.*, 2022 WL 3024319, at *4; *see also K.O.*, 2023 WL 131411, at *4 ("These were federal personnel implementing federal policy."). And those who were most affected now reside throughout the country. California's interest in such issues is no less significant than that of Texas in this matter of national concern, as "California [also] has a strong public interest in deciding controversies involving its citizens." *Gelber*, 2007 WL 1795746, at *5; *see also Ocampo*, 2019 WL 5395108, at *4 ("California has an interest in protecting the rights of [Plaintiffs]." (internal quotation marks omitted)).

In sum, the § 1404 factors weigh in favor of honoring Plaintiffs' selection of forum. Accordingly, this Court should deny the motion to transfer venue.

**II.**     **The Court Should Deny the Motion to Dismiss.**

    A.  The Discretionary-Function Exception Is Inapplicable to This Case.

       Defendants also move to dismiss this case in the alternative, asserting that the Court lacks jurisdiction to consider Plaintiffs' claims. But each of their arguments is unavailing. Defendant's first argument—that the United States has not waived sovereign immunity because this case allegedly involved the exercise of discretion—is meritless. The FTCA waives the government's sovereign immunity as to lawsuits seeking compensation for tortious conduct committed by federal officials. 28 U.S.C. § 2674. However, Congress provided certain exceptions to this waiver, including the "discretionary function exception" (DFE), which applies to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the [g]overnment." *Id.* § 2680(a). The DFE bars claims based on actions that involve (1) an element of judgment or choice and (2) public-policy considerations. *See United States v. Gaubert*, 499 U.S. 315, 322–23 (1991). Notably, "the United States bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity." *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

       Here, Defendant's argument fails at the first prong. As this Court has already held in a nearly identical case, federal officers do not have discretion to violate federal law, including the U.S. Constitution. Moreover, Plaintiffs' injuries did not result from any discretionary decision or judgment made by immigration officers in the field. Defendant's employees separated M.A.R. from her mother due to a policy mandate issued by the highest levels of the Trump administration to separate migrant children and parents.

       1.  *Federal Officers Have No Discretion to Violate the U.S. Constitution.*

       Defendant argues that the family-separation policy and the actions detailed in Plaintiffs' complaint are the result of discretionary decisions. Dkt. 20 at 14–22. However, the DFE is inapplicable here because the government does not have the "discretion" to violate the

Constitution or any other law. *See, e.g.*, *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) ("In general, governmental conduct cannot be discretionary if it violates a legal mandate."); *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) ("[T]he Constitution can limit the discretion of federal officials such that the FTCA's [DFE] will not apply." (first alteration in original) (citation omitted)); *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016) (similar). This is because "the discretionary function exception insulates the Government from liability" only where "the action challenged in the case involves the *permissible* exercise of policy judgment." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 537 (1988) (emphasis added).

Plaintiffs' complaint explicitly alleges they "suffered significant physical and emotional harm as a direct result of Defendant's unlawful conduct and violation of Plaintiffs' constitutional and statutory rights." Dkt. 1 ¶ 5. The complaint details these violations in several ways. It states:

> Plaintiffs' claims concern the entirely predictable—and, in fact, actually desired—harms caused by Defendant's unprecedented conduct in systematically separating asylum-seeking parents and children. Defendant's employees forcibly separated Plaintiffs after they entered the United States in May 2018. Defendant's employees then detained Plaintiffs in separate facilities in Texas, even though they should have remained together. But instead, J.R.G. was unable to hold her daughter again until the end of March 2019—when they were finally reunited in Oakland after over ten months of forced separation.

*Id.* ¶ 4.

The complaint then lays out these unlawful acts in more detail. First, shortly after Plaintiffs' initial apprehension, Defendant's employees physically separated J.R.G. from her eight-year-old daughter, M.A.R. *Id.* ¶ 20. J.R.G and M.A.R. were together only one day after their apprehension. *Id.* ¶¶ 18, 22–24. During this time, the family saw Defendant's employees tearing apart many other families, and thus M.A.R. burst into tears when she and her mother's names were called for their own separation. *Id.* ¶ 24. Defendant's employees also lied to Plaintiffs, telling them the separation would only be short and would last only "until a federal judge sentenced [J.R.G.] for crossing the border." *Id.* ¶ 20. They further represented that J.R.G.

"had no right to seek asylum," *id*., and that "she was going to be deported." *Id.* ¶ 21. Despite assuring the family they would soon be reunited, Defendant's employees would not allow for the family to be together again *for ten months*. *Id.* ¶ 25.

Notably, Defendant's employees' separation of Plaintiffs occurred even *before* they initiated criminal proceedings for illegal reentry against J.R.G. *Id.* ¶¶ 22, 29. Defendant's employees designated M.A.R. as an unaccompanied child under the Trafficking Victims Protection Reauthorization Act (TVPRA) when they separated her from her mother. *Id.* ¶¶ 44–45. They did so even though J.R.G.'s criminal prosecution would last mere hours, *id.* ¶¶ 29–32, and even though she was sentenced only to time served (and unsupervised supervision), *id.* ¶¶ 30, 41–42.

The complaint further cites public statements from then-President Trump and DHS Secretary Kristjen Nielsen confirming that such family separations were part of a specific, intentional federal policy. *Id.* ¶¶ 3, 38. Plaintiffs also allege that, *after* the summary conclusion of J.R.G.'s prosecution, Defendant's employees maintained Plaintiffs' forced separation, even though both mother and daughter remained in Defendant's custody. *Id.* ¶¶ 34, 43, 51, 57, 66–69. And Defendant's officers made the situation yet more traumatic for Plaintiffs by refusing to inform J.R.G. of her child's location or to facilitate any communication between mother and daughter. *Id.* ¶¶ 54–55, 64. She and other mothers desperately pleaded with Defendant's employees for help, but its employees refused to help, simply telling the mothers their children were "safe." *Id.* ¶ 55. Further, Plaintiffs allege that Defendant's employees cruelly prolonged the forced separation of J.R.G. and M.A.R. by detaining J.R.G. for another ten months, until March 2019. *Id.* ¶ 51. Shockingly, Defendants did so in the face of a federal court order requiring Plaintiffs' immediate reunification. *Id.* ¶ 79. During this time, J.R.G. suffered significant medical issues, including "stomach pains and cramps, chronic constipation, hemorrhoids, and anal bleeding", as well chronic insomnia. *Id.* ¶¶ 59–60. Plaintiffs further alleged that Defendants "punished [them] for seeking safety in the United States." *Id.* ¶ 78. As they note, such actions

1    were taken "in callous disregard of their legal rights, dignity as persons, and family integrity." *Id.*
2    ¶ 79.

3           These allegations demonstrate Defendant's employees violated Plaintiffs' constitutional
4    rights. Indeed, a district court previously addressed this constitutional question with respect to a
5    nationwide class of separated families, examining whether "the Government's practice of
6    separating class members from their children, and failing to reunite those parents who have been
7    separated, without a determination that the parent is unfit or presents a danger to the child
8    violate[d] the parents' substantive due process rights to family integrity under the Fifth
9    Amendment." *Ms. L. v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133, 1142 (S.D. Cal.
10   2018). The district court granted a nationwide injunction against such family separations and
11   ordered the reunification of previously separated families, holding that the practice likely
12   violated the Constitution. The court explained: "A practice of this sort implemented in this way
13   is likely to be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary
14   conscience,' interferes with rights 'implicit in the concept of ordered liberty[,]' and is so 'brutal
15   and offensive that it [does] not comport with traditional ideas of fair play and decency.'" *Id.* at
16   1145–46 (citations omitted); *see also J.S.R. ex rel. J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 741
17   (D. Conn. 2018) (noting that even the government "agree[d] that a constitutional violation
18   occurred when [it] separated children from their parents").

19          Defendant acknowledges that binding circuit case law holds that the government cannot
20   invoke the DFE where its employees' actions violate the Constitution. But Defendant then
21   asserts that "Plaintiffs do not allege the violation of any constitutional provision with the degree
22   of specificity required by *Gaubert*." Dkt. 20 at 20. But its cited authorities do not support its
23   position that Plaintiffs' allegations are insufficient. To the contrary, in *Nurse*, the Ninth Circuit
24   reversed a grant of dismissal on DFE grounds where the "bare allegations of the complaint"
25   alleged unconstitutional conduct but did not state the "specific constitutional mandates" that
26   were violated. 226 F.3d at 1002; *see also Fuentes-Ortega v. United States*, No. CV-22-00449-

PHX-DGC, 2022 WL 16924223, at *2 (D. Ariz. Nov. 14, 2022) (rejecting the argument

Defendant makes here because "it does not appear to comport with the holding in *Nurse*");

*E.S.M. v. United States*, No. CV-21-00029-TUC-JAS, 2022 WL 11729644, at *4 (D. Ariz. Oct.

20, 2022) (noting *Nurse* left the "inquiry" concerning "'the level of specificity with which a

constitutional proscription must be articulated in order to remove the discretion of a federal

actor'" "for later stages of litigation") (citation omitted)); *F.R. v. United States*, No. CV-21-

00339-PHX-DLR, 2022 WL 2905040, at *5 (D. Ariz. July 22, 2022) (relying in part on *Nurse*

when declining to require greater specificity in alleging constitutional violation).

 Moreover, Defendant fails to acknowledge the highly detailed and specific allegations of

unlawful conduct in the complaint, *see supra* pp. 12–13, including the allegations that

Defendant's employees "specifically intended to inflict harm on Plaintiffs in callous disregard of

their legal rights, dignity as persons, and family integrity," Dkt. 1 ¶ 79. Notably, the *Ms. L* court

and others have already found that similar facts violate the due-process right to familial integrity,

310 F. Supp. 3d at 1142–46, a right that has deep historical roots in this country, *see, e.g.*,

*Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (remarking on the Court's "historical recognition

that freedom of personal choice in matters of family life is a fundamental liberty interest

protected by the Fourteenth Amendment"); *Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("[T]he

interest of parents in the care, custody, and control of their children [] is perhaps the oldest of the

fundamental liberty interests recognized by this Court."); *Lee v. City of Los Angeles*, 250 F.3d

668, 685 (9th Cir. 2001) ("'[T]his constitutional interest in familial companionship and society

logically extends to protect children from unwarranted state interference with their relationships

with their parents.'" (citation omitted)).

 Accordingly, *every* district court in the Ninth Circuit to have addressed this argument—

including this Court—has agreed that the DFE does not apply to FTCA claims challenging the

application of the Trump administration's family-separation policy in their individual cases. *See,

e.g.*, *Wilbur P.G*, 2022 WL 3024319, at *1 (citing other cases rejecting government's DFE

argument on this basis); *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020)

("Because government officials lack discretion to violate the Constitution, the discretionary

function exception cannot shield conduct related to the government's likely unconstitutional

separation of plaintiffs."); *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL

1698191, at *4 (D. Ariz. Mar. 30, 2020) (citing to *Ms. L*'s finding that family separation likely

violates the Constitution); *Nunez Euceda v. United States*, No. 2:20-cv-10793-VAP-GJSx, 2021

WL 4895748, at *3 (C.D. Cal. Apr. 27, 2021) ("Plaintiff has plausibly alleged that the

government's Policy violated his constitutional rights."); *Fuentes-Ortega*, 2022 WL 16924223,

at *2–3 (same); *E.S.M.*, 2022 WL 11729644, at *4 (same); *B.A.D.J. v. United States*, No. CV-21-

00215-PHX-SMB, 2022 WL 11631016, at *3 (D. Ariz. Sept. 30, 2022) (same); *F.R.*, 2022 WL

2905040, at *5 (same); *A.F.P.*, 2022 WL 2704570, at *12 (same); *A.I.I.L. v. Sessions*, No. CV-

19-00481-TUC-JCH, 2022 WL 992543, at *4 (D. Ariz. Mar. 31, 2022) (same).

Tellingly, Defendant ignores these decisions from within the Ninth Circuit and instead

relies primarily on one case from Texas, *Peña Arita v. United States*, 470 F. Supp. 3d 663 (S.D.

Tex. 2020), which held that the decisions to separate families were protected by the DFE. *See*

Dkt. 20 at 19–20. But the *Peña Arita* court did not even address whether the exception applies to

conduct alleged to violate the Constitution or other legal mandates. 470 F. Supp. 3d at 686–87.

The other cases Defendant cites are also readily distinguishable, for they focus on the decision to

detain and security measures—as opposed to the decision to separate, or the failure to reunite, a

child from/to their parent. *See* Dkt. 20 at 17.

Defendant also relies on *Peña Arita* and the FTCA's waiver of sovereign immunity as to

certain specific torts to make the sweeping claim that "Congress did not create the FTCA to

address constitutional violations." Dkt. 20 at 20. But while the FTCA of course requires a

plaintiff to establish that federal officials violated a state tort while in the course of their

employment, this does not preclude a plaintiff from seeking damages for acts that are *also*

constitutional violations. Indeed, when Congress added § 2680(h) to the FTCA—the subsection

that allows individuals to sue for certain intentional torts—Congress explicitly rejected the government's position. As the Senate Report explained,

> [T]his [intentional torts] provision should be viewed as a counterpart to the *Bivens* case and its progeny, in that it waives the defense of sovereign immunity *so as to make the Government independently liable in damages for the same type of conduct that is alleged to have occurred in Bivens* (and for which that case imposes liability upon the individual Government officials involved).
>
> . . . .
>
> This whole matter was brought to the attention of the Committee in the context of the Collinsville raids, where the law enforcement abuses involved Fourth Amendment constitutional torts. Therefore, the Committee amendment would submit the Government to liability whenever its agents act under color of law so as to injure the public through search and seizures that are conducted without warrants or with warrants issued without probable cause. However, the Committee's amendment *should not be viewed as limited to constitutional tort situations but would apply to any case in which a Federal law enforcement agent committed the tort* while acting within the scope of his employment or under color of Federal law.

S. Rep. No. 93-588, at 3 (1973) (emphasis added). The Supreme Court has recognized this same point, stating that "Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Carlson v. Green*, 446 U.S. 14, 20 (1980) (citing S. Rep. No. 93–588, at 3 (1973)); *see also K.O.*, 2023 WL 131411, at *10 (rejecting similar government argument).

As a twist on their argument that a plaintiff must plead specific facts showing a constitutional violation, Defendant also asserts the *law* must be clear too. Specifically, Defendant claims that only "clearly established" constitutional obligations can deprive a federal official of discretion, asking the Court to extend the common-law qualified immunity doctrine into the FTCA. Dkt. 20 at 20–21.

This argument is without merit. First, case law rejects it. According to Defendant, "the Supreme Court has long recognized [that] conduct may be 'discretionary' even if it later is determined to have violated the Constitution," and thus only clearly established constitutional violations can strip federal officials of discretion. Dkt. 20 at 21. But "[the government] has no 'discretion' to violate the Federal Constitution; its dictates are absolute and imperative." *Owen v. City of Independence*, 445 U.S. 622, 649 (1980). And in the context of the FTCA, the Ninth

Circuit has repeatedly explained that "[e]ven [where the] actions [of government employees] involve[] elements of discretion, agents do not have discretion to violate the Constitution." *Nieves Martinez v. United States*, 997 F.3d 867, 877 (9th Cir. 2021). For this reason, other courts considering this argument in challenges to family separations have rejected Defendant's argument. *See K.O.*, 2023 WL 131411, at *3; *F.R.*, 2022 WL 2905040, at *5; *A.F.P.*, 2022 WL 2704570, at *13.

Second, the policy concerns that animate qualified immunity doctrine do not apply here. Qualified immunity and its "clearly established" standard exist "to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou*, 438 U.S. 478, 506 (1978). Underlying this rationale is the concern that if individuals are held *personally* liable, they may incur substantial costs and be deterred from serving as public officials or carrying out their duties. *See, e.g.*, *id.*; *Elder v. Holloway*, 510 U.S. 510, 514 (1994); *Davis v. Scherer*, 468 U.S. 183, 196 (1984) (similar); *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) (similar). But that rationale does not apply in the context of the FTCA, which is premised on the very idea that the individual employee is *not* financially responsible for their tortious actions. Instead, the FTCA is structured to ensure it is the government that always pays. *See* 28 U.S.C. §§ 2674, 2679(c). As a result, the prospect of liability and its potential to discourage an official from carrying out duties does not exist.

Ultimately, Defendant's argument invites the court to write into the FTCA the government's policy preferences. But the text of the FTCA never mentions qualified immunity or its "clearly established" standard, even though qualified immunity had been repeatedly applied in damages cases by the time Congress added the intentional torts exception to the FTCA in 1974. *See, e.g.*, *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951); *Pierson v. Ray*, 386 U.S. 547, 557 (1967). Indeed, instead of incorporating qualified immunity, Congress expressly applied the other specific exemptions in the statute—including the discretionary function exception—to law

enforcement officers committing intentional torts. 28 U.S.C. § 2680(h). But the Court cannot expand the DFE to incorporate qualified immunity, as it "do[es] not have a license to establish [additional] immunities." *Tower v. Glover*, 467 U.S. 914, 922–23 (1984). Instead, it is for Congress "to determine whether [damages] litigation has become too burdensome to . . . federal institutions." *Id*. at 923; *see also K.O.*, 2023 WL 131411, at *9–10 (rejecting Defendant's qualified immunity argument in part because defining such immunity is an "exercise in statutory interpretation" and "[w]hereas § 1983 is silent as to immunities, Congress crafted specific 'immunities' for federal officials in the FTCA"). And in the context of the FTCA, and as detailed above, Congress explained that it *wanted* to ensure an individual had a damages remedy for egregious, intentional acts like those committed here—especially where those acts overlapped with constitutional violations. *See* S. Rep. No. 93-588, at 3 (1973).

Defendant further presents a straw man argument, arguing that Plaintiffs impermissibly challenge the agency's decisions to refer J.R.G. for illegal-entry prosecution and to detain Plaintiffs during the pendency of their removal proceedings. Dkt. 20 at 16–17. "This argument, however, rests on the false premise that by taking custody of children whose parents are 'amenable to prosecution,' the United States is simply enforcing federal law. As previously explained, the United States was not enforcing federal law when it separated Plaintiffs," but rather, intentionally inflicting harm. *C.M.*, 2020 WL 1698191, at *4. Plaintiffs do not contest the government's authority either to bring a misdemeanor criminal-entry charge against J.R.G., or to exercise its authority to detain Plaintiffs while placing them in removal proceedings. While Defendant has discretion with respect to the choice to prosecute individuals in criminal or removal proceedings, and has discretion over custody determinations, there is no discretion to intentionally inflict severe emotional and psychological damage by separating children from their parents.

*Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enforcement* is instructive in this respect. 319 F. Supp. 3d 491 (D.D.C. 2018). There, the plaintiff was separated from her

children during a brief prosecution for illegal entry, and the court concluded that the children were "not true unaccompanied minors within the meaning of the [TVPRA]." *Id.* at 495–96 & n.2. Rather, "they were rendered unaccompanied by the [government's] unilateral and likely unconstitutional action[]" of forcibly separating them from their mother. *Id.* at 495 n.2. Thus, the government could not designate the children unaccompanied minors simply because it forcibly separated them from their mother. *Id.* at 500. The court also rejected the argument that because the mother was "in lawful immigration custody," she was "unavailable to provide care and physical custody." *Id.* Similarly, in *Bunikyte v. Chertoff*, which Defendant cites, Dkt. 20 at 4, 18, the court observed that a Congressional committee had rejected the definition of "unaccompanied" that Defendant advances: "Children who are apprehended by [DHS] while in the company of their parents are not in fact 'unaccompanied' and if their welfare is not at issue, they should not be placed in ORR custody." No. A-07-CA-164-SS, 2007 WL 1074070, at *1–2 (W.D. Tex. Apr. 9, 2007) (quoting H. Rep. No. 109-79, at 38 (2005)).

Despite purporting now to disavow its prior outrageous policy, Defendant argues that the family separation was simply the result of discretionary prosecution and detention decisions. Dkt. 20 at 16–19. But federal policies and the facts pleaded in the complaint belie that argument. Prior to the Zero-Tolerance Policy, children who were apprehended at or near the border were not torn away from their parents. Indeed, the Border Patrol's Hold Rooms and Short Term Custody Policy mandates that children *not* be separated from their parents, and instead directs that family groups "will be detained as a unit." Maltese Decl. Ex. A at 12–13. Notwithstanding this policy, in December 2017, the Department of Justice and DHS officials exchanged a memo entitled "Policy Options to Respond to Border Surge of Illegal Immigration." *Id.* Ex. B at 1. Two of the policy options were entitled: "Increase Prosecution of Family Unit Parents" and "Separate Family Units." *Id.* Ex. B at 1. Under the prosecution policy, "parents would be prosecuted for illegal entry . . . and the minors present with them would be placed in [U.S. Department of Health and Human Services (HHS)] custody as [unaccompanied children]." *Id.* Ex. B at 1.

Similarly, the separation policy called for an announcement that adults would be placed in

detention while children would be placed in HHS custody. *Id.* Ex. B at 1. Thus, the memo

underscores that the family-separation policy was a new, separate policy—not simply a natural,

collateral consequence of increased criminal prosecutions.

Moreover, as documented by several suits across the country, Defendant chose to

separate the children and label them as unaccompanied *even where no criminal charges were

filed* against the parent. *See*, *e.g.*, *Wilbur P.G.*, 2022 WL 3024319, at *1; *C.M.*, 2020 WL

1698191, at *3; *A.P.F.*, 492 F. Supp. 3d at 993; *B.A.D.J.*, 2022 WL 11631016, at *1. Further,

"[e]ven where the parent was prosecuted, the Government kept the families separated even after

the parent served a cursory sentence . . . . Parents were separated from their children for months,

oftentimes without knowing anything about where their children were, and with the children

thinking they would never see their parents again." *Wilbur P.G.*, 2022 WL 3024319, at *1. That

is precisely what occurred in this case:

> As with most Zero Tolerance prosecutions under 8 U.S.C. § 1325(a)(1), J.R.G.
> was sentenced to no jail time. J.R.G. was sentenced to only unsupervised and non-
> reporting probation for one year. J.R.G. entered federal criminal custody only for
> the brief time that she was detained at the El Paso Detention Facility from May
> 21–22, 2018.

Dkt. 1 ¶ 41–43. Yet Defendant's employees refused to return M.A.R. to her mother. Not only

that, but Defendant compounded this harm by subjecting Plaintiff to ten months of separation—

separation that occurred notwithstanding a federal court order in *Ms. L.*, 310 F. Supp. 3d at 1149,

requiring the family's reunification, Dkt. 1 ¶¶ 1, 4, 25, 48, 50–51.

Finally, the *Flores* Agreement in no way justifies Defendant's family-separation policy,

as Defendant implies. *See* Dkt. 20 at 4, 18. The Agreement permits parents to "affirmatively

waive their children's rights to prompt release and placement in state-licensed facilities," as

Defendant has conceded in other litigation. *Flores v. Sessions*, No. CV 85-4544-DMG, 2018 WL

4945000, at *4 (C.D. Cal. July 9, 2018); *see also id.* ("'It is a well settled maxim that a party may

waive the benefit of any condition or provision made in his behalf . . . .'") (quoting *Wyler*

*Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 662 (9th Cir. 1998))); J. Mot. Regarding

Scope of the Court's Prelim. Inj., *Ms. L. v. U.S. Immigr. & Customs Enf't*, No. 18-cv-0428-DMS,

Dkt. 105 (S.D. Cal. July 13, 2018) (agreeing that parents can waive a child's *Flores* rights in

order to remain in custody together). And the *Flores* Agreement—far from mandating

separation—permits family detention if it complies with the Agreement's requirements. *See*

*Bunikyte*, 2007 WL 1074070, at *3. Indeed, the *Flores* Agreement is designed to protect the best

interests of children, *Flores*, 2018 WL 4945000, at *5, and it promotes family unification, *see*

*Bunikyte*, 2007 WL 1074070, at *16. Defendant's use of *Flores* to justify intentionally harming

children thus turns *Flores* on its head. Notably, Defendant does not assert that immigration

officers separated Plaintiffs because of the *Flores* Agreement.

Binding circuit precedent makes clear that the DFE does not apply where, as here,

plaintiffs allege federal officers' actions violated the Constitution. Accordingly, the Court should

deny Defendant's motion to dismiss on this ground.

> 2. *Defendant's Officers Followed a Clear Policy Directive and Did Not Exercise Any Individual Discretion in Separating J.R.G. and M.A.R.*

In addition, the DFE has no application here because the enforcement officers who

executed Plaintiffs' separation were not exercising their own judgment. Instead, they were

following the family-separation policy dictated by high-ranking officials of the Trump

administration, which directed that migrant children like M.A.R. be torn away from their parents.

The Supreme Court has explained that "[t]he [DFE's] requirement of judgment or choice is not

satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an

employee to follow,' because 'the employee has no rightful option but to adhere to the

directive.'" *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536); *see also Sabow v.*

*United States*, 93 F.3d 1445, 1451 (9th Cir. 1996). Here, Defendant fails to acknowledge that the

systemic, involuntary separation of thousands of children from their parents was not the product

of discretionary choices made by rank-and-file DHS officers, but rather the product of a federal

policy directive, *see* Dkt. 1 ¶¶ 36–38; Dkt. 20 at 19. Thus, as this Court has held, "[s]ince the family separation policy was a policy prescribed by the Trump Administration, the front-line employees tasked with implementing the policy did not reasonably have any element of choice." *Wilbur P.G.*, 2022 WL 3024319, at *4.

In sum, Defendant's family-separation policy mandated its employees to engage in unconstitutional conduct, without conferring any discretion to deviate from the policy. Accordingly, the DFE does not apply.

B.  The Due-Care Exception Does Not Bar Plaintiffs' Claims.

Defendant's employees' forced separation of Plaintiffs was neither mandated by statute or regulation, nor executed with due care. Accordingly, the due-care exception to the FTCA's waiver of sovereign immunity, which insulates from suit the actions of federal employees "exercising due care, in the execution of a statute or regulation," does not apply here. 28 U.S.C. § 2680(a).

Courts in this circuit "apply the two-prong test established by the decision in *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005) in determining whether the due care exception applies." *A.F.P.*, 2022 WL 2704570, at *14 (citing cases). Under the *Welch* test, this exception applies only if: (1) "a specific action is *mandated*" by "the statute or regulation in question"; and (2) "the officer exercised due care in following the dictates of that statute or regulation." *Welch*, 409 F.3d at 652 (emphasis added). Here, Defendant fails at both steps.

First, the due-care exception is not applicable because Defendant's employees separated Plaintiffs pursuant to an executive *policy*. Dkt. 1 ¶¶ 1–4, 36–40. But "[a]ctions taken pursuant to executive policy are not shielded by the due care exception" as they are not taken "pursuant to any statute or regulation." *A.P.F.*, 492 F. Supp. 3d at 996.

To avoid this conclusion, Defendant asserts that the separation was instead "required" by the TVPRA once its employees decided "to prosecute the adult Plaintiff." Dkt. 20 at 23. Perversely, this argument uses a statute designed to *protect* children to justify *harming* them. The

TVPRA requires only the transfer of *unaccompanied* minors, 8 U.S.C. § 1232(b)(3)—that is, a child without a parent or guardian "available to provide care and physical custody," 6 U.S.C. § 279(g)(2)(C)(ii). In this case, J.R.G. was "not [a] true unaccompanied minor[] within the meaning of the statute; [she was] rendered unaccompanied by the unilateral and likely unconstitutional actions of [D]efendant['s] [employees]." *Jacinto-Castanon*, 319 F. Supp. 3d at 495 n.2. The TVPRA simply does not apply to cases where a family enters the U.S. and is initially apprehended *together*—even where the parent is subject to brief separation for an illegal-entry prosecution. *See id.* at 500–01 & n.3 In this case, J.R.G. and M.A.R. were forcibly separated even though J.R.G. was outside of immigration custody for one day *at most*. Dkt. 1 ¶¶ 41–43. Moreover, J.R.G., like most other parents subjected to family separation, was simply sentenced to time served (and unsupervised probation). *Id*. ¶¶ 41–42. The TVPRA thus did not "require" Plaintiffs' indefinite separation simply because of J.R.G.'s prosecution. *See A.F.P.*, 2022 WL 2704570, at *15 ("[T]he conduct must be *required*, not merely authorized" for the exception to apply.); *K.O.*, 2023 WL 131411, at *6 (rejecting Defendant's TVPRA argument, and observing that "the government cannot hide behind the DCE when it triggers a statutory scheme with conduct not mandated by the statute"); *Wilbur P.G.*, 2022 WL 3024319, at *5 (finding separations were made pursuant to executive policy, not the TVPRA); *A.E.S.E. v. United States*, No. 21-CV-0569 RB-GBW, 2022 WL 4289930, at *13–14 (D.N.M. Sept. 16, 2022) (same). Accordingly, Defendant is wrong to assert that the TVPRA requires such actions. If anything, the TVPRA underscores how illegal those actions were, as even "unaccompanied" children were supposed to be placed in the "least restrictive setting that is in the best interest of the child," 8 U.S.C. § 1232(c)(2)(A)—which would undoubtedly be *with their parent* in most cases.

Second, Defendant also fails to satisfy *Welch* because its employees did not implement the separation with "due care." "'Due care' implies at least some minimal concern for the rights of others." *Hatahley v. United States*, 351 U.S. 173, 181 (1956). Despite bearing the burden of

proving the exception applies, *Prescott*, 973 F.2d at 702, Defendant has not argued its employees

acted with the requisite care, *see* Dkt. 20 at 22–23. Nor can it: the family-separation policy was

cruel and inhumane by design, Dkt. 1 ¶¶ 1–4, 36–40, 63–64, 79–81, and it was executed in that

manner in J.R.G.'s and M.A.R.'s case. Defendant's employees lied to J.R.G. and M.A.R. about

the separation, representing that it would only happen during the brief time J.R.G. was subject to

prosecution. *Id.* ¶ 20. Defendant's employees then subjected the J.R.G. and M.A.R. to seeing

many other families separated until their names were finally called for the same to happen. *Id.*

¶ 23–24. Once separated, Defendant's employees refused to facilitate communication between

the family, despite J.R.G.'s desperate pleas. *Id.* ¶¶ 54–55, 63–64. Indeed, Defendant failed to

implement the most basic of safeguards to ensure parents and children were identified as family

members and allowed to communicate. *Id.* ¶ 63–64. And as noted, Plaintiffs' separation would

eventually last ten months, notwithstanding the *Ms. L* court's conclusion that Defendant's

employees had violated the family's constitutional rights. *Id.* ¶¶ 25, 50. Other courts, including

this one, have found that Defendant failed to exercise due care in similar circumstances. *See,*

*e.g.*, *A.E.S.E.*, 2022 WL 4289930, at *13–14 (separation was carried out "in a manner designed

to provoke emotional distress"); *Wilbur P.G.*, 2022 WL 3024319, at *5 (rejecting government

claim that due care exception applies and observing that "[t]he fact that the Government is now

attempting to evade liability for a policy that is still being unwound, as some children are still

waiting to be reunited with their families, is not legally defensible"). The due-care exception

therefore does not shield Defendant from suit here.

    C.  A Private-Person Analogue for Plaintiffs' Claims under Texas Law.

    The FTCA makes Defendant liable only "in the same manner and to the same extent as a

private individual under like circumstances." 28 U.S.C. § 2674. Defendant argues no private-

person analogue exists to support an FTCA IIED claim here because "only the federal

government has the authority to enforce federal criminal and immigration laws and make

detention determinations." Dkt. 20 at 24. The Supreme Court, however, has rejected similar

arguments that § 2674 should be read "as excluding liability in the performance of activities which private persons do not perform." *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955). To require otherwise "would give the federal government absolute immunity to violate the rights of those for whom it has sole decision-making authority." *Wilbur P.G.*, 2022 WL 3024319, at *5. "The fact that Defendant has exclusive authority to enforce immigration law does not give it carte blanche to commit torts against migrants in its custody." *E.S.M.*, 2022 WL 11729644, at *3. Indeed, FTCA claims are regularly brought against immigration authorities for tortious actions committed while performing enforcement functions that private persons are not authorized to perform. *See, e.g., Arce v. United States*, 899 F.3d 796, 798, 801 (9th Cir. 2018) (finding jurisdiction for FTCA claim against federal government for unlawful removal); *Vargas Ramirez v. United States*, 93 F. Supp. 3d 1207, 1227–29 (W.D. Wash. 2015) (federal government liable under FTCA for false arrest). Finally, Defendant's interpretation would eviscerate the intentional torts provision of the FTCA, which by definition applies to law enforcement officers who exercise exclusive government powers. As noted above, Congress intended the *opposite* of Defendant's interpretation when it added the provision to the FTCA. *Supra* p. 17.

Here, private analogues exist in Texas. Courts look to the "most reasonable analogy" in state tort law of the law of the state where the alleged tort occurred to determine whether a private-person analogue exists. *A.F.P.*, 2022 WL 2704570, at *9 (quoting *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016)). The analogue "need only exist under 'like circumstances,' not 'under the same circumstances.'" *Id.* (quoting *Indian Towing*, 350 U.S. at 64); *see also Fuentes-Ortega*, 2022 WL 16924223, at *5 (rejecting Defendant's "unduly narrow characterization of the conduct in question" in refusing to dismiss claims for alleged lack of a private-person analogue in family separation case).

First, as to the IIED cause of action, at least two courts have held in family-separation cases that a private-person analogue exists. The *A.F.P.* court relied on *M.D.C.G. v. United States*, No. 7:15-cv-00552, 2016 WL 6638845, at *11–12 (S.D. Tex. Sept. 13, 2016), which

permitted an IIED claim to proceed based on allegations of trauma caused by the immigration

authorities' separation of two minors from their families. 2022 WL 2704570, at *10. Plaintiffs

allege a similar claim here. Dkt. 1 ¶¶ 53, 58–62, 70–84. And in *A.E.S.E.*, the court

acknowledged that Texas courts have allowed IIED claims based on the separation of children

from their parents. 2022 WL 4289930, at *14 (citing *Eberle v. Adams*, 73 S.W.3d 322, 336–37

(Tex. App. 2001) (IIED) and *Silcott v. Oglesby*, 721 S.W.2d 290 (Tex. 1986) (recognizing

damages for "mental anguish" in child's abduction)); *see also In re J.G.W.*, 54 S.W.3d 826, 829,

833 (Tex. App. 2001) (IIED claim arising from child abduction was not barred by res judicata).

Second, analogies also exist for the abuse-of-process claim. The *A.F.P.* court also

recognized that Texas cases contemplate abuse-of-process claims against private parties and a

government employee for "engag[ing] in 'the malicious use or misapplication of process in

order to accomplish an ulterior purpose.'" 2022 WL 2704570, at *10 (quoting *Hunt v. Baldwin*,

68 S.W.3d 117, 129 (Tex. App. 2001)). Other Texas cases also support this conclusion,

demonstrating that the misuse of process after a criminal case is instituted to achieve other,

unlawful ends provides the basis for an abuse-of-process claim. *See, e.g.*, *Duffie v. Wichita Cnty*,

990 F. Supp. 2d 695, 720 (N.D. Tex. 2013) (allowing abuse-of-process claim to proceed where

the defendant, a nurse, tried to use arrest warrants issued in a criminal prosecution to thwart the

Texas Board of Nursing's investigation into the defendant to discredit witnesses). In light of

these principles, the *A.F.P.* court concluded a private-person analogue existed where "plaintiffs

have alleged that defendant maliciously used plaintiff [parent's] prosecution for illegal entry as a

pretext for separating him from his minor [child] in pursuit of an ulterior purpose of deterring

other asylum seekers from entering the United States." 2022 WL 2704570, at *10. Plaintiffs

have alleged the same here, asserting Defendant misused the legal proceedings that followed

J.R.G.'s indictment, such as her very brief transfer to federal custody and court appearance, to

designate M.A.R. as unaccompanied. Dkt. 1 ¶¶ 39–40, 44, 92–94.

Finally, a private-person analogue exists for Plaintiffs' child abduction claim. The Texas Supreme Court has held that a cause of action for child abduction exists where a grandfather deprived a father of lawful custody of his child by obtaining brief temporary custody of the child and then kidnapping him. *Silcott*, 721 S.W.2d at 291, 293. Plaintiffs here allege "like" enough circumstances to find a private-person analogue exists: Defendant's employees caused a brief interruption in J.R.G.'s lawful custody of M.A.R. to obtain custody of the child, and then refused to return her to her mother even after the original, temporary basis for the separation had concluded. Dkt. 1 ¶¶ 98–101.

The cases Defendant relies on concern the adjudication of immigration benefits, a circumstance that is not "reasonably analogous" to what happened here. *See Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) (denial of "immigration status adjustment application"); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) (withdrawal of immigration benefits). Defendant's arguments are thus unavailing, for Texas law recognizes the viability of Plaintiffs' claims against private individuals in like circumstances.

D.  Plaintiffs' Claims Are Not Impermissible Systemic Torts.

Defendant finally contends that Plaintiffs' claims impermissibly "attribut[e] the alleged tortious conduct to the government as a whole, . . . rather than alleging specific tortious conduct by specific federal employees." Dkt. 20 at 25. In support of that conclusion, they cite only four paragraphs of Plaintiffs complaint. *Id.* In doing so, Defendant ignores the many other paragraphs that allege specific actions by specific federal employees, including the acts of separation, enforcing continued separation, refusing to release J.R.G., and refusing to facilitate communication between the family (among many other allegations). *See, e.g.*, Dkt. 1 ¶¶ 19–28, 32–35, 43–45, 54–57.

Not only does this argument misrepresent Plaintiffs' complaint, but other courts have rejected Defendant's assertion that claims like Plaintiffs' involve an impermissible "systemic tort." Those courts have explained that Defendant's argument is without merit, as allegations like

those in Plaintiffs' complaint "set[] forth specific alleged acts and omissions of specific federal employees." *A.F.P.*, 2022 WL 2704570, at *18. Indeed, even the family separation FTCA case Defendant cites in support of its "systemic tort" argument, and which Defendant included in a declaration attached to its motion, rejects the government's argument for this reason. *See* Dkt. 21-3 at 9 ("[T]he Complaint can plausibly be read to present claims predicated on the tortious misconduct of individual government employees."). And here, just as in *A.F.P.* and *Wilbur P.G.*, "Plaintiffs' complaint also attributes specific actions, including designing the family separation policy, subjecting plaintiffs to separation, and inflicting cruel conditions of confinement, to certain CBP and ICE employees, as well as other individual federal officials, employees, and contractors." *A.F.P.*, 2022 WL 2704570, at *18. And "at this early stage of litigation, when discovery is yet to be conducted," Plaintiffs have no obligation to identify every employee, official, and contractor involved in each of the alleged acts." *Id.*; *see also Wilbur P.G.*, 2022 WL 3024319, at *6 (rejecting Defendant's "systemic tort" argument for similar reasons).

## CONCLUSION

For all these reasons, the Court should deny Defendant's motion to transfer and dismiss Plaintiffs' claims arising from Defendant's employees' cruel separation of mother and daughter pursuant to the Trump administration's family separation policy.

*s/ Matt Adams*
Matt Adams, WSBA No. 28287*

*s/ Aaron Korthuis*
Aaron Korthuis, WSBA No. 53974*

**NORTHWEST IMMIGRANT RIGHTS PROJECT**
615 Second Avenue, Suite 400
Seattle, Washington 98104
Tel: +1.206.957.8611
Fax: +1.206.587.4025
matt@nwirp.org
aaron@nwirp.org

*s/ Julianna Rivera Maul*
Julianna Rivera Maul, SBN 290955

**THE LAW OFFICE OF JULIANNA RIVERA**
420 3rd Street, Ste 200
Oakland, CA 94607
Tel: +1.510.473.2141
Fax: +1.510.500.9804
julianna@juliannariveralaw.com

\* Admitted pro hac vice

*Counsel for Plaintiffs J.R.G. and M.A.R.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 12, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.

DATED this 12th day of January, 2023.

*s/ Aaron Korthuis*
Aaron Korthuis, WSBA No. 53974

**NORTHWEST IMMIGRANT RIGHTS PROJECT**
615 Second Avenue, Suite 400
Seattle, Washington 98104
Tel: +1.206.816.3872
aaron@nwirp.org