STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
KENNETH W. BRAKEBILL (CABN 196696)
Assistant United States Attorney
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7167
    Facsimile: (415) 436-7169
    Kenneth.Brakebill@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| J.R.G., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | CASE NO. 4:22-cv-05183-KAW<br><br>**REPLY IN SUPPORT OF MOTION TO TRANSFER; MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:  April 6, 2023<br>Time:  1:30 p.m.<br>Place:  Remote via Zoom<br><br>The Hon. Kandis A. Westmore |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I. ARGUMENT .................................................................................................................1

    A. The Court Should Transfer This Action to the Western District of Texas. ........................1

        1. Plaintiffs' Choice of Forum Is Not Entitled to Substantial Deference. ..................1

            (i) Forum Selection Is Entitled to "Little Deference" When a Complaint Lacks Material Connection to the Chosen Forum. ..................1

            (ii) Plaintiffs' Allegations About Conduct Outside Texas and Harms Suffered in California Do Not Weigh Against Transfer. ............... 2

        2. The Convenience of Parties and Witnesses Favor Transfer Despite the Lack of Specific Trial Witness Identities. ...........................................................4

        3. A Balancing of the Section 1404(a) Factors Favors Transfer. ...............................6

    B. Plaintiffs' Claims Should Be Dismissed for Lack of Subject Matter Jurisdiction. ..................................................................................................................8

        1. Plaintiffs' Claims Are Barred by the Discretionary Function Exception. ..................................................................................................................8

            (i) Defendant Satisfies the First Prong of the DFE Test. ...............................8

                (a) Plaintiffs Do Not Rebut that Government Decisions on Detention and Separation Involved Discretionary Judgment. ........................................................................................8

                (b) Plaintiffs Cannot Circumvent the DFE By Simply Alleging a Constitutional Violation. ............................................10

            (ii) Defendant Satisfies the Second Prong of the DFE Test Because the Decision to Detain Plaintiffs Separately Was Susceptible to Policy Considerations. ...............................................................................13

        2. Plaintiffs' Claims Relating to the Decision to Detain Them Separately Are Barred by the FTCA's Exception for Actions Taken While Reasonably Executing Law. .................................................................................14

        3. Plaintiffs' Claims Have No Private Person Analogue. .........................................15

        4. Plaintiffs Bring Impermissible Systemic Tort Claims. .........................................15

II. CONCLUSION ..............................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alabsi v. Savoya, LLC*,
  No. 18-cv-06510-KAW, 2019 WL 1332191 (N.D. Cal. Mar. 25, 2019) .............................................. 7

*AV Media, Pte, Ltd. v. OmniMount Sys., Inc.*,
  No. 06-cv-03805-JSW, 2006 WL 2850054 (N.D. Cal. Oct. 5, 2006) ..................................................... 1

*Barroca v. United States*,
  No. 19-cv-00699-MMC, 2019 WL 5722383 (N.D. Cal. Nov. 5, 2019) .................................. 1, 2, 3, 6

*Blanco Ayala v. United States*,
  982 F.3d 209 (4th Cir. 2020) ....................................................................................................... 9

*Breault v. United States*,
  No. 19-CV-276-JDP, 2019 WL 6492826 (W.D. Wis. Dec. 3, 2019) ...................................... 5

*Bryan v. United States*,
  913 F.3d 356 (3d Cir. 2019) ........................................................................................................ 11

*Butz v. Economou*,
  438 U.S. 478 (1978) ........................................................................................................... 10, 11

*California Serv. Emps. Health & Welfare Tr. Fund v. Command Sec. Corp.*,
  No. 12-cv-01079 EMC, 2012 WL 2838863 (N.D. Cal. July 10, 2012) ....................................... 2

*Campbell v. Chavez*,
  402 F. Supp. 2d 1101 (D. Ariz. 2005) ............................................................................................ 10

*Camreta v. Greene*,
  563 U.S. 692 (2011) ........................................................................................................................ 12

*Chess v. Romine*,
  No. 18-cv-05098-JSC, 2018 WL 5794526 (N.D. Cal. Nov. 2, 2018) ....................................... 5

*Clip Ventures LLC v. Suncast Corp.*,
  No. 10-cv-04849-CRB, 2011 WL 839402 (N.D. Cal. Mar. 7, 2011) ....................................... 5

*Comm. of Cent. Am. Refugees v. I.N.S.*,
  795 F.2d 1434 (9th Cir. 1986) ....................................................................................................... 9

*County of Sacramento v. Lewis*,
  523 U.S. 833 (1998) ............................................................................................................................ 10

*D.B. v. Poston*,
  119 F. Supp. 3d 472 (E.D. Va. 2015) ............................................................................................ 14

*Daniels v. Williams*,
  474 U.S. 327 (1986) .......................................................................................................................... 10

*Doe v. Holy See*,
  557 F.3d 1066 (9th Cir. 2009) ........................................................................................................ 8

*E.L.A. v. United States*,
  No. 2:20-cv-01524-RAJ, 2022 WL 2046135 (W.D. Wash. June 3, 2022) .............................. 2

*Fabus Corp. v. Asiana Exp. Corp.*,
  No. 00-cv-03172-PJH, 2001 WL 253185 (N.D. Cal. Mar. 5, 2001) ........................................... 1

*Fazaga v. FBI*,
  965 F.3d 1015 (9th Cir. 2020) .............................................................................................. 12, 13

*Fisher Bros. Sales, Inc. v. United States*,
  46 F.3d 279 (3d Cir. 1995) .............................................................................................................. 14

*Flores v. Lynch*,
   828 F.3d 898 (9th Cir. 2016) ........................................................................................................ 10
*GATX/Airlog Co. v. United States*,
   286 F.3d 1168 (9th Cir. 2002) ...................................................................................................... 13
*Gomez v. Arizona*,
   No. cv-16-04228, 2017 WL 5517449 (D. Ariz. Nov. 17, 2017) .................................................. 10
*Harrist v. United States*,
   No. 2:13-CV-009-JRG, 2013 WL 11331168 (E.D. Tex. Dec. 5, 2013) ......................................... 5
*Herbert v. VWR Int'l, LLC*,
   686 F. App'x 520 (9th Cir. 2017) .................................................................................................. 4
*Hoefer v. U.S. Dep't of Com.*,
   No. 00-cv-00918-VRW, 2000 WL 890862 (N.D. Cal. June 28, 2000) ......................................... 2
*J.S.G. v. Sessions*,
   330 F. Supp. 3d 731 (D. Conn. 2018) ......................................................................................... 12
*Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs,
   Enf't*, 319 F. Supp.3d 491 (D.D.C. 2018) .................................................................................... 12
*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) ......................................................................................................... 6
*Koval v. United States*,
   No. 2:13-cv-1630-HRH, 2013 WL 6385595 (D. Ariz. Dec. 6, 2013) ........................................... 3
*Lam v. United States*,
   979 F.3d 665 (9th Cir. 2020) ....................................................................................................... 13
*Lee v. United States*,
   No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258 (D. Ariz. Sept. 18, 2020) ................. 15
*Limone v. United States*,
   579 F.3d 79 (1st Cir. 2009) ......................................................................................................... 11
*Machado v. CVS Pharmacy, Inc.*,
   No. 13-cv-04501-JCS, 2014 WL 631038 (N.D. Cal. Feb. 18, 2014) ............................................ 7
*McElroy v. United States*,
   861 F. Supp. 585 (W.D. Tex. 1994) ............................................................................................ 11
*Mirmehdi v. United States*,
   689 F.3d 975 (9th Cir. 2012) ......................................................................................................... 9
*Morris v. Safeco Ins. Co.*,
   No. 07-cv-02890-PJH, 2008 WL 5273719 (N.D. Cal. Dec. 19, 2008) ..................................... 3, 4
*Ms. L. v. U.S. Immigr. & Customs,
   Enf't*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018) ............................................................................. 12
*Nurse v. United States*,
   226 F.3d 996 (9th Cir. 2000) ....................................................................................................... 12
*Ocampo v. Heitech Servs., Inc.*,
   No. 4:19-cv-4176-KAW, 2019 WL 5395108 (N.D. Cal. Oct. 22, 2019) ...................................... 2
*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ...................................................................................................................... 4
*Ruiz v. Darigold, Inc.*,
   No. 14-cv-02054-WHO, 2014 WL 4063002 (N.D. Cal. Aug. 14, 2014) ..................................... 5
*Ryan v. ICE*,
   974 F.3d 9 (1st Cir. 2020) ........................................................................................................... 15
*Saleh v. Titan Corp.*,
   361 F. Supp. 2d 1152 (S.D. Cal. 2005) ......................................................................................... 6

*Singh v. Roadrunner Intermodal Servs., LLC*,
   No. 15-cv-01701-JSW, 2015 WL 5728415 (N.D. Cal. Sept. 30, 2015) ............................ 4, 5
*Smith v. Corizon Health, Inc.*,
   No. 16-cv-00517-WHA, 2016 WL 1275514 (N.D. Cal. Apr. 1, 2016) .................................. 3
Texas, *Peña Arita v. United States*,
   470 F. Supp. 3d 663 (S.D. Tex. 2020) ...................................................................... 8, 9, 14
*Williams v. Bowman*,
   157 F. Supp. 2d 1103 (N.D. Cal. 2001) ............................................................................ 4
*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017) ..................................................................................................... 11

**Statutes**

6 U.S.C. § 279(a) ...................................................................................................................... 10
6 U.S.C. § 279(g)(2) .................................................................................................................. 14
8 U.S.C. § 1225 .......................................................................................................................... 8
8 U.S.C. § 1231(g)(1) .............................................................................................................. 8, 9
8 U.S.C. § 1232(b)(3) ................................................................................................................ 14
8 U.S.C. § 1232(c)(2)(A) ........................................................................................................... 10
8 U.S.C. § 1325 ......................................................................................................................... 14
8 U.S.C. § 1325(a)(1) .................................................................................................................. 9
28 U.S.C. § 1402(b) .................................................................................................................... 2
28 U.S.C. § 1404(a) ............................................................................................................ 2, 3, 4

# I. ARGUMENT

## A. The Court Should Transfer This Action to the Western District of Texas.

### 1. Plaintiffs' Choice of Forum Is Not Entitled to Substantial Deference.

Plaintiffs suggest that, as residents of the Northern District of California, their choice of forum is entitled to "greater deference" and their choice is accorded "great weight." Dkt. No. 28 at 4 (internal citations omitted). But the facts pled in their Complaint demonstrate that the Western District of Texas is a more appropriate venue for this litigation.

#### (i) Forum Selection Is Entitled to "Little Deference" When a Complaint Lacks Material Connection to the Chosen Forum.

A plaintiff's choice of forum "is not absolute" and "[t]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced where . . . the forum chosen lacks a significant connection to the activities alleged in the complaint." *Fabus Corp. v. Asiana Exp. Corp.*, No. 00-cv-03172-PJH, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001) (granting motion to transfer). Indeed, a plaintiff's choice is "entitled to 'little deference'" where most allegations of tortious conduct in the complaint occurred in the transferee district and the other tortious conduct occurred in another district "situated a substantial distance" away from the plaintiff's chosen forum. *Barroca v. United States*, No. 19-cv-00699-MMC, 2019 WL 5722383, at *2 (N.D. Cal. Nov. 5, 2019) (granting motion to transfer FTCA case). Moreover, "[a]s deference accorded to a Plaintiff's choice of forum decreases, a defendant's burden to upset the plaintiff's choice of forum also decreases." *AV Media, Pte, Ltd. v. OmniMount Sys., Inc.*, No. 06-cv-03805-JSW, 2006 WL 2850054, *3 (N.D. Cal. Oct. 5, 2006) (finding "Plaintiff's choice of forum is entitled to little deference" and granting motion to transfer where, despite some connections to the Northern District, "the facts giving rise to the underlying causes of action have no material connection to this forum").

In *Barroca*, the district court granted the United States' motion to transfer venue under Section 1404(a) in a case where a majority of tortious conduct pled in the plaintiff's FTCA complaint occurred in the transferee state (Kansas) and where plaintiff had also alleged specific negligent conduct in three locations in California but a "substantial distance" away from this district. 2019 WL 5722383, at *2. As in *Barroca*, venue in this case is more appropriate outside this district because Plaintiffs plead virtually

1  no tortious conduct here, but rather allege that the allegedly tortious activity occurred in Texas.[1] Put
2  simply, because the tort allegations in the Complaint have no material connection to the Northern
3  District of California, Plaintiffs' choice to sue in this district is accorded little deference.
4        Plaintiffs' citations to non-FTCA district court cases regarding a plaintiff's form choice do not
5  change the calculus. *Ocampo v. Heitech Servs., Inc.*, No. 4:19-cv-4176-KAW, 2019 WL 5395108 (N.D.
6  Cal. Oct. 22, 2019) simply underscores that the driving factor in whether to afford any deference to a
7  plaintiff's forum choice is the extent of a plaintiff's contacts with that forum as those contacts relate to
8  the cause of action. *Id*. at *3 (forum choice "should be balanced against both the extent of a defendant's
9  contacts with the chosen forum and a plaintiff's contacts, including those relating to a plaintiff's cause
10 of action"). In this case, Texas is the state where Plaintiffs crossed the border, where they were
11 separated, where Plaintiff parent was detained criminally prosecuted and where Plaintiff child was
12 sheltered while in the custody and care of ORR. *See* Dkt. No. 20 at 6. "Litigation should proceed where
13 the case finds its 'center of gravity.'" *Hoefer v. U.S. Dep't of Com.*, No. 00-cv-00918-VRW, 2000 WL
14 890862, *3 (N.D. Cal. June 28, 2000) (transferring case to District of Columbia under Section 1404(a)).
15 And while the district court in *California Serv. Emps. Health & Welfare Tr. Fund v. Command Sec.*
16 *Corp.*, No. 12-cv-01079 EMC, 2012 WL 2838863, at *4 (N.D. Cal. July 10, 2012), decided that the
17 plaintiffs' decision to sue in the Northern District was "entitled to deference," that decision was founded
18 on the principle that a plaintiff's forum choice is accorded great deference in cases involving allegations
19 of violations of the Employee Retirement Income Security Act ("ERISA"), which this case is not. *Id*.[2]

      **(ii)   Plaintiffs' Allegations About Conduct Outside Texas and Harms Suffered in California Do Not Weigh Against Transfer.**

22       When confronted with the law indicating that transfer is appropriate where, as here, the

---

[1] Plaintiffs' Opposition questions the applicability of *Barroca* to this case, arguing that the residence of the non-moving party and the harm in *Barroca* were not in the plaintiff's chosen district. Dkt. No. 28 at 5 n.2. But Plaintiffs miss the fundamental point of *Barroca*: a plaintiff's forum choice is entitled to little to no weight when the chosen forum lacks any significant connection with the activities alleged in the complaint—as in this case, where apprehension, detention, separation and UAC sheltering all occurred outside the chosen forum in the El Paso, Texas area.

[2] Even if venue were proper in the Northern District by virtue of the venue provision in 28 U.S.C. § 1402(b) cited in Plaintiffs' Opposition, "an action may still be transferred '[f]or the convenience of parties and witnesses [and] in the interest of justice," to any other district where venue is proper" under 28 U.S.C. § 1404(a). *See, e.g., E.L.A. v. United States*, No. 2:20-cv-01524-RAJ, 2022 WL 2046135 (W.D. Wash. June 3, 2022).

REPLY IN SUPPORT OF MOTION TO TRANSFER; MOTION TO DISMISS
CASE NO. 4:22-cv-05183-KAW          2

challenged tortious conduct occurred in another district, Plaintiffs attempt to recharacterize their Complaint as alleging tortious conduct here. *See* Dkt. No. 28, at 5-6. Plaintiffs argue that there are "significant contacts" with the chosen forum because (1) they "faced ongoing harm" in the form of Plaintiff-child's therapeutic sessions and lack of communication with her mother after the child's release, (2) "[t]hey live here, work here, and go to school here" and (3) they are seeking immigration counsel in this district. *Id.* at 5-6. But the challenged conduct by Plaintiffs here is "the policy of forcibly separating families at the southern border," *id.* at 1, and by admission of their Complaint, all of their separations, initial detentions and sheltering occurred in Texas, *see* Compl. ¶¶ 18, 28, 43, 47 65, 66-68. Even Plaintiffs' list of conduct occurring outside of Texas includes virtually no allegations of tortious conduct in this district. At most, Plaintiffs allege that the government "exacerbated the harm M.A.R. and J.R.G. experienced during this time by not facilitating J.R.G.'s prompt release and by limiting communication between mother and daughter." Dkt. No. 28 at 6. But Plaintiffs do not explain how M.A.R.'s presence in this district while the government detained her mother elsewhere constitutes the government's tortious conduct in this district, especially when she was residing with her father.

The *de minimis* relationship between the conduct alleged to have occurred in this district and the "challenged conduct" upon which Plaintiffs actually base their claims highlights why transfer of this case is appropriate. *See, e.g., Barroca*, 2019 WL 5722383, at *3 (transferring FTCA action where "none of the negligent conduct is alleged to have occurred in the Northern District" and "the majority of plaintiff's allegations concern events occurring in [Kansas]"); *Smith v. Corizon Health, Inc.*, No. 16-cv-00517-WHA, 2016 WL 1275514, at *2 (N.D. Cal. Apr. 1, 2016) (transferring case where "[a]ll of the events giving rise to plaintiff's claims occurred in Fresno" and "[t]he thrust of plaintiff's case" concerned treatment in Fresno); *Koval v. United States*, No. 2:13-CV-1630-HRH, 2013 WL 6385595, *3 (D. Ariz. Dec. 6, 2013) (transferring case where "[n]one of the acts complained of in plaintiff's complaint took place in Arizona and plaintiff did not live in Arizona when those acts occurred"). There is no reasonable dispute that the "center of gravity" for this case is the Western District of Texas.

That Plaintiffs allegedly "experienced harm in this district"(*see* Dkt. No. 28 at 5-6) is unpersuasive. While these allegations may be relevant to the issue of damages, liability is more important in a Section 1404(a) transfer analysis in general tort cases. *See Morris v. Safeco Ins. Co.*, No.

07-cv-02890-PJH, 2008 WL 5273719, at *5 (N.D. Cal. Dec. 19, 2008) (noting greater importance of "material testimony tending to establish a basis to impose civil liability" than testimony on "the severity of [plaintiff's] emotional distress (*i.e.*, plaintiff's damages") in Section 1404(a) transfer analysis); *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1108-09 (N.D. Cal. 2001) (damages witnesses in this district "not as important to the litigation" as witnesses "relevant to the underlying question of liability" in the transferee district).

### 2. The Convenience of Parties and Witnesses Favor Transfer Despite the Lack of Specific Trial Witness Identities.

Plaintiffs argue that the convenience of the witnesses favors the Northern District of California because the government has not identified specific witnesses in the Western District of Texas. *See* Dkt. No. 28 at 4-5. Plaintiffs' argument fails to offer the correct legal guidance for a Section 1404(a) analysis on this factor.

Identification of specific witnesses in the alternate forum is not a requirement when assessing convenience of parties and witnesses. "The Supreme Court and Ninth Circuit have rejected the notion that evidence in the alternative forum must be identified with a high degree of specificity." *Herbert v. VWR Int'l, LLC*, 686 F. App'x 520, 521-22 (9th Cir. 2017) (affirming grant of *forum non conveniens* motion where "[t]he record contained sufficient information to balance the parties' interests and the district court did not abuse its discretion by drawing illogical or implausible conclusions from the record regarding the *probable presence* of witnesses and evidence" in the alternate forum) (emphasis added); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981) (rejecting necessity of affidavits identifying the witnesses and testimony for trial if trial were held in alternative forum).

Courts in this district have applied this general principle concerning witness identity when assessing the convenience of parties and witnesses factor in the Section 1404(a) transfer analysis. In *Singh v. Roadrunner Intermodal Servs., LLC*, No. 15-cv-01701-JSW, 2015 WL 5728415 (N.D. Cal. Sept. 30, 2015), where the complaint related to the transport of containers from the Central Valley into this district at the Port of Oakland, the defendants did not identify any particular witnesses or the nature of their testimony, yet the Court concluded that the convenience of the witnesses and parties weighed slightly in favor of transfer and transferred the case. *Id.* at *3. Of significance to the Court was the fact

that although defendants had only made general assertions of likely witnesses and did not specify whether these witnesses were party or non-party witnesses, the plaintiffs—like in the case at bar—also did not refute this. *Id*. Other courts in this district similarly have weighed the convenience of witnesses factor in favor of transfer even where defendants did not identify specific witnesses. *See, e.g.*, *Chess v. Romine*, No. 18-cv-05098-JSC, 2018 WL 5794526, *6 (N.D. Cal. Nov. 2, 2018) (granting motion to transfer in tort case); *Ruiz v. Darigold, Inc.*, No. 14-cv-02054-WHO, 2014 WL 4063002, *3-4 (N.D. Cal. Aug. 14, 2014) ("[C]onvenience of the witnesses strongly weighs in favor of transfer.").

Courts in this district and others also have eschewed the necessity of specifying witnesses and instead looked to the *foreseeability of witnesses* in the transferee venue. *See, e.g., Clip Ventures LLC v. Suncast Corp.*, No. 10-cv-04849-CRB, 2011 WL 839402 (N.D. Cal. Mar. 7, 2011) (granting Section 1404(a) transfer); *R.T.B. by & through Breault v. United States*, No. 19-CV-276-JDP, 2019 WL 6492826 (W.D. Wis. Dec. 3, 2019) ("*Breault*") (same); *Harrist v. United States*, No. 2:13-CV-009-JRG, 2013 WL 11331168 (E.D. Tex. Dec. 5, 2013) (same). In *Clip Ventures*, the plaintiff brought a *qui tam* action in its resident district, the Northern District of California, against an Illinois-based company whose products were manufactured, packaged, labeled and shipped from Illinois. The Court concluded that the convenience of the parties and witnesses was the "most significant factor[] in this case" and held that "[t]his factor favors transfer" notwithstanding the absence of a record of specifically identified witnesses from defendant. 2011 WL 839402, at *3. The Court reasoned that "one of the two parties and *all foreseeable witnesses* are located in the Northern District of Illinois," where "[t]he center of gravity of the case is," and plaintiff did not identify any non-party witnesses in its home district. *Id*. at *3 (emphasis in original); *see also Breault*, 2019 WL 6492826, at *2 (granting transfer and rejecting argument that the government failed to carry its burden of specifying which particular healthcare providers and medical staff would be called as witnesses); *Harrist*, 2013 WL 11331168, at *3 (transferring action to district that was the "focus" of plaintiff's claims, because potential witnesses "*can reasonably be expected* to reside" there) (emphasis added).

Plaintiffs' identification, by way of declaration, of four "essential witnesses who reside in this district" that can share the harm Plaintiffs suffered, *see* Dkt. No. 28 at 5; Dkt. No. 29 ¶¶ 5-8, does not tip the balance against transfer. There is no allegation that any of those identified witnesses—either

1  M.A.R.'s father, M.A.R.'s therapist, a school volunteer or J.R.G.'s sister—has knowledge of the tortious
2  conduct that took place in Texas. Dkt. No. 29 ¶¶ 5, 8. Moreover, consistent with *Morris* and *Williams*,
3  *see supra* at 3-4, these damages witnesses receive less consideration in the Section 1404(a) analysis than
4  the many liability witnesses in Texas that apprehended, detained and sheltered J.R.G. and M.A.R.,
5  including the non-party witnesses at M.A.R.'s shelter. On the other hand, M.A.R. and J.R.G. are the
6  only liability witnesses for Plaintiffs. *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal.
7  2005) (in analyzing convenience of witnesses, courts give "more weight to the convenience of non-party
8  witnesses").

### 3. A Balancing of the Section 1404(a) Factors Favors Transfer.

A balancing of the multiple factors to be considered under Section 1404(a) favors transfer. *See Barroca*, 2019 WL 5722383, at *2 (applying, in a tort case, factors 2-8 from the Ninth Circuit's decision in *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)); *see also* Dkt. No. 20 at 10-12.

Factor 2: Plaintiffs suggest that Texas courts' familiarity with Texas law does not support transfer because this Court is "amply equipped" to apply Texas law. *See* Dkt. No. 28 at 8. But Plaintiffs once again ignore that the "challenged conduct" they have placed at the center of their case occurred in Texas. And while Defendant does not question the Court's competence to apply Texas law, it would be undeniably easier and more efficient for a Texas court that is already familiar with that law to apply it. *See Barroca*, 2019 WL 5722383, at *2 (where the tortious acts and injury giving rise to plaintiff's claims first took place in the transferee district, the law of that state applies under the FTCA and the transferee district is "likely the 'most familiar with the governing law'" there). This factor thus favors transfer to Texas. *See id*.

Factors 3, 4 and 5: These factors concern a plaintiff's choice of forum (factor 3), the respective parties' contacts with the forum (factor 4) and contacts relating to plaintiff's cause of action in the chosen forum (factor 5). Plaintiffs argue that (1) they are afforded substantial deference in their forum selection, (2) they continue to suffer harm in California and (3) the government has not established that witnesses live in Texas. Dkt. No. 28 at 4-6. As noted above, Plaintiffs' arguments are either inaccurate (because no substantial deference to their forum is owed when there is no material connection between the allegations and this district; and liability outweighs in the transfer analysis) (*see supra* at 1-4); or

incorrect (that identification of Texas witnesses is necessary) (*see supra* at 4-5). These factors favor transfer to the Western District of Texas.

Factors 6 and 8</span>: Plaintiffs argue that "[a]ll relevant evidence is easily accessible and shareable by Defendant through electronic means," thus minimizing any increased costs with litigating in this district or challenges to access of proof. Dkt. No. 28 at 7-8. But "'[w]hile technological developments have reduced the weight of this factor in the transfer determination, this factor nonetheless weighs in favor of transfer.'" *Alabsi v. Savoya, LLC*, No. 18-cv-06510-KAW, 2019 WL 1332191, at *9 (N.D. Cal. Mar. 25, 2019) (factor "weighs only slightly in favor of transfer" where most of the documents related to the case are located outside this district). Plaintiffs also argue that transfer to Texas would effectively shift the burden of litigation costs to Plaintiffs. Dkt. No. 28 at 6-8. The costs that Plaintiffs identify are (1) the use of their "savings or income to allow for [their] travel required to litigate their claims in Texas" (*id*. at 7) and (2) the "travel expenses" they would have to pay for four witnesses living in this district (*id*.). Plaintiffs ignore the significant costs the government would bear for the numerous witnesses involved in the apprehension, detention and separation of Plaintiffs in Texas to travel to the Northern District. But in any event, Plaintiffs' cost concerns are minimized by their suggestion that "if necessary," parties can utilize videoconference technology to fulfill their obligations for deposition or otherwise. *See id*. at 7.

Factor 7: Plaintiffs fall back on their argument that Defendant has not identified specific witnesses. But Plaintiffs ignore the fact that each of the facilities where they were housed, including the non-party facility where M.A.R. was sheltered, was in the Western District of Texas. Accordingly, the lack of compulsory process in this district for the persons involved in their detention, separation and sheltering militates in favor of transfer. *See Machado v. CVS Pharmacy, Inc.*, No. 13-cv-04501-JCS, 2014 WL 631038, at *5 (N.D. Cal. Feb. 18, 2014) ("[C]ourts give more weight to the convenience of non-party witnesses because non-party witnesses may not be subject to the court's subpoena power.").

Considering the balance of these factors as a whole, and especially in light of Texas's central role (and this district's minimal role) in Plaintiffs' allegations, the convenience of the parties and witnesses and the interests of justice strongly favor transfer to the Western District of Texas. While Plaintiffs simply dismiss the district court's recent decision in *D.A. v. United States*, No. 1:20-cv-03082, ECF No. 85 (N.D. Ill. Aug. 11, 2022) to transfer a similar action to the Western District of Texas, Dkt.

No. 28 at 8 (noting that "the plaintiffs did not live in the chosen forum"), just like that case "[t]he heart of this controversy is ultimately based upon conduct and events in the Western District of Texas, and it would clearly be more convenient and in the interests of justice for this litigation to proceed there." Dkt. No. 29, Exh. B at 14:15-20.

### B. Plaintiffs' Claims Should Be Dismissed for Lack of Subject Matter Jurisdiction.

This Court need not reach the issue of subject matter jurisdiction because this case should be transferred to the Western District of Texas. Dismissal is nevertheless appropriate even without transfer. While Plaintiffs point to the decisions of other district court judges, *see, e.g.*, Dkt. No. 28 at 13-14, this Court of course is not bound by those decisions. Defendant respectfully submits that the better reading of the law aligns with the decision of a third federal judge in Texas, *Peña Arita v. United States*, 470 F. Supp. 3d 663, 691-92 (S.D. Tex. 2020) (decisions by DHS to separate family members are protected by the discretionary function exception ("DFE")).

#### 1. Plaintiffs' Claims Are Barred by the Discretionary Function Exception.

##### (i) Defendant Satisfies the First Prong of the DFE Test.

Plaintiffs' Opposition reaffirms that "the policy of forcibly separating families" is the challenged conduct here. Dkt. No. 28 at 1. But the government maintained discretion to act at all relevant times from Plaintiffs' entry across the United States border through initial detention, separation, and continued detention. Plaintiffs' Opposition fails to rebut this discretion by demonstrating a single mandatory policy removing this discretion.

###### (a) Plaintiffs Do Not Rebut that Government Decisions on Detention and Separation Involved Discretionary Judgment.

Plaintiffs fail to show that government officials lacked discretion on the key decision points at issue. Further, Plaintiffs fail to do what is required to overcome Defendant's DFE defense: identify (1) a statute, regulation, or policy setting forth a course of conduct that is both mandatory and specific, and (2) conduct that violates this mandatory and specific statute, regulation, or policy. *See Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009).

Plaintiffs do not refute that the federal government possesses the express statutory authority to detain noncitizens after they illegally enter the country, *see* 8 U.S.C. §§ 1225, 1226(a), and to "arrange

for appropriate places of detention for aliens detained pending removal or a decision on removal," *see* 8 U.S.C. § 1231(g)(1); *see also* Dkt. No. 28 at 17 (conceding government's discretion over detention for illegal criminal-entry and custody determinations). These decisions indisputably involve discretion. *See* Dkt. No. 20 at 16-20; *see also Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012) (holding that the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General it falls within the DFE to waiver of sovereign immunity under FTCA); *Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020) (recognizing that in making decisions about investigation and detention, "DHS officers must make all the kinds of classic judgment calls the discretionary function exception was meant to exempt from tort liability").

Plaintiffs also do not contest that the government had the discretion to determine in which facilities to detain and house Plaintiffs. *See, e.g.*, 8 U.S.C. § 1231(g)(1) (government has authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal"); *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) ("Congress has placed the responsibility of determining where aliens are detained within the discretion of the [Secretary of Homeland Security]."). Nor do Plaintiffs contest that the government had the discretion to prosecute the adult Plaintiff for illegal entry in violation of 8 U.S.C. § 1325(a)(1), and thus detain her for criminal proceedings. *See* Dkt. No. 28 at 17 (conceding government's discretion to prosecute for illegal entry).

The government's discretion in making prosecutorial and detention decisions about noncitizens who violated the law when they crossed the border in between ports of entry—which Plaintiffs concede[3]—necessarily includes decisions about whether parents and children can be detained together. *Peña Arita*, 470 F. Supp. 3d at 686-87. Indeed, as held by the Court in *Peña Arita*, the policy decisions resulting in separation, including their implementation by DHS officers, are discretionary and protected by the DFE. 470 F. Supp. 3d at 686-87 (holding that the Zero-Tolerance policy provided for "clearly protected discretionary decisions" as applied to family separation and that its use of the phrase "to the

---

[3] Plaintiffs' glaring admissions that the government has discretion to prosecute, detain and make custody determinations for noncitizens unlawfully crossing the Southern border (*see* Dkt. No. 28 at 17) undermine and render illogical Plaintiffs' subsequent argument that enforcement officials who executed separations "were not exercising their own judgment" but merely following a policy directive (*see id*. at 19-20).

REPLY IN SUPPORT OF MOTION TO TRANSFER; MOTION TO DISMISS
CASE NO. 4:22-cv-05183-KAW                 9

extent practicable" also indicated "essentially discretionary judgment"). Moreover, contrary to Plaintiffs' suggestion, the Flores Agreement does not require release of an adult parent, compel release of a child to a parent that remains in custody, mandate that parents be housed with a child, or prescribe that parents are entitled to be housed with their children in immigration detention. *Flores v. Lynch*, 828 F.3d 898, 906, 908 (9th Cir. 2016).[4] Further, the Department of Health and Human Services' ORR, which is statutorily charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status" (*see* 6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C)), utilizes its discretion to place unaccompanied children "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). Plaintiffs offer no legitimate response to this discretionary decision-making.

### (b) Plaintiffs Cannot Circumvent the DFE By Simply Alleging a Constitutional Violation.

Plaintiffs primarily argue that alleging violations of constitutional mandates categorically preclude application of the FTCA's discretionary function exception. Dkt. No. 28 at 10-18. This argument fails for several reasons.

As a threshold matter, negligence cannot violate the Due Process Clause of the Constitution. *See Daniels v. Williams*, 474 U.S. 327, 331-32 (1986); *Campbell v. Chavez*, 402 F. Supp. 2d 1101, 1102 (D. Ariz. 2005) ("Mere negligence does not amount to a constitutional deprivation."); *Gomez v. Arizona*, No. CV-16-04228, 2017 WL 5517449, at *4 n.1 (D. Ariz. Nov. 17, 2017) (rejecting due process claim, because "[m]ere negligence is insufficient—'the Constitution does not guarantee due care on the part of state officials.'") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998)). Thus, any argument that constitutional violations can defeat the DFE could not save Plaintiffs' negligence claims.

In any event, the DFE is not rendered null by every allegation of unlawful or unconstitutional conduct. Rather, plaintiffs must show that the government official's discretion was limited by a specific, clearly established directive, accompanied by plausible assertions that the specific directive was violated. In *Butz v. Economou*, 438 U.S. 478 (1978), the Supreme Court recognized that immunity for

---

[4] However, the Flores Agreement *does* prohibit the government from detaining minor children for more than 20 days, which is why the government was unable to detain family units together pending the parents' criminal and removal proceedings while the Zero-Tolerance policy was in effect.

discretionary acts would not be vitiated simply because alleged conduct might later be held unconstitutional. *Id*. at 506-07 (acknowledging need to protect officials exercising discretion subject to "clearly established constitutional limits"). The Court in that case held that officials sued for violations of constitutional rights were entitled to qualified, but not absolute immunity. *Id*. at 507. The Court explained that, were it otherwise, as relevant to the case at bar, "no compensation would be available from the Government, for the Tort Claims Act prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused." *Id*. at 505. *Butz* and subsequent decisions leave no doubt that even conduct that violates the Constitution may constitute the type of abuse of discretion that falls within the scope of the DFE.

Since *Butz*, the Supreme Court has expressly held that government officials who exercise discretionary functions are entitled to qualified immunity under certain circumstances in damages suits for violating the Constitution while exercising their discretion. For example, in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Court summarized this immunity as striking a balance between two competing interests and, ultimately, turning on the "clearly established law" at the time the official actions were taken. *Id*. at 1866 (citations omitted). Thus, the Supreme Court has long recognized that conduct may be "discretionary" even if it later is determined to have violated the Constitution.

Nevertheless, Plaintiffs' Opposition incorrectly asserts, first, that "case law rejects" the "clearly established" standard and, second, it "does not apply in the context of the FTCA." Dkt. No. 28 at 15-16. On the contrary, several courts have used the "clearly established" standard when assessing whether the FTCA's discretionary function exception is applicable. *See, e.g.*, *Bryan v. United States*, 913 F.3d 356, 364 (3d Cir. 2019) ("Because . . . the CBP officers did not violate clearly established constitutional rights, the FTCA claims also fail" under the DFE); *McElroy v. United States*, 861 F. Supp. 585, 593 n.15 (W.D. Tex. 1994) ("This requirement [that the 'statutory or constitutional mandate that eliminates discretion must be specific and intelligible'] is not unlike the *Harlow* criteria for qualified immunity in constitutional tort cases, *i.e.*, that the officers must violate a clearly established constitutional right."). Likewise, in *Limone v. United States*, 579 F.3d 79 (1st Cir. 2009), the Court assessed the applicability of the DFE to bar a plaintiff's FTCA claim and held that the DFE did not apply to conduct that the court had previously found constituted "a clear violation of due process." *Id*. at 101-02 (finding government

1  did not possess discretion to withhold exculpatory information).

2  The question then becomes whether a constitutional right was "clearly established" in the specific context of separation of parents and children who were apprehended together after crossing the border between ports of entry in May or June of 2018. Plaintiffs argue that the substantive due process right to family integrity applies in this case. Dkt. No. 28 at 14. In support of this contention, Plaintiffs rely on the decisions of three district court judges: (1) the June 26, 2018 decisions in the *Ms. L.* litigation (*Ms. L. v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018)); (2) the July 19, 2018 decision in *Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*, 319 F. Supp.3d 491 (D.D.C. 2018); and (3) the July 13, 2018 decision in *J.S.R. by and through J.S.G. v. Sessions*, 330 F. Supp. 3d 731 (D. Conn. 2018). *See* Dkt. No. 28 at 12, 17. All of the judicial decisions relied on by Plaintiffs were rendered *after* the occurrence of the conduct that forms the basis for Plaintiffs' claims, and they therefore are irrelevant to the analysis of whether the rights at issue were "clearly established." And in any event, decisions of district judges do not demonstrate that a right is "clearly established." *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (decisions of a federal district court judge are not binding precedent).

Plaintiffs' other arguments seeking to avoid application of the "clearly established law" standard are unpersuasive. First, Plaintiffs argue that "every district court in the Ninth Circuit … has agreed that the DFE does not apply to FTCA claims" like the ones they assert in this case. Dkt. No. 28 at 13. But as with the authority cited above, these decisions were issued after the occurrence of the alleged conduct and are not binding precedent.

Second, Plaintiffs suggest that the "clearly established" standard, even if it applied, should have no "specificity" requirement. Dkt No. 28 at 12-13. Plaintiffs contend that the government's reliance on *United States v. Gaubert* is disingenuous in asserting that *Gaubert* instructs Plaintiffs to allege a constitutional violation with a requisite degree of specificity. *Id.* But the Ninth Circuit itself reserved the question of what level of specificity is necessary before a constitutional provision will preclude the exercise of discretion by a government official. *See Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) (expressly declining to decide "the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of the actor"). And in *Fazaga v. FBI*,

965 F.3d 1015 (9th Cir. 2020), the Court suggested that the same level of specificity is required regardless of whether a federal constitutional or statutory directive is at issue. *Id*. at 1065 (deferring issue of the DFE's applicability to district court, which must determine whether "any federal constitutional or statutory directives" specifically prescribed a nondiscretionary course of action so that "the FTCA claims may be able to proceed"), *rev'd on other grounds*, 142 S.Ct. 1051 (2022). While Plaintiffs attempt to identify specific constitutional violations (*see* Dkt. No. 28 at 11-12), their Complaint contains no mention of a constitutional transgression with the requisite degree of specificity.

### (ii) Defendant Satisfies the Second Prong of the DFE Test Because the Decision to Detain Plaintiffs Separately Was Susceptible to Policy Considerations.

Plaintiffs Opposition wholly fails to address the second prong of the discretionary function test, avoiding discussion of whether their separations were based on policy considerations. As reconfirmed recently by the Ninth Circuit in *Lam v. United States*, 979 F.3d 665 (9th Cir. 2020), the test is whether the government's actions "were *susceptible* to policy analysis." *Id.* at 674-75 (emphasis in original); *see also GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002) ("The decision need not *actually* be grounded in policy considerations so long as it is, by its nature, susceptible to a policy analysis.") (emphasis in original)). Plaintiffs do not address policy considerations or the susceptibility of the government's action to policy analysis.

Plaintiffs mention several of the policies identified by Defendant in its opening memorandum. *See* Dkt. No. 28 at 17 (describing discretionary judgments relating to prosecution, placement and detention of noncitizen adults and minors); *see also* Dkt. No. 20 at 16-18. But in describing the Zero-Tolerance policy as a change from prior policy of past presidential administrations, Plaintiffs highlight that the separations at issue necessarily included detention and are thus directly linked with discretionary decisions to prosecute parents migrating across the border with children. *See* Dkt. No. 28 at 18 (under the new policy, parents would be prosecuted and then minors with them would be placed in HHS custody as unaccompanied children). Thus, the government's decisions regarding whether to prosecute noncitizens for violations of criminal immigration statutes and where to detain noncitizens pending immigration proceedings are inextricably linked with the separation of Plaintiffs. Those decisions are quintessential discretionary judgments susceptible to policy considerations—as, of course, are the

decisions of this Administration repudiating and reversing the policies of which Plaintiffs complain. *See Peña Arita*, 470 F. Supp. 3d at 686-87 (implementation of policies resulting in separations are discretionary conduct grounded in social, economic and political policy that court cannot second-guess).

### 2. Plaintiffs' Claims Relating to the Decision to Detain Them Separately Are Barred by the FTCA's Exception for Actions Taken While Reasonably Executing Law.

Plaintiffs argue that the government was merely executing an executive policy and not a statute or regulation when it separated the Plaintiff families. Dkt. No. 18 at 20. On the contrary, the government was executing its authority under 8 U.S.C. § 1325 when it prosecuted the adult Plaintiff in this case. Further, the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(b)(3), required the government to transfer the plaintiff child to ORR custody within 72 hours of the determination that the child was "unaccompanied."

As an initial matter, the decision to determine that the Plaintiff child was "unaccompanied" within the meaning of the TVPRA is a decision covered by the DFE. *See* 6 U.S.C. § 279(g)(2). Whether a parent is "available to provide care and physical custody" is a policy question vested in federal officials. *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016). Here, adult Plaintiff J.R.G. was criminally prosecuted. *See* Compl. ¶¶ 26-27, 29-30, 36. Under the circumstances, the DFE applies to the officials' determination that the child Plaintiff M.A.R. should have been deemed unaccompanied and thus transferred to the custody of ORR. *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 287 (3d Cir. 1995). Once the discretionary decision was made that M.A.R. was "unaccompanied," the TVPRA required her transfer to the care and physical custody of ORR while her mother was detained.

Plaintiffs also argue that Defendant did not act with "at least some minimal care for the rights of others" in carrying out its statutory duties. Dkt. No. 28 at 21-22. But even under this unfounded characterization, Defendant undoubtedly surpassed this threshold when it transferred the minor child M.A.R. to the custody of a non-profit childcare facility that provided care, services and shelter to unaccompanied immigrant children until she was reunited with her father. Dkt. No. 1 ¶¶ 66-68.

### 3. Plaintiffs' Claims Have No Private Person Analogue.

Plaintiffs' legal claims uniquely arise out of the exercise of federal statutory authority that only the government possesses. Accordingly, the challenged conduct is that for which a private person could never be sued. This is especially true when, as here, the statutory authority being exercised pertains to enforcement of federal immigration laws—namely, those relating to whether and where to detain noncitizens pending immigration proceedings. *See Ryan v. ICE*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign."). Plaintiffs do not dispute that J.R.G. was lawfully held in criminal custody or secure adult immigration detention pending immigration proceedings; they do not challenge these decisions. Thus, their claims are essentially a challenge to *where* and *with whom* noncitizens are detained, and whether, when, and with whom to remove noncitizens. Such decisions are made pursuant to federal statutory authority and are in the sole province of the federal government; there is no private person counterpart. *See* Dkt. No. 20 at 23-24 (collecting cases).

### 4. Plaintiffs Bring Impermissible Systemic Tort Claims.

Plaintiffs contend that they have sufficiently alleged that "individual federal employees" engaged in various tortious conduct. Dkt. No. 28 at 25. But the Complaint contains vague references to supposedly tortious conduct of "the government." *See*, *e.g.*, Compl. ¶¶ 1-2, 6, 74, 77. Under the principles of *Lee* and *Adams*, these allegations are too vague and conclusory to hold Defendant liable under the FTCA. *Lee v. United States*, No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258, at *6-7 (D. Ariz. Sept. 18, 2020).

## II. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court transfer this action to the Western District of Texas or, in the alternative, dismiss Plaintiffs' Complaint.

Dated: February 14, 2023                                  Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney
*/s/ Kenneth Brakebill*
Kenneth Brakebill
Kelsey J. Helland
Assistant United States Attorneys
Counsel for Defendant United States