UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.R.G., et al., <br>     Plaintiffs, <br> v. <br> UNITED STATES OF AMERICA, <br>     Defendant. | Case No. 22-cv-05183-KAW <br><br> **DENYING DEFENDANT'S MOTION TO TRANSFER VENUE, OR, ALTERNATIVELY, MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** <br><br> Re: Dkt. No. 20 |

On December 5, 2022, Defendant United States filed a motion to transfer venue to the Western District of Texas, or, in the alternative, to dismiss the case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court held a hearing on the motion on April 6, 2023. Having considered the parties' filings, the relevant legal authorities, and the arguments made at the hearing, the Court **DENIES** Defendant's motion.

## I. BACKGROUND

In 2018, the United States implemented a policy of separating asylum-seeking parents and children at the nation's southern border by forcibly taking children from their parents. (Compl. ¶ 1.) The separation policy was intended to coerce arriving immigrants to waive their rights to apply for asylum and to deter others from seeking asylum. (Compl. ¶ 2.) While asylum seekers—especially families—had not previously been systematically referred for prosecution for unlawful entry or re-entry, on April 6, 2018, then-Attorney General Jefferson Beauregard Sessions III announced a "Zero Tolerance" directive to U.S. Attorneys along the southern border. (Compl. ¶¶ 36-37.) Under the Zero Tolerance policy, a parent would be prosecuted and typically receive a sentence that amounted to 48 hours or less in jail, during which time their child would be declared unaccompanied and moved to a different location, often unknown to the parent. (Compl. ¶¶ 39-

40.)

Plaintiff J.R.G. is a citizen of El Salvador who, fearing persecution and torture, fled to the United States with her eight-year-old daughter, Plaintiff M.A.R. (Compl. ¶¶ 13, 15.) Plaintiffs entered the United States on May 20, 2018, near El Paso, Texas, and were arrested by U.S. Customs and Boarder Protection ("CBP") agents shortly after crossing the border. (Compl. ¶ 18.) After Plaintiffs were placed in immigration custody, a CBP officer informed J.R.G. that they would be separated because of a new "law" from the President but the officer told J.R.G. the separation would last only until a federal judge sentenced her for crossing the border. (Compl. ¶ 20.)

Around 1:00 a.m. on May 21, 2018, CBP officials took M.A.R. away from her mother. (Compl. ¶¶ 22, 24.) The next day, after a criminal complaint for illegal entry was filed against her in federal court, J.R.G. pled guilty and was sentenced to one year of non-reporting and unsupervised probation. (Compl. ¶¶ 29-30.) While J.R.G. believed she would now be reunited with M.A.R based on the prior assurances from CBP, she was placed in chains again and transported to an immigration detention center while M.A.R. was detained in a separate location. (Compl. ¶¶ 34-35.)

Based on J.R.G.'s brief time in federal pre-trial custody, government employees designated M.A.R. an "unaccompanied minor" and considered her to be legally in the custody of the Department of Health and Human Services' Office of Refugee Resettlement ("ORR"). (Compl. ¶¶ 44, 46.) ORR directed M.A.R be taken to a shelter operated by a non-profit organization that then placed her with a foster family on May 21, 2018. (Compl. ¶¶ 66-68.) She remained in foster care until July 12, 2018, when she was reunited with her father. (Compl. ¶ 68.) Even after being released into her father's care, M.A.R. had trouble sleeping, a lack of appetite, and severe distress requiring therapy due to the separation from her mother. (Compl. ¶¶ 71-72.)

J.R.G. remained in detention until March 2019, during which time neither detention center employees nor government officials or employees arranged any communication between J.R.G. and M.A.R. or provided J.R.G. with information about M.A.R.'s wellbeing, health, or safety. (Compl. ¶¶ 51, 54.) Her only contact with M.A.R. occurred through phone calls orchestrated by

2

1   M.A.R.'s father after he was reunited with M.A.R., but these phone calls only lasted about ten

2   minutes. (Compl. ¶¶ 56-57.) As a result of the separation, J.R.G. suffered depression, anxiety, a

3   lack of appetite resulting in weight loss, medical issues, and trouble sleeping. (Compl. ¶¶ 58-61.)

4   Plaintiffs were reunited in Oakland, California on March 30, 2019. (Compl. ¶¶ 4, 73.)

5         On September 12, 2022, Plaintiffs filed this lawsuit. On December 5, 2022, Defendant

6   filed a motion to transfer, or, in the alternative, to dismiss the case for lack of subject matter

7   jurisdiction. (Def.'s Mot., Dkt. No. 20.) On February 2, 2023, the Plaintiffs filed an opposition.

8   (Pls.'s Opp'n, Dkt. No. 28.) On February 14, 2023, the Defendant filed a reply. (Def.'s Reply,

9   Dkt. No. 32.)

## II.  LEGAL STANDARD

### A.  Motion to Transfer Venue

Generally, "[a] plaintiff's choice of forum will not be disturbed unless the private and public interest factors strongly favor trial in the foreign [forum]." *Dardengo v. Honeywell Int'l, Inc. (In re Air Crash Over the Midatlantic)*, 792 F. Supp. 2d 1090, 1094 (N.D. Cal. 2011). When determining whether to transfer an action to another district, a court must employ a two-step analysis. First, the court considers the threshold question of whether the case could have been brought in the forum to which the moving party seeks to transfer the case. *See Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960). Once the party seeking transfer has made this showing, the court has discretion to consider motions to change venue based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Pursuant to Section 1404(a), a court weighing a motion to transfer should consider (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice. 28 U.S.C. § 1404(a). In the Ninth Circuit, a court may weigh additional factors, including: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of

1  compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of
2  access to sources of proof. *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498–99 (9th Cir. 2000).
3  "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for
4  transfer on a case-by-case basis." *Ctr. for Biological Diversity v. Kempthorne,* No. 08–1339, 2008
5  WL 4543043 CW, at *2 (N.D. Cal. Oct. 10, 2008) (citing *Stewart Org., Inc.,* 487 U.S. at 29). "The
6  defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice
7  of forum." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986).

### B. Motion to Dismiss

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion tests whether a complaint alleges grounds for federal subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### III. DISCUSSION

The Government moves to transfer this case to the Western District of Texas or, in the alternative, dismiss the complaint for lack of subject matter jurisdiction. Defendant recognizes that the Court rejected a similar motion in *Wilbur P.G. v. United States*, Case No. 4:21-cv-04457-KAW, 2022 WL 3024319, at *3 (N.D. Cal. May 10, 2022), and tries to distinguish the facts presented in that case from those presented here. However, as explained below, the Court does not find the distinctions sufficient to warrant a different result here.

### A. Motion to Transfer Venue

Defendant contends that the case should be transferred to the Western District of Texas

because all the allegedly tortious acts or omissions occurred there, critical witnesses are in or near the Western District of Texas, Plaintiffs' claims will be decided under Texas law, and the only connection to this District is Plaintiffs' residency. (Def.'s Mot. at 8-13.) Plaintiffs do not dispute that the case could have been brought in the Western District of Texas such that the first step of the analysis—whether the case could have been brought in that forum—is satisfied. (*See* Pls.' Opp'n at 2-3.) However, the Plaintiffs disagree that the relevant factors favor transfer. *Id.*

Plaintiffs reside in the Northern District of California and chose to file their case here. As the Court previously recognized in *Wilbur P.G.*, Plaintiffs are permitted by 28 U.S.C. § 1391(e)(1)(C) "to bring suit against an officer of the United States in the judicial district in which they reside so long as no real property is involved in the action" and "other family separation cases have found venue to be proper based on residency of the plaintiffs and declined to consider the other Section 1404(a) factors." 2022 WL 3024319, at *3. However, as in *Wilbur P.G.*, the Court will address whether the convenience of the parties, the convenience of the witnesses, and the interests of justice support a change of venue pursuant to § 1404(a).

As to the convenience of the parties, Defendant argues the Western District of Texas is more convenient because of the substantial contacts the parties maintain with that forum, the large amount of discovery that will occur there, the availability of compulsory process of potential witnesses, and the reduced cost compared to litigating the case in this District. (Def.'s Mot. at 9-12.) However, the Plaintiffs contend that because they "do not have the savings or income to allow for the travel required to litigate their claims in Texas," transfer would simply shift the inconvenience to them and effectively bar them from litigating their claims. (Pls.' Opp'n at 6-7.) The Court agrees. "Transfer is not appropriate when it merely shifts the burden of litigating in a distant or otherwise disfavored forum from the defendant to the plaintiff." *A.F.P. v. United States*, Case No. 121-cv-00789-DAD-EPG, 2022 WL 2704570, at *5 (E.D. Cal. July 12, 2022).

Additionally, "[i]n general, the Court affords a plaintiff's chosen forum great weight." *Ramondetta v. Konami*, Case No. 08-cv-1002-JSW, 2008 WL 11396774, at *4 (N.D. Cal. May 19, 2008). Defendant argues the weight given this factor should be substantially reduced because this District lacks any real connection to the activities alleged in the complaint and "[l]itigation should

5

proceed where the case finds its 'center of gravity.'" (Def.'s Mot. at 12; Def.'s Reply at 2 (quoting *Hoefer v. U.S. Dep's of Com.*, No. C 00 0918 VRW, 2000 WL 8908622, at *3 (N.D. Cal. June 28, 2000)).) Based on this "center of gravity" argument, Defendant argued at the hearing that the transfer analysis here differs from *Wilbur P.G.* because there are only two plaintiffs and all relevant actions occurred in the Western District of Texas such that it is the case's center of gravity whereas in *Wilbur P.G.* events surrounding the six plaintiffs occurred in multiple districts other than the potential transferee district. In *Hoefer*, however, the court gave little weight to the plaintiffs' choice of forum because the action was "brought on behalf of a nationwide class" and only one of the named plaintiffs resided in the district whereas the three other named plaintiffs resided in the transferee district. 2000 WL 9808622, at *3. That is not the situation presented here, where plaintiffs have chosen to litigate in their home forum and transfer would undoubtedly place a greater burden on them. Thus, the convenience of the parties does not weigh in favor of transfer.

Second, as to convenience of the witnesses, Defendant argues that critical witnesses are in or close to the Western District of Texas and "[w]hile it is sometimes presumed that employees of the government are available in any venue, this does not diminish the burden to produce the numerous government witnesses for depositions and for trial in California." (Def.'s Mot. at 11). But once again, transfer would only shift this burden from Defendant to Plaintiffs. *See A.F.P.*, 2022 WL 2704570, at *5. In opposition, Plaintiffs argue that because "Defendant has not provided a declaration identifying the specific witnesses who continue to reside in the Western District of Texas, much less their testimony and its relevance," it has failed to carry its burden of showing inconvenience. (Pls.'s Opp'n at 4). "[T]ypically, the moving party must name the witnesses, state their location, and explain their testimony and its relevance." *Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 587 (N.D. Cal. 2020). The Court agrees that Defendant has failed to satisfy this standard because it has not identified *any* specific witnesses, let alone confirmed that they currently reside in the Western District of Texas.[1]

---

[1] As Plaintiffs argue, simply because the acts occurred in the Western District of Texas does not mean that the potential witnesses are still located in that district now, almost five years after

Defendant replies that courts have "eschewed the necessity of specifying witnesses and instead looked to the *foreseeability of witnesses* in the transferee venue." (Def.'s Reply at 5.) Defendant cites *Clip Ventures LLC v. Suncast Corp.*, No. 10-cv-04849-CRB, 2011 WL 839402 (N.D. Cal. Mar. 7, 2011), among other cases, to support its position. In *Clips Ventures*, United States District Judge Charles R. Breyer granted defendant's motion to transfer to the Northern District of Illinois because "one of the two parties and *all foreseeable witnesses* [were] located" there and plaintiff had "not identified a single witnesses [sic] that would be called from outside of Illinois." *Id.* at *3. Such is not the case here. Here, while it is foreseeable that there will be witnesses in the Western District of Texas, it is also foreseeable that there will be witnesses in this District, especially given J.R.G.'s declaration identifying M.A.R.'s therapist, a volunteer in a parent group at M.A.R.'s school, and M.A.R.'s father and aunt as potential witnesses. (Dkt. No. 29 at 3.) Defendant argues the convenience of these potential damages witnesses should be given less weight than its potential—and unidentified—liability witnesses. (Def.'s Reply at 3-4). However, as recognized in *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1108-09 (N.D. Cal. 2001), one of the cases cited by Defendant in support of its argument, "the court cannot consider the convenience of these unnamed witnesses." Further, to the extent these potential witnesses are Defendant's employees, their convenience is "entitled to little weight because litigants are able to compel their employees to transfer at trial, regardless of forum." *Wilbur P.G.*, 2022 WL 3024319, at *3 (collecting cases). Thus, the convenience of the only identified witnesses also weighs against transfer.

Defendant argues the interests of justice favor a transfer because the "Western District of Texas has the greater interest in keeping the people located in that District safe from alleged government wrongdoing." (Def.'s Mot. at 12.) Plaintiffs respond that family separation is a national issue such that "California's interest in such issues is no less significant than that of Texas." (Pls.'s Opp'n at 8-9.) The Court again agrees with Plaintiffs and finds that the interests of justice do not require transfer.

---

Plaintiffs' separation.

While the challenge of conducting discovery regarding the events that occurred in Texas may warrant transfer, as in *Wilbur P.G.*, "the undersigned is confident that the parties will utilize the technology at their disposal, including depositions by video conference to fulfill their obligations." 2022 WL 3024319, at *4. Accordingly, the Court finds that Defendant has not made a sufficient showing that transfer is warranted, and, therefore, DENIES the motion to transfer venue.

### B. Motion to Dismiss

Alternatively, Defendant moves to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Def.'s Mot. at 1, 14.) Specifically, Defendant argues the Plaintiffs cannot prevail on their FTCA claims because the Court is deprived of jurisdiction due to the discretionary function exception, the due care exception, the lack of a private-person analogue, and/or the prohibition against systemic tort claims. *Id.* at 14, 22-25.

#### i. Discretionary Function Exception

In opposition, Plaintiffs argue that "*every* district court in the Ninth Circuit to have addressed this argument—including this Court—has agreed that the DFE does not apply to FTCA claims challenging the application of the Trump administration's family-separation policy in their individual cases." (Pls.'s Opp'n at 13 (citing *Wilbur P.G.*, 2022 WL 3024319, at *1, among other cases).) The Court has previously found that the discretionary function exception does not apply "[s]ince the family separation policy was a policy prescribed by the Trump Administration, [and] the front-line employees tasked with implementing the policy did not reasonably have any element of choice." *Wilbur P.G.*, 2022 WL 3024319, at *4-5.

At the hearing, Defendant argued the pleadings in this case do not set forth sufficient facts to show a mandatory policy that stripped officers of discretion and that implementing the policy was itself a discretionary act. In response, Plaintiffs clarified that they are not challenging the decisions to detain them or prosecute J.R.G. but rather the decision to separate them before the prosecution was even initiated and to continue that separation for months. Contrary to Defendant's argument, there are sufficient facts to support that the officers who separated

8

Plaintiffs did not exercise any discretion when doing so. Specifically, the complaint alleges that Defendant implemented a policy of "intentionally separating asylum-seeking parents and children at the nation's boarder" and after Plaintiffs were detained, "a CBP officer informed J.R.G. that she would be separated from M.A.R. because of a new 'law' from the President." (Compl. at ¶¶ 1, 20.) And "[i]n examining the nature of the challenged conduct [for purposes of the discretionary function exception], a court must first consider whether the action is a matter of choice for *the acting employee*." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (emphasis added). Thus, regardless of whether implementing the policy was a discretionary act, if—as alleged in the complaint—the individual officers did not have any choice as to whether to separate Plaintiffs, the discretionary function exception does not apply to Plaintiffs' challenge to the individual officers' conduct. *See id.* at 546-47 ("Thus, if the Bureau's policy leaves no room for an official to exercise policy judgment in performing a given act, or if the act simply does not involve the exercise of such judgment, the discretionary function exception does not bar a claim that the act was negligent or wrongful.").

### ii.     Due Care Exception

The FTCA prevents the United States from being held liable for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a).

Defendant argues 8 U.S.C. § 1232(b)(3) required it to transfer M.A.R. to ORR custody after it determined J.R.G. was unable to provide care because of her criminal prosecution. (Def.'s Mot. at 23.) But once again, the Court rejected this argument in *Wilbur P.G.* and Defendant does not cite any controlling authority to alter that analysis. 2022 WL 3024319, at *5. Thus, because as in *Wilbur P.G.*, "[t]he separations were conducted pursuant to executive policy, not pursuant to any statute or regulation," the due care exception does not apply. *Id.*

### iii.    Private Person Analog

Defendant next argues "[b]ecause only the federal government has the authority to enforce federal criminal and immigration laws and make related detention determinations, there is no private-person analogue that would support a claim under the FTCA." (Def.'s Mot. at 24.) The

9

FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. To carry their burden, Plaintiffs' allegations must demonstrate "a persuasive analogy with private conduct." *See Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992) (quoting *Woodbridge Plaza v. Bank of Irvine*, 815 F.2d 538, 543 (9th Cir. 1987)).

The Ninth Circuit recognizes that "the federal government 'could never be exactly like a private actor,'" and so only requires court to "find the most reasonable analogy" to private tortious conduct." *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016) (quoting *LaBarge v. Mariposa Cnty.*, 798 F.2d 364, 367 (9th Cir. 1986)). "To find otherwise, would give the federal government absolute immunity to violate the rights of those for whom it has sole decision-making authority, such as undocumented immigrants, with impunity." *Wilbur P.G.*, 2022 WL 3024319, at *5.

Here, Plaintiffs bring claims for intentional infliction of emotional distress ("IIED"), abuse of process, and wrongful child abduction. (Compl. ¶¶ 86-103.) They allege that "a DHS advisory Panel, ORR officials, and outside medical professionals warned DHS that implementing a family-separation policy would cause catastrophic emotional and psychological harm to separated children and their parents" and "Defendant's employees acted in blatant disregard of these warnings when they separated J.R.G. and M.A.R. for months." (Compl. ¶¶ 81-82.) The Court found similar allegations sufficient to satisfy the private analog requirement in *Wilbur P.G.* based on prior decisions within this Circuit and sees no reason to reach a different conclusion now. 2022 WL 3024319, at *5.

### iv. "Systemic" Tort Prohibition

Finally, Defendant argues Plaintiffs fail to allege "specific tortious conduct by specific federal employees" and the "FTCA's limited waiver of sovereign immunity does not encompass such systemic, institutional tort claims." (Def.'s Mot. at 25.) Plaintiffs respond that they allege

1  "specific actions by specific federal employees, including the acts of separation, enforcing
2  continued separation, refusing to release J.R.G., and refusing to facilitate communication (among
3  many other allegations."  (Pls.'s Opp'n at 25 (citing Compl. ¶¶ 19-28, 32-35, 43-45, 54-57).)

4  The FTCA's limited waiver of sovereign immunity allows a plaintiff to sue the United
5  States for damages arising from certain torts committed by federal employees acting within the
6  scope of their employment.  *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995) (citing 28
7  U.S.C. § 1346(b)).  Here, the Complaint alleges Defendant's employees grabbed M.A.R. and
8  separated her from J.R.G., designated M.A.R. as an unaccompanied minor, failed to inform J.R.G.
9  of M.A.R.'s wellbeing, and implemented the family-separation policy despite warnings of its
10 potential harm.  (Compl. ¶¶ 24, 44, 54, 81-82.)  It is clear Plaintiffs seek to hold Defendant liable
11 for the torts of its employees and "[t]he fact that they are unable to name the individual Border
12 Patrol officers who forcibly separated them and detention center employees without the benefit of
13 discovery, should not be fatal to their action."  *Wilbur P.G.*, 2022 WL 3024319, at *6.
14 Accordingly, the Court finds that this is not a general systemic tort claim.

### IV.  CONCLUSION

For the reasons set forth above, Defendant's motion is DENIED.  Defendant shall file an answer within 14 days of this order.

IT IS SO ORDERED.

Dated: April 11, 2023

KANDIS A. WESTMORE
United States Magistrate Judge