Julianna Rivera Maul (SBN 290955)
The Law Office of Julianna Rivera
420 3rd St., Ste 200
Oakland, CA 94067
Tel: 510-473-2141

Matt Adams*
Aaron Korthuis*
Glenda M. Aldana Madrid*
Leila Kang*
Northwest Immigrant Rights Project
615 2nd Ave, Ste 400
Seattle, WA 98104
Tel: 206-957-8611
*Admitted pro hac vice

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| J.R.G., et al.,<br><br>　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>　　　Defendant. | CASE NO. 4:22-cv-05183-KAW<br><br>**[UNOPPOSED] MOTION TO APPROVE SETTLEMENT INVOLVING CLAIMS OF A MINOR** |

## I. Introduction

M.A.R., a minor child, and her mother, J.R.G., filed an action against the United States under the Federal Tort Claims Act (FTCA), seeking damages for the harms they suffered as a result of the federal

government's family separation policy when they entered the country in 2018. The United States has stipulated to a compromise settlement release of all claims.

Pursuant to FRCP 17, Plaintiffs move this Court for approval of the proposed settlement on behalf of the minor plaintiff, MA.R. Defendant has been notified of this motion and does not oppose the relief sought herein.

## II. Background of Minor's Claims[1]

Plaintiff M.A.R. was eight years old when she fled El Salvador with her mother to seek refuge in the United States. Dkt 1, Compl. at ¶ 17. They entered the United States on or about May 20, 2018, near El Paso, Texas. *Id.* at ¶ 18. Shortly after they crossed the border, they encountered U.S. Customs and Border Protection (CBP) officers who apprehended them and took them to a CBP facility known as "hielera," or "ice box," because of its frigid temperatures. *Id.* at ¶ 18-19.

J.R.G. and M.A.R. were separated from each other within a day of being placed in immigration custody. *Id.* at ¶ 20. At some point during that day, a CBP officer informed J.R.G. that she would be separated from M.A.R. because of a new "law" from the President. Dkt 1, Compl. at ¶ 20. Early in the morning on May 21, 2018, when J.R.G. and M.A.R. were sleeping, a CBP officer called their names and the names of other families detained in the same room. *Id.* at ¶ 22. Aware of the pending separation, J.R.G. began reassuring M.A.R. *Id.*

The family was then taken to another room. *Id.* at ¶ 23. Many other families were also in this room. *Id.* Many of the children were screaming and crying because CBP was taking them away from their parents. Dkt 1, Compl. at ¶ 23.

Eight-year-old M.A.R. began to cry when the officials grabbed her to take her away from her mother and was later transferred to Office of Refugee Resettlement (ORR) custody; meanwhile, J.R.G.

---

[1] This section is based on the allegations as pled in the complaint. *See generally* Dkt 1.
MOT. TO APPROVE SETTLEMENT INVOLVING CLAIMS OF A MINOR
CASE NO. 4:22-CV-05183-KAW

2

was briefly placed in federal criminal custody and prosecuted for illegal entry under 8 U.S.C. § 1325, then subsequently returned to immigration custody. Dkt 1, Compl. at ¶¶ 24-30, 44, 46, 66-68. After they were separated, M.A.R. did not see her mother again for over ten months, as her mother remained in immigration detention even after M.A.R. was released from ORR custody. *Id.* at ¶¶ 25, 73.

The separation of J.R.G. and M.A.R. was carried out pursuant to the Department of Justice's Zero Tolerance policy, devised to deter Central American asylum seekers at the border through systematic family separation. *Id.* at ¶¶ 36-39. Under that policy, immigration officials would separate the parent from the child and then designate the child an "unaccompanied minor," placing the child in ORR custody. *Id.* at ¶¶ 44, 65-66.

The separation was the first time in eight-year-old M.A.R.'s life that she and her mother had ever been apart, and because of Defendant's conduct, M.A.R. has suffered lasting emotional harm. Dkt 1, Compl. at ¶¶ 70, 84. Following her release from ORR custody and while separated from her mother J.R.G., M.A.R. was unable to sleep alone. Id. at ¶ 71. She experienced a lack of appetite, regular and frequent crying for J.R.G., and she was distraught, distressed, and traumatized. *Id.* Due to her mental state, M.A.R. required therapy even following reunification with her mother, and also experienced frequent nightmares, and suffered from separation anxiety. *Id.* at ¶¶ 72, 74-75.

### III. Legal Background

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Id., quoting Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir.1978). Upon a showing that "the net recovery to each minor plaintiff is fair and reasonable in light of their claims and

average recovery in similar cases, the district court should approve the settlement as proposed by the parties." *Id.* at 1182.

### IV. Settlement Offer

On September 12, 2022, Plaintiffs jointly filed this action for damages under the FTCA because their claims involve the same set of facts. Dkt. 1. Specifically, they alleged that Defendant's conduct constituted torts of intentional infliction of emotional distress, abuse of process, and wrongful child abduction. Dkt. 1., Compl. at ¶¶ 86-103. Plaintiffs sought damages for the severe harm they both suffered as a result of their unlawful separation. Dkt. 1.

Following filing, Defendant moved to transfer venue or alternatively to dismiss Plaintiffs' case. Dkt. 20. On April 11, 2023, the Court denied Defendant's motion. Dkt. 37. The parties subsequently agreed to a scheduling order and began discovery in May 2023. Dkt. 48. Following settlement discussions, the Court granted a joint request to vacate all deadlines and stay this action. Dkt. 63.

While the United States does not admit liability, Defendant has offered to settle Plaintiffs' claims, and the parties reached an agreement to a proposed settlement in April 2024. *See* Proposed Settlement as **Exhibit A**. Under the proposed settlement, the United States will settle and compromise all claims for a total of $300,000, paying each Plaintiff half of this amount ($150,000). *See id.* at ¶ 3; *see also* Declaration of Julianna Rivera Maul in Support of the Motion to Approve Settlement Involving Claims of a Minor, attached as **Exhibit B** at ¶ 7.

The settlement is fair, reasonable, and in the best interests of M.A.R. *See* **Exhibit B** at ¶¶ 8-10; *see also A.I.I.L. et al. v. United States*, Civil Action No. 19-cv-00481-TUC-JCH (D. Ariz.), Dkt. 133, 134 (approving lower settlement amounts for similarly situated plaintiffs separated at the southern border).

### V. Fees and Costs

Consistent with 28 U.S.C. § 2678, the proposed settlement limits any attorneys' fees owed by Plaintiffs relating to this matter to 25% of the settlement amount. *See* **Exhibit A** at ¶ 3.d. Plaintiffs previously entered an agreement with the Law Office of Julianna Rivera and the Northwest Immigrant Rights Project (NWIRP) for representation in this matter, providing for a contingency fee of 25% of any judgment or settlement award. *See* **Exhibit B** at ¶ 11. Accordingly, if the proposed settlement is approved, Plaintiffs' counsel would retain $37,500 (25% of $150,000) from the amount awarded to M.A.R. Plaintiffs' counsel does not seek to recover any costs. *Id.*

### VI. Application of Proceeds

Mother J.R.G. is in agreement with the settlement to avoid further litigation that would require J.R.G. and M.A.R. to relive their separation and result in the re-traumatization of M.A.R. and herself; therefore, J.R.G. believes the settlement is in the best interest of M.A.R. *See* **Exhibit B** at ¶ 9.

It is proposed that settlement funds owed to M.A.R. after payment of attorney's fees ($112,500) be placed into a blocked account belonging solely to M.A.R., which, pursuant to this Court's order, she will be able to access upon her eighteenth birthday. *Id.* at ¶ 12. The Law Office of Julianna Rivera will arrange to set up a minor settlement account through Chase Bank, where the Law Office of Julianna Rivera itself banks, upon the Court's order approving of the proposed settlement. *Id.*

### VII. Request for Approval of Settlement

Based on all of the foregoing, Plaintiffs request that the Court enter an order as follows:

1. Approving the settlement offer set forth above;
2. Directing disbursement of attorneys' fees and settlement funds as set forth above; and
3. Providing further relief as the Court may deem just and proper.

DATED May 2, 2024

MOT. TO APPROVE SETTLEMENT INVOLVING CLAIMS OF A MINOR
CASE NO. 4:22-CV-05183-KAW

5

1  Respectfully submitted,

LAW OFFICE OF JULIANNA RIVERA

*/s/ Julianna Rivera*
Julianna Rivera Maul

NORTHWEST IMMIGRANT RIGHTS PROJECT

*/s/ Matt Adams*[2]
Matt Adams
Aaron Korthuis
Glenda M. Aldana Madrid
Leila Kang

*Counsel for Plaintiffs*

---

[2] In compliance with Civil Local Rule 5-1(i)(3), the filer of this document attests under penalty of perjury that all signatories have concurred in the filing of this document.

MOT. TO APPROVE SETTLEMENT INVOLVING CLAIMS OF A MINOR
CASE NO. 4:22-CV-05183-KAW

6